IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY | * | |
| Plaintiff | * | CONSOLIDATED CASES UNDER |
| v. | * | CIVIL ACTION NO. |
| M/V A.V. KASTNER, her engines, boilers, tackle, etc., <u>in rem</u>, et al., | * | WMN-02-CV-00662 |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

**BRIEF OF NORFOLK DREDGING COMPANY IN SUPPORT OF ITS
MOTION TO APPROVE AND CONFIRM DISCONTINUANCE
OF MAINTENANCE AND CURE**

Plaintiff, Norfolk Dredging Company ("NDC"), submits this brief and attached affidavits in support of its Motion to Approve and Confirm Discontinuance of Maintenance and Cure for claimants Troy Link ("Link"), Jeffrey Slaton ("Slaton") and Dennis Wallace ("Wallace").

**NATURE OF THE CASE**

On April 29, 2002, this Court entered an Order pursuant to Rule 42(a) of the Federal Rules of Civil Procedure consolidating all of the limitation actions and requiring all future pleadings be filed in this action.

Limitation complaints were filed on behalf of NDC, owner of the Tug SWIFT and the Barge RC 811, Buchanan Marine, L.P. and A.P. Franz, Trustee of the Buchanan Trust (the "Buchanan") owner of the Tug BUCHANAN 14 and by Gypsum Transportation Limited ("Gypsum"), owners of the M/V A.V. KASTNER. Link, Slaton and Wallace, were injured as crewmembers of NDC vessels and are claimants in the limitation actions.

140719 v. (01862.00056)

## SUMMARY OF RELEVANT FACTS

In February 2002 NDC engaged the Tug BUCHANAN 14 to tow a dredge and its attendant vessels and equipment, including the Barge R.C. 811 and the Tug SWIFT, from its yard in Chesapeake, Virginia to Delaware City, Delaware.  On February 25, 2002, the BUCHANAN 14 was proceeding with its tow northerly in the channel of the Elk River, Maryland, when it met the southerly bound M/V A.V. KASTNER which came into collision with and sank the Barge R.C. 811 and the Tug SWIFT.  As a result, the Barge R.C. 811 with equipment aboard and the Tug SWIFT sank and became a total loss, four employees of NDC who were aboard the Tug SWIFT died and the three claimants, Link, Slaton and Wallace, alleged that they were injured.  NDC provided maintenance and cure for each of the three claimants from the date of the collision to the date of the filing the motion in amounts  exceeding $38,719.92 for Link, $52,562.63 for Slaton and $14,862.00 for Wallace.

## LAW

A Jones Act (46 USC § 688) employer's obligation to pay maintenance and cure is not infinite in duration.  As stated by the United States Supreme Court in *Calmar S.S. Corp v. Taylor*, 303 U.S. 525, 1938 A.M.C. 341 (1938), a seaman is only entitled to maintenance and cure "for a period which can be *definitely ascertained*." (emphasis added) *Id.* at 532, 1938 A.M.C. at 346.  Following *Calmar*, it has become well-entrenched in maritime law that maintenance and cure does not equal a lifetime pension. *See Farrell v. United States*, 336 U.S. 511, 519, 1949 A.M.C. 613, 619 (1949).  Instead, the obligation to pay maintenance and cure continues only to the point of cure, or until the seaman reaches maximum medical recovery. *See Id.*; *See also Vaughn v. Atkinson*, 369 U.S. 527, 531, 1962 A.M.C. 1131, 1134 (1962); *Salem v. United States*, 370 U.S. 31, 38, 1962

A.M.C. 1456, 1461 (1962); *Fitgerald v. United States Lines Co.*, 374 U.S. 16, 20 n.7, 1963 A.M.C. 1093, 1096 n.7 (1963); *Vella v. Ford*, 421 U.S. 1, 5, 1975 A.M.C. 563, 566 (1975).

While the Supreme Court has not delineated the time of maximum medical recovery, it has become the accepted standard in this Circuit and it generally holds that maximum medical recovery is achieved "when it appears probable that further treatment will result in no betterment of the seaman's condition." *Protogyrou v. Farrell Lines*, 42 F.3d 1386 (4th Cir. 1994) *quoting Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979); *See also Carleno v. Marine Transport Lines, Inc.*, 317 F.2d 662, 1963 A.M.C. 1777 (4th Cir. 1963) ("The obligation is fulfilled when subsistence and medical care are furnished to the point where remedial medicine and surgery can do no more." *Id.* at 665-66, 1963 A.M.C at 1781-82).

NDC has followed the admonition of the authorities cited.  It has resolved all doubts in favor of and paid maintenance and cure for each of the claimants, even though it was questionable that some of the procedures were related to or advanced cure.  Furthermore, payment has been made beyond the time of their probable maximum medical recovery, a period of more than sixteen months.

## ARGUMENT

### I. BECAUSE LINK HAS REACHED MAXIMUM MEDICAL RECOVERY HE IS NOT ENTITLED TO ADDITIONAL MAINTENANCE AND CURE.

NDC commenced the payment of maintenance and provided cure for Link on February 25, 2002, immediately following the casualty and promptly after he alleged that he was injured as a result of the collision that caused the sinking of the Tug SWIFT.

Shortly after the collision Link was taken to the Emergency Room of Union Hospital, Elkton, Maryland where it was reported that he was soaked with diesel fuel that gave him a headache, and where he was treated for abrasions to his right arm and lower legs.  That afternoon

3

Link returned to his home in Hampton, Virginia. On February 27, 2002 he was examined by Dr. James Mixon, who referred him to Dr. Cole of the Behavioral Institute for stress disorder and back pain.

On or about March 5, 2002, Dr. Cole at Behavioral Medical Institute examined Link and stated that he showed signs of Acute Stress Disorder and referred him to Dr. Ali Aziz for psychiatric treatment and Dr. Suzanne Brassel for psychotherapy. On March 12, 2002, Dr. Aziz, based on Link's stated symptoms, decided to treat Link for an Acute Stress Disorder, prescribing him Zoloft, Buspar, Zyprexa, Wellbutrin, Klonopin and Seroquel. At the present time, Dr. Aziz prescribes Welbutrin, Klonopin and Seroquel. Although these drugs are recognized by the medical community as medications for palliative treatment rather than curative treatment[1], NDC has continued to pay for the administration of this palliative treatment.

On April 30, 2002 psychologist, Dr. Suzanne Brassel stated that Link had a Post Traumatic Stress Disorder ("PTSD") and suggested therapy in an attempt to (1) decrease his anxiety related thoughts of the tugboat accident and fear of water; (2) to improve his mood and ability to concentrate and focus so that he will be able to return to work and (3) improve his social relationships. On May 9, 2002, Dr. Brassel performed EMDR, a treatment that involves eye movement desensitization as a treatment for the PTSD. It is significant that on August 6, 2002, Dr. Brassel determined that EMDR was effective in achieving the first goal of the therapy and reported that Link was taking computer classes, his mood was much improved, he was more optimistic and his fears of water had subsided. Although it appears Dr. Brassel's three goals for

---

[1] *See* EPEC Project, the Robert Wood Johnson Foundation, Medications Commonly Used in Palliative Medicine in United States, 1999, *listing* Klonopin and Wellbutrin; *See also* http://www.seroquel.com/, ("Although SEROQUEL is not able to cure your condition, treatment can help manage your symptoms and help you feel better.").

4

Link's therapy were all achieved by August 19, 2002, NDC has continued to provide treatment until the date of filing this Motion.

Although it is not known whether he was referred, on March 18, 2002, Link visited chiropractor Dr. Garland Greene, complaining of back and neck pain. Dr. Greene referred Link's records for a radiographic evaluation to Dr. Dennis Skogsbergh, who on March 22, 2002, reported that Link had good flexion and extension without instability, the anterior soft tissue dimension was normal, interspacing and alignment were normal, there was no cervical rib formation and no evidence of recent traumatic dissolution of the osseous architecture nor gross articular derangement.

On May 29, 2002, Dr. Mixon referred Link to neurosurgeon Dr. Wallace K. Garner for further evaluation and treatment of low back pain. After examination Dr. Garner found no evidence of *cauda equina* or nerve root compression, no abnormalities in the low back curvature, no lower extremity motor or sensory deficit, no evidence of a radiculopathy and no evidence of disc herniation. Dr. Garner also explained to Link that he did not have a surgically treatable problem with regard to his spine and the degree of pain he was experiencing at that time seemed to exceed objective findings.

On July 15, 2002, Dr. Greene ordered a MRI to be taken of Link's left hip and referred the MRI to Dr. Robert Mariano for interpretation. Dr. Mariano found there was no evidence of abnormal signs involving the femoral head or acetabulum, no significant joint effusion was present, no abnormal marrow signal was identified, no evidence of fracture, no abnormalities in the appearance of the right hip and no significant abnormality was identified.

On the continued subjective complaints of pain, Dr. Greene referred Link to Dr. Eric Dominguez at the Center for Pain Medicine where he was examined, treated and advised to

begin aquatic therapy. Although there have been no objective findings or treatments prescribed for the cure of a determined trauma or malady, NDC has furnished treatment by physical therapists, orthopedic specialists, general practitioners, psychiatrists, psychologists and pain specialists.

MAXIMUM MEDICAL RECOVERY

From February 25, 2002 to date, Link has received psychiatric and chiropractic treatment, physical therapy and pain management at his request. The law clearly states that the employer has an obligation to provide maintenance and cure for any injury or condition that an employee sustains while in the service of the ship. This obligation ends when the seaman reaches maximum medical recovery. *See Farrell v. United States*, 336 U.S. 511, 519, 1949 A.M.C. 613, 619 (1949) and its progeny, *cited* herein. Because it has been medically determined that Link has been treated for all psychiatric and chiropractic conditions he sustained while in the service of the Tug SWIFT, and that he has reached maximum medical recovery for all psychiatric conditions (*See* Affidavit of Dr. Paul A. Mansheim, attached hereto as Exhibit "1") and all orthopedic problems (See Affidavit of Dr. Felix M. Kirven, attached hereto as Exhibit "2"), it is proper for an order to be entered approving and confirming the discontinuance of the payment of maintenance and cure to and on behalf of Troy A. Link.

**II.    BECAUSE JEFFREY SLATON HAS REACHED MAXIMUM MEDICAL RECOVERY HE IS NOT ENTITLED TO ADDITIONAL MAINTENANCE AND CURE.**

NDC is not obligated to pay maintenance and provide cure to Slaton after he attains maximum medical recovery. Maintenance and cure began on or about February 25, 2002, after Slaton allegedly sustained injuries on the Tug SWIFT as a result of the collision with the M/V

A.V. KASTNER. After being treated at the University of Maryland Hospital, Shock Trauma Center, Slaton complained of psychological, orthopedic and optometric problems.

On April 22, 2002 psychologist Dr. Thomas Pasquale examined Slaton and recommended that he remain absent from employment while he was undergoing treatment. However, on June 8, 2002, Slaton expressed his desire to return to work that did not require duties on or near the water. On August 20, 2002, Dr. Pasquale stated that Slaton's mental condition had improved to the extent that it was within normal limits.

Dr. Anthony Distasio, an orthopaedic, examined Slaton on March 4, 2002 and found that he had cervical contusion and a right shoulder strain and on later examination determined that he had a right rotator cuff tear. On May 22, 2002, Dr. Distasio performed an arthroscopy and subacromial decompression and inserted a Pain-Buster perioperative pain control catheter system to his right shoulder. Following his surgery, Slaton underwent physical therapy for rehabilitation of his shoulder and on March 7, 2003, Dr. Distasio stated that Slaton has been fit for restricted duty since January 16, 2003.

Dr. Stephen Scoper, an optomologist, examined Slaton on April 3, 2002 for complaints of pain in his eyes and on September 24, 2002, stated that in examining his eyes he did not see any medical reason to cause his complaint.

MAXIMUM MEDICAL RECOVERY

From February 25, 2002 to the date of this motion, Slaton has received psychological, orthopedic and optometric treatment for the medical problems relating to the casualty. The law clearly states that the employer has an obligation to provide maintenance and cure for any injury or condition, which an employee sustains while in the service of the ship, and that the obligation ends once the seaman reaches maximum medical recovery. *See Farrell v. United States*, 336

U.S. 511, 519, 1949 A.M.C. 613, 619 (1949) and its progeny, *cited* herein.  Because it has been medically determined that Slaton has been treated for all diagnosed psychological, orthopedic and/or optometric conditions, sustained while in the service of the Tug SWIFT, and has now reached maximum medical recovery for those conditions (*See* Affidavit of Dr. Paul A. Mansheim, attached hereto as Exhibit "3" and the March 7, 2003 Letter of Dr. Distasio, attached hereto as Exhibit "4"), accordingly, it is proper to enter an order approving and confirming the discontinuance of Slaton's maintenance and cure.

>    **III.   BECAUSE DENNIS WALLACE HAS REACHED MAXIMUM MEDICAL RECOVERY.   HE IS NOT ENTITLED TO ADDITIONAL MAINTENANCE AND CURE.**

Since Wallace has reached maximum medical recovery he is not entitled to the further payments of maintenance and cure.  NDC commenced the payment of maintenance and cure to and on behalf of Wallace on or about February 27, 2002, after he allegedly sustained injuries while in the service of the Tug SWIFT.  On or about February 27, 2002, Wallace was examined by Dr. James Snow of the Darien Family Care Center in Darien, Georgia.  Dr. Snow recommended that he seek psychological and orthopedic treatment.

On April 2, 2002, Dr. Daniel Nagelberg examined Wallace.  Based on Wallace's complaints, Dr. Nagelberg decided to treat him for PTSD.  Dr. Nagelberg's treatment plan included anxiety/stress reduction, process guilt feelings and setting goals for the future.  Dr. Nagelberg began treating Wallace for PTSD through psychotherapy sessions.  On August 5, 2002, Dr. Nagelberg reported that everything is status quo, Wallace's anxiety is better and he appears stable.  Although Dr. Nagelberg determined that Wallace was stable on August 5, 2002, Norfolk Dredging has continued to provide psychotherapy sessions.

On March 27, 2002 Dr. John Lovejoy of Jacksonville, Florida examined Wallace and found that he was probably suffering from lumbar sprain and strain with cervical sprain and strain. Dr. Lovejoy treated Wallace with deep moist heat massage to the neck and back and exercises. On June 11, 2002, Dr. Lovejoy had a MRI taken of Wallace's spine. After reviewing the MRI, Dr. Lovejoy determined that surgery would not improve any condition and, instead, suggested the possibility of employing pain management therapy.

## MAXIMUM MEDICAL RECOVERY

From February 25, 2002 to date, Wallace has received psychological and orthopedic treatment for his complaints. According to the authorities, the employer has an obligation to provide maintenance and cure for an injury or condition, which an employee sustains while in the service of the ship, until the seaman reaches maximum medical recovery. *See Farrell v. United States*, 336 U.S. 511, 519, 1949 A.M.C. 613, 619 (1949) and its progeny, *cited* herein. Because it has been medically determined that Wallace has been treated for the completed psychological and orthopedic conditions alleged to be sustained while in the service of the Tug SWIFT, and he has reached maximum medical recovery for all psychiatric and orthopedic conditions (*See* Affidavit of Dr. Paul A. Mansheim, attached hereto as Exhibit "5"; *see also* Affidavit of Dr. Felix M. Kirven, attached hereto as Exhibit "6"), this Court should approve and confirm the discontinuance of the payment of maintenance and cure.

## CONCLUSION

WHEREFORE, Norfolk Dredging requests this Honorable Court to enter an Order approving and confirming the termination of the payment of maintenance and cure on behalf of Troy Link, Jeffrey Slaton and Dennis Wallace.

                            NORFOLK DREDGING COMPANY

                            By_____/s/_____
                                   Of Counsel

David W. Skeen, Esquire
Wright, Constable & Skeen, LLP
One Charles Center, 16th Floor
100 N. Charles Street
Baltimore, MD  21201-3812
(410) 659-1305

David H. Sump, VSB # 28897
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
Norfolk, VA  23510
(757) 623-3000

Counsel for Norfolk Dredging Company

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July, 2003, a true and correct copy of the foregoing brief was mailed to:

| | |
|---|---|
| Paul D. Bekman, Esquire<br>Israelson, Salsbury, Clements & Bekman, LLC<br>300 W. Pratt Street, Suite 450<br>Baltimore MD 21201<br><br>Counsel for Troy A. Link and Dennis Wallace | Ralph Rabinowitz, Esquire<br>Rabinowitz, Swartz, Taliaferro,<br> Lewis, Swartz & Goodove, P.C.<br>Town Point Center<br>150 Boush Street<br>Norfolk, VA 23510<br><br>Counsel for Troy A. Link and Dennis Wallace |
| Robert M. Schwartzman, Esquire<br>Lord & Whip, P.A.<br>Charles Center South<br>36 South Charles Street, 10th Floor<br>Baltimore, MD 21201<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell | C. Arthur Rutter, III, Esquire<br>Deborah C. Waters, Esquire<br>Rutter, Walsh, Mills & Rutter, LLP<br>415 St. Paul's Boulevard<br>Norfolk, VA 23510<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell |
| Thomas B. Shuttleworth, Esquire<br>Shuttleworth, Ruloff, Giordano & Swain, P.C.<br>4525 South Boulevard, Suite 300<br>Virginia Beach, VA 23452<br><br>Counsel for the Estate of Justin Maurice Bryant | Peter Ayers Wimbrow, III, Esquire<br>4100 Coast Highway<br>Ocean City, MD 21842<br><br>Counsel for the Estate of Justin Maurice Bryant |
| J. Stephen Simms, Esquire<br>Simms Showers LLP<br>20 South Charles Street, Suite 702<br>Baltimore, MD 21201<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust | Patrick M. Brogan, Esquire<br>Davey & Brogan, P.C.<br>101 Granby Street, Suite 300<br>Norfolk, VA 23510<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust |
| James W. Bartlett, III, Esquire<br>Semmes, Bowen & Semmes<br>250 W. Pratt Street, 16th Floor<br>Baltimore, MD 21202<br><br>Counsel for Timothy M. Cober | Robert B. Hopkins, Esquire<br>Ober, Kaler, Grimes & Shriver, P.C.<br>120 East Baltimore Street<br>Baltimore, MD 21202<br><br>Counsel for Gypsum Transportation |

                                                        /s/