**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY | * | |
| Plaintiff | * | CONSOLIDATED CASES UNDER |
| v. | * | CIVIL ACTION NO. |
| M/V A.V. KASTNER, her engines, boilers, tackle, etc., <u>in rem</u>, et al., | * | WMN-02-CV-00662 |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

**NORFOLK DREDGING COMPANY'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**
**DISMISSING ALL CLAIMS FOR NON-PECUNIARY AND PUNITIVE DAMAGES**

Norfolk Dredging Company ("NDC"), by counsel, respectfully submits this Memorandum in support of its Motion for Partial Summary Judgment dismissing all claims for non-pecuniary damages and punitive damages.

**I.   BACKGROUND**

This case arises out of a collision in the Elk River in the foggy, pre-dawn hours of February 25, 2002 involving a 550 foot-long bulk freighter, two tug boats and dredge equipment. As a result of this collision, four men died and at least three more were injured while serving as seamen and crewmembers aboard vessels owned and operated by Norfolk Dredging Company. Two Norfolk Dredging Company vessels sank in the collision, and other equipment was damaged or lost. The two vessels responsible for navigating into the collision, M/V A.V.

KASTNER and TUG BUCHANAN 14, experienced minor damage and none of their crew members were injured as a result of the collision.

The series of events leading to the collision began on February 23, 2002 when the Tug BUCHANAN 14, owned and/or operated by Buchanan Marine, led a tow of Norfolk Dredging Company equipment from its yard in Chesapeake, Virginia bound for Delaware City, Maryland. The Tug BUCHANAN 14 had in tow the NDC Dredge JECKYL ISLAND and a laden equipment barge as it proceeded through the Southern Branch of the Elizabeth River into Hampton Roads and the southern extent of the Chesapeake Bay. During this portion of the trip, the Tug BUCHANAN 14 was followed by the smaller Tug SWIFT towing a small crane barge and 500 foot lengths of plastic dredging pipe. The tows were accompanied by two Norfolk Dredging Company work boats to assist the tugs in maneuvering the vessels under tow in restricted waters.

Norfolk Dredging assigned twelve seamen to assist with the tow. Four men (William Bryant as master, Dennis Wallace as mate, Justin Bryant and Troy Link as deckhands) were assigned to the Tug SWIFT. Eight others were assigned to the two work boats (Ricky McLamb, Roy Young, Ronald Bonniville, Clarence McConnell, Ben Dickey, Jeff Slaton, Rusty Gaskill and Donald Mills.) At any given time, six employees of Norfolk Dredging were on duty on the Tug SWIFT or the work boats (2 person crew) while the other six employees were resting, aboard the Tug SWIFT or the Dredge JECKYL ISLAND.

At various times during the transit the master of Tug BUCHANAN 14 agreed that the Tug SWIFT and its equipment would be secured off to the Dredge JECKYL ISLAND, thereby placing all vessels in the tow of the Tug BUCHANAN 14. Between the hours of 0500 and 0630

on February 25, 2002 the Tug BUCHANAN 14 and the Tug Swift, in their position as a single tow, proceeded toward the Chesapeake and Delaware Canal.

The M/V A.V. KASTNER was proceeding through the Chesapeake and Delaware Canal bound for Baltimore. After multiple radio conversations the bridge crew aboard the M/V A.V. KASTNER and the bridge crew aboard the Tug BUCHANAN 14 arranged for a port to port passage in the Elk River. At approximately 0620 Michael Welch, master of Tug BUCHANAN 14, assumed the watch just as the tow was approaching fog as it proceeded in the Elk River. As the entire river was blanketed in fog, Captain Welch resorted to radar to navigate the tow from buoy to buoy on the east side of the Elk River channel and he informed the Tug SWIFT to have the work boats stand by the dredge pipe trailing the tow to ensure that the pipe did not stray near the center of the channel.

Despite having excellent radio communications, at or about 0630 the M/V A. V. KASTNER and the Tug BUCHANAN 14 with Tug Swift and equipment in tow, found themselves in close proximity. Although the Tug BUCHANAN 14 was able to avoid collision by making a hard turn to port, it placed the tow astern, including the Tug SWIFT and Barge RC-811, into the path of the oncoming M/V A.V. KASTNER. The KASTNER was proceeding at a speed of approximately 9 knots when it came into collision with and rammed the NDC equipment barge R.C. - 811 towed directly astern of the Tug BUCHANAN 14. The KASTNER continued through the tow and came into collision with and rammed Tug SWIFT which was secured to the Dredge JECKYL ISLAND. The Tug SWIFT was caused to roll on its side by the impact, and shortly thereafter capsized and sank.

At the time of collision, four NDC employees were on duty on the work boats assisting the tow and were not involved in the collision. Eight employees were aboard the Tug SWIFT.

SWIFT's master, William Bryant, and the SWIFT's offduty deckhand, Justin Bryant did not survive collision.  Two other deceased crewmembers, Ronald L. Bonnivillle and Clarence McConnell, had just been relieved of watch prior to the capsizing and were in their bunks at the time of collision. Dennis Wallace, mate of the Tug SWIFT, and deckhands Jeff Slaton and Troy Link have alleged that they suffered injuries as the result of the casualty.

## II.     STATEMENT OF UNDISPUTED FACTS

The owners of each vessel involved in the collision filed petitions for limitation of liability and the various personal injury and wrongful death litigants filed claims in each limitation action.  The components of claims that have been filed in NDC's limitation action insofar as they are relevant to this motion, are set forth as follows:

**Ronald Lane Bonniville**

The Estate of Ronald Lane Bonniville filed a Claim in NDC's limitation action on April 17, 2002, in which it alleged in Paragraph 2 that Bonniville was serving aboard the TUG SWIFT and/or BARGE RC-811 and as such occupied the status of a seaman.  The Estate alleges in Paragraph 8 that Ronald Bonniville was employed by NDC as a deckhand on the Tug SWIFT. The Estate further alleged in Paragraph 6 that it was bringing an action for personal injuries preceding death and the resultant wrongful death under the Jones Act and the General Maritime Law and demands FIFTY MILLION DOLLARS ($50,000,000.00), TWENTY FIVE MILLION DOLLARS ($25,000,000.00) of which is for punitive damages,    The Estate of Ronald Lane Bonniville further alleges in Paragraph 12 of the Claim that Whitney Renee Bonniville, daughter of Ronald Bonniville, has suffered "substantial losses, grief, sorrow, solace, society, support, services, nurture and guidance due to the death of her father. . ."  These claims are re-stated in

Paragraph 3 of the Amended Answer and Defenses of the Estate of Ronald L. Bonniville filed on April 17, 2002 as well as the pleading of the same title filed on September 3, 2002.

**Clarence McConnell**

The Estate of Clarence McConnell filed a Claim in NDC's limitation action on April 17, 2002, in which it alleged in Paragraph 2 that McConnell was serving aboard the TUG SWIFT and/or BARGE RC-811 and as such occupied the status of a seaman. The Estate claims in Paragraph 3 that NDC was the employer of Clarence McConnell and in Paragraph 6 that it was bringing an action for personal injuries preceding death and the resultant wrongful death under the Jones Act and the General Maritime Law. The Estate of Clarence McConnell demands FIFTY MILLION DOLLARS ($50,000,000.00), TWENTY FIVE MILLION DOLLARS ($25,000,000.00) of which is for punitive damages.

The Estate further alleges in Paragraph 6 of the Claim of the Estate of Clarence McConnell that the Administrator, *inter alia*, is entitled to recover for loss of consortium, loss of society, mental anguish, grief, sorrow and solace of the beneficiaries. This claim was also stated in Paragraph 3 of the Answer and Defenses of the Estate of Clarence McConnell and in the Amended Answer and Defenses of the Estate of Clarence McConnell filed on September 3, 2002 and again in the Amended Claim of the Estate of Clarence McConnell also filed on September 3, 2002.

**William Thomas Bryant**

The Estate of William Thomas Bryant filed a Claim in NDC's limitation action on April 17, 2002, in which it alleged in Paragraph 2 that Bryant was serving aboard the TUG SWIFT and/or BARGE RC-811 and as such occupied the status of a seaman. The Estate alleged in Paragraph 3 of its claim that NDC was the owner/operator of Tug SWIFT and the employer of

William Bryant. The Estate further alleged in Paragraph 5 that it was bringing an action for personal injuries preceding death and the resultant wrongful death under the Jones Act and the General Maritime Law and The Estate of William Thomas Bryant demands FIFTY MILLION DOLLARS ($50,000,000.00), TWENTY FIVE MILLION DOLLARS ($25,000,000.00) of which was for punitive damages. (See Paragraph 6, Claim of Estate of William Bryant).

In Paragraph 5 of the Claim, Mary Holloman Bryant, as the claimant, makes a claim for mental anguish, emotional trauma, loss of consortium, loss of society, grief, sorrow and solace of the beneficiaries. These allegations are re-stated in Paragraph 3 of the Estate's Amended Answer and Defenses of the Estate of William Thomas Bryant filed on September 3, 2002 and in Paragraph 5 of the Amended Claim of the Estate of William Thomas Bryant filed on September 3, 2002.

**Jeffrey Slaton**

Jeffrey Slaton filed a Claim in NDC's limitation action on April 17, 2002, in which he alleged in Paragraph 2 that he was serving aboard the TUG SWIFT and/or BARGE RC-811 and as such occupied the status of seaman. Slaton alleges in Paragraph 3 of the same pleading that Slaton was employed by NDC, the owner and operator of Tug SWIFT. Slaton further alleged in his Answer that claim is being made under the Jones Act and the General Maritime Law. Jeffrey Slaton demands TEN MILLION DOLLARS ($10,000,000.00), FIVE MILLION DOLLARS ($5,000,000.00) of which is for punitive damages.

**Justin Bryant**

The Estate of Justin Bryant filed a Claim on Behalf of a Deceased Party in the NDC limitation action on April 12, 2002 in which it alleged in Paragraph 1 that Justin Bryant was a seaman injured and killed due to the unseaworthiness of the Tug SWIFT and Barge RC-811. In

6

its Answer and Defenses of the Estate of Justin Bryant to the Buchanan limitation action, filed on May 7, 2002, the Estate admitted in Paragraph 5 of its Answer that four members of the crew of Tug SWIFT lost their lives. One of those crewmembers was Justin Bryant. The Estate of Justin Bryant, in its Amended and Supplemental Answer, demands FIFTY MILLION DOLLARS ($50,000,000.00), TWENTY FIVE MILLION DOLLARS ($25,000,000.00) of which is for punitive damages. (See Pages 9-10, Amended Answer).

In Count II of the Amended Answer Auston Johnson and Marsha Johnson, parents of the deceased Justin Bryant, assert claims for loss of society, companionship, comfort, protection, feeling of care, attention, advice and counsel of their son, Justin. (See Para. 34, Amended Answer). The Johnsons also claim for mental anguish and emotional pain and suffering. (See Para. 35, Amended Answer).

### III.   NON-PECUNIARY DAMAGE CLAIMS MUST BE DISMISSED BECAUSE THESE DAMAGES ARE NOT RECOVERABLE BY JONES ACT SEAMEN AGAINST THEIR EMPLOYER

### LEGAL ANALYSIS

**A.   Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine issue as to any material fact in the case, and it appears from the pleadings and any supporting affidavits or depositions that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 2003 U.S. Dist. LEXIS 11826, *8 -*9 (D. Md. 2003). To defeat a motion for summary judgment, the nonmoving party must ultimately show the existence of genuine factual disputes

that are material to the issues to be decided.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

**B.    Non-Pecuniary Damages are Not Recoverable as a Matter of Law by Jones Act Seamen Upon Any Claim Brought Under the Jones Act or the General Maritime Law for Injuries or Death Sustained in Territorial Waters.**

Any seaman who suffers personal injury or wrongful death in the course of his employment has an action for recovery of damages as provided by the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*  The United States Supreme Court, in the case of *Michigan Central Railroad v. Vreeland,* 227 U.S. 59 (1913), determined that only pecuniary losses are recoverable under FELA and therefore the Jones Act has a similar restriction.  Jones Act seamen may recover as part of pecuniary damages for personal injury: 1) past lost wages; 2) lost future earning capacity; 3) past and future medical expenses; 4) pain and suffering and 5) prejudgment interest.  *See Schoenbaum, Thomas J.*, ADMIRALTY AND MARITIME LAW, 306-313 (3rd. ed. 2001).   Damages for wrongful death are limited to pecuniary damages and may *not* include loss of society and consortium or punitive damages.   *See Miles v. Apex Marine Corp.* 498 U.S. 19, 1991 AMC 1 (1990).  Loss of society includes love, affection, care, attention, companionship, comfort and protection of the decedent's family members.  *See Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 587, 1973 AMC 2572, 2582 (1974). Grief, bereavement, anxiety, distress or mental pain and suffering of the beneficiaries are also non-pecuniary damages.  *See Id.*

Each wrongful death claimant in this litigation has alleged a claim for loss of various non-pecuniary damages, such as loss of consortium, loss of society, solace and grief, etc.  The United States Supreme Court, in *Miles v. Apex Marine Corporation,* reviewed the application of

8

non-pecuniary damages in Jones Act cases and in general maritime claims brought by Jones Act seamen or their estates. The Court confirmed that there is no recovery for loss of society in a Jones Act wrongful death action. *See Miles*, 498 U.S. at 32, 1991 AMC at 11. This is because the Jones Act was enacted by incorporating the Federal Employee Liability Act damages scheme which contained a pecuniary limitation on damages. *See Miles*, 498 U.S. at 32, 1991 AMC at 10. The Court in *Miles* specifically confronted the issue of whether a Jones Act seaman could recover non-pecuniary losses for breach of the employer's warranty of seaworthiness, even though such a recovery was not available for under the Jones Act itself. *See Miles,* 498 U.S. at 32-33, 1991 AMC at 11.

In denying the availability of non-pecuniary damages to a Jones Act seaman's general maritime claim for unseaworthiness, the Court stated:

> It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence.

1991 AMC at 11.

The Court concluded by stating: "Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOSHA, the Jones Act or general maritime law." *Miles*, 498 U.S. at 33, 1991 AMC at 11. The decision of the United States Supreme Court in *Miles v. Apex Marine* is exactly on point with the claims made in this litigation and therefore the claims for non-pecuniary damages should be denied.

Local courts have followed the *Miles* decision in cases involving Jones Act seamen. As stated in *Edward v. Jones*, 1999 AMC 1078, 1078 (D. Md. 1999),

> The Supreme Court's decision in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 1991 AMC 1 (1990), proscribed the availability of punitive damages in personal injury actions brought by seamen. This change in the general maritime rule was made to

9

> conform it with the statutory provisions contained in the Jones Act and Death on the High Seas Act, which limit recovery to pecuniary damages. *See* DiBiagio, *Fostering Uniform Substantive Law and Recovery -- The Demise of Punitive Damages in Admiralty and Maritime Personal Injury and Death Claims*, 25 U. Balt. L. Rev. 1, 4-6 (1995). The only published post-*Miles* decision from within the Fourth Circuit limits, however, the holding in *Miles* to actions involving seamen.

1999 AMC at 1078-79.

Another court within this circuit also addressed the issue of the nature of recovery available to seamen killed within territorial waters. In *In re Complaint of Goose Creek Trawlers*, 972 F. Supp. 946, 1997 AMC 1546 (E.D.N.C. 1997) the court found:

> As a result, the court concludes that this case is governed by Miles v. Apex and thus, claimant is prevented from recovering nonpecuniary damages or damages for lost future wages. By so holding, the court complies with the "constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.'" Miles, 498 U.S. at 28 (citations omitted).

972 F. Supp. at 950, 1997 AMC at 1550-51.

Loss of consortium claims are also impermissible after the decision in *Miles*. In a case decided by the Honorable Judge William Nickerson, *Nelson v. Puerto Rico Marine Management, Inc.,* 1992 AMC 2189 (D. Md. 1992), the following analysis is found:

> This Court notes that the district court decisions addressing this issue unanimously conclude that loss of consortium damages are not available in cases arising out of injuries to a Jones Act seaman. See *Nelsen v. Research Corp. of the Univ. of Hawaii* (D. Haw. February 14, 1992); *Wright v. K-C Towing Co.* (E.D. La. October 8, 1991); *Donaghey v. Ocean Drilling & Exploration Co.,* 1992 AMC 528, 766 F.Supp. 503 [*2190] (E.D. La. 1991); *Cater v. Placid Oil Co.,* 1992 AMC 524, 760 F.Supp. 568 (E.D. La. 1991); *Breland v. Western Oceanic, Inc.,* 1991 AMC 2872, 755 F.Supp. 718 (W.D. La. 1991); *Anglada v. Tidewater, Inc.,* 1991 AMC 1131, 752 F.Supp. 722 (E.D. La. 1990). n1 This Court now joins the weight of authority, and concludes that Jane Nelson's claim cannot move forward.

1992 AMC at 2189.

IV. **PUNITIVE DAMAGES CLAIMS MUST BE DISMISSED BECAUSE THESE DAMAGES ARE NOT RECOVERABLE BY JONES ACT SEAMEN AGAINST THEIR EMPLOYER**

## LEGAL ANALYSIS

The pleadings of each punitive damage claimant in NDC's limitation action assert that they were employed by NDC as Jones Act seamen aboard the TUG SWIFT and/or BARGE RC-811. Each now claims punitive damages from NDC under the Jones Act and General Maritime Law.

It is axiomatic that punitive damages are not recoverable as a matter of law by a Jones Act seaman upon any claim brought under the Jones Act or the General Maritime Law for injuries or death sustained in territorial waters. *See* BENEDICT ON ADMIRALTY §84a, (7ed. 2002) ("punitive damages are not available in an action against a seaman's employer to recover for the death of a seaman, whether the claim is brought under the Jones Act … or general maritime law, and whether the death occurs on the high seas or in territorial waters." *Id.* at 7-69.); *Schoenbaum, Thomas J.*, ADMIRALTY AND MARITIME LAW, (3rd. ed. 2001) ("punitive damages may not be awarded in a seaman's personal injury or death case either under the Jones Act or unseaworthiness." *Id.* at 228); *See generally Miles v. Apex Marine Corp.*, 498 U.S. 19,

1991 AMC 1 (1990)[1]; *See also Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 203, 1994 AMC 1372, 1377 (1st Cir. 1994) (*holding* "an admiralty court may not extend the remedies available in an unseaworthiness action under the general maritime law to include punitive damages"); *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1459, 1993 AMC 1217, 1228 (6th Cir. 1993), *cert.* denied, 510 U.S. 914 (1993) (*holding* "punitive damages are not available in a general maritime law unseaworthiness action for the wrongful death of a seaman"); *In re Cropwell Leasing*, 1996 U.S. Dist. LEXIS 18202, *7 (E.D. La. 1996) (*holding* "a Jones Act seaman cannot pursue punitive damages under general maritime law."); *Brown v. F/V Lady Alice*, 1995 AMC 73, 75 (D. Haw. 1994) (*holding* "punitive damages are not available under Jones Act claims … punitive damages are not available under general maritime law."); *Ortega v. Oceantrawl*, 822 F.Supp. 621, 623-24, 1993 AMC 902, 905 (D. Alaska, 1992) (*holding* "punitive damages are now unavailable in personal injury suits under both the Jones Act and under general maritime law as to the unseaworthiness claim"); *Bayes v. OPI Int'l Inc.*, 1994 AMC 286, 288 (S.D. Tex. 1992) (*holding* "[t]he accepted rule is that punitive damages are nonpecuniary in nature … because the Jones Act clearly precludes recovery for nonpecuniary losses, and the Supreme Court has held that elements of damages are not recoverable under the Jones Act cannot be recovered under the general maritime law, and the Fifth Circuit has extended that holding to

---

[1] While *Miles* concerned nonpecuniary loss of society damages and did not specifically mention punitive damages, courts consistently have applied *Miles* to claims for punitive damages by classifying punitive damages as a type of nonpecuniary damage. *Kopczynski v. The Jacqueline*, 742 F.2d 555, 561 (9th Cir.1984) ("Punitive damages are nonpecuniary."), *cert. denied*, 471 U.S. 1136, 86 L. Ed. 2d 696, 105 S. Ct. 2677 (1985); *see e.g., Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1507 (5th Cir. 1995) (concluding that post-*Miles* injured seamen were not entitled to recover punitive damages under the general maritime law); *Anderson v. Texaco, Inc.*, 797 F. Supp. 531, 534 (E.D.La.1992) ("The post-Miles district court cases, in this district and in others, speak with one voice in concluding that punitive damages are nonpecuniary and, therefore, are not recoverable under Miles's interpretation of the Jones Act.") (collecting cases).

personal injury cases involving Jones Act seamen [plaintiff's] claim for punitive damages under the general maritime law must also be dismissed."); *In re Cleveland Tankers, Inc.*, 791 F.Supp. 679, 682 (E.D. Mich. 1992) (*holding* "*Miles* bars plaintiffs' claims for punitive damages under the general maritime law claims for unseaworthiness.").

This Court, in considering this question in *Edward v. Jones*, 1999 AMC 1078, 1078 (D. Md. 1999) observed that "[t]he Supreme Court's decision in *Miles v. Apex Corp.*, **proscribed the availability of punitive damages in personal injury actions brought by seaman**." (emphasis added) (citations omitted.)

Since there have been no Fourth Circuit or Supreme Court decisions contrary to *Edward v. Jones*, the law in this District does not allow Jones Act Seaman to recover punitive damages upon claims for personal injury or death.

## V.    CONCLUSION

Because the prevailing authorities are to the effect that a Jones Act seaman may not recover punitive damages and non-pecuniary damages from his employer for personal injuries or death sustained in territorial waters, NDC respectfully requests this Court to enter an Order granting it Partial Summary Judgment dismissing all claims for punitive damages and non-pecuniary damages that have been filed against NDC in its Limitation Action and for such other and further relief as this Court considers proper.

This the 4th day of August, 2003.

NORFOLK DREDGING COMPANY


By_____
       Of Counsel

David W. Skeen, Esquire
Wright, Constable & Skeen, LLP
One Charles Center, 16th Floor
100 N. Charles Street
Baltimore, MD  21201-3812
(410) 659-1305

David H. Sump, VSB # 28897
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
Norfolk, VA  23510
(757) 623-3000

Counsel for Norfolk Dredging Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2003, a true and correct copy of the foregoing Motion and Memorandum was sent electronically or mailed to:

| | |
|---|---|
| Paul D. Bekman, Esquire<br>Israelson, Salsbury, Clements & Bekman, LLC<br>300 W. Pratt Street, Suite 450<br>Baltimore MD  21201<br><br>Counsel for Troy A. Link and Dennis Wallace | Ralph Rabinowitz, Esquire<br>Rabinowitz, Swartz, Taliaferro,<br> Lewis, Swartz & Goodove, P.C.<br>Town Point Center<br>150 Boush Street<br>Norfolk, VA  23510<br><br>Counsel for Troy A. Link and Dennis Wallace |
| Robert M. Schwartzman, Esquire<br>Lord & Whip, P.A.<br>Charles Center South<br>36 South Charles Street, 10th Floor<br>Baltimore, MD 21201<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell | C. Arthur Rutter, III, Esquire<br>Deborah C. Waters, Esquire<br>Rutter, Walsh, Mills & Rutter, LLP<br>415 St. Paul's Boulevard<br>Norfolk, VA  23510<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell |
| Thomas B. Shuttleworth, Esquire<br>Shuttleworth, Ruloff, Giordano & Swain, P.C.<br>4525 South Boulevard, Suite 300<br>Virginia Beach, VA 23452<br><br>Counsel for the Estate of Justin Maurice Bryant | Peter Ayers Wimbrow, III, Esquire<br>4100 Coast Highway<br>Ocean City, MD  21842<br><br>Counsel for the Estate of Justin Maurice Bryant |
| J. Stephen Simms, Esquire<br>Simms Showers LLP<br>20 South Charles Street, Suite 702<br>Baltimore, MD  21201<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust | Patrick M. Brogan, Esquire<br>Davey & Brogan, P.C.<br>101 Granby Street, Suite 300<br>Norfolk, VA  23510<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust |
| James W. Bartlett, III, Esquire<br>Semmes, Bowen & Semmes<br>250 W. Pratt Street, 16th Floor<br>Baltimore, MD 21202<br><br>Counsel for Timothy M. Cober | Robert B. Hopkins, Esquire<br>Ober, Kaler, Grimes & Shriver, P.C.<br>120 East Baltimore Street<br>Baltimore, MD  21202<br><br>Counsel for Gypsum Transportation |

_____

15