IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY, | * | |
| Plaintiff | * | |
| v. | * | Consolidated Cases Under |
| | | Civil Action No. WMN-02-662 |
| M/V A.V. KASTNER, etc., et al. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \*

MEMORANDUM IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT

Gypsum Transportation, Limited; Buchanan Trust; Buchanan Marine, L.P.; and Captain Timothy M. Cober (collectively "Movants"), by their undersigned attorneys, submit this memorandum in support of their Motion for Partial Summary Judgment.

I.  UNDISPUTED FACTS

The facts upon which this Motion for Partial Summary Judgment are based are not in dispute.

At approximately 0645 hours on February 25, 2002, a vessel collision occurred in the Elk River in the upper Chesapeake Bay. The vessels involved were the M/V A.V. KASTNER, which was owned and operated by Gypsum Transportation, Limited and piloted by Captain Timothy M. Cober; the Tug BUCHANAN 14, which was owned by Buchanan Trust and operated by Buchanan Marine, L.P.; and four vessels owned by Norfolk Dredging Company, including the Tug SWIFT. As a result of the collision, four crewmen employed by Norfolk Dredging Company on board the Tug SWIFT died. Three other Norfolk Dredging Company crewmen who were on board the Tug SWIFT allege that they suffered personal injuries.

The estates and/or the survivors of the deceased crewmen and the injured crewmen (collectively "Claimants") have filed Claims in this consolidated limitation of liability action in which they allege that they or their decedents were employed as seamen by Norfolk Dredging Company.  Claimants seek recovery for, *inter alia*, loss of society, loss of consortium, grief, and other emotional conditions or losses allegedly suffered by persons other than the seamen.  These types of alleged losses will be referred to collectively as "loss of society."

## II.  DISCUSSION

The survivors of seamen who die as a result of a casualty in territorial waters are entitled to pursue a wrongful death remedy for recovery of their pecuniary losses resulting from the death, and the estates of those seamen are entitled to pursue a survival action for recovery of the seamen's conscious pain and suffering prior to their death.  Injured seamen also may pursue recovery of pecuniary losses and for pain and suffering.  The question presented in this case is whether Claimants can pursue recovery of damages for loss of society.  A long line of general maritime law cases, beginning with Miles v. Apex Marine Corp., 498 U.S. 19 (1990), establishes that they cannot.

    A.    Seamen and their survivors cannot recover for loss of society.

In Miles v. Apex Marine Corp., 498 U.S. 19 (1990), the Supreme Court held that the general maritime law does not allow the mother of a deceased seaman to recover for loss of society or the estate of the decedent to recover for lost future earnings.  The seaman's mother had claimed such damages under the Jones Act and the general maritime law.  Id. at 37.  As to recovery for loss of society, Justice O'Connor, writing for the Court, stated:

> The Jones Act applies when a seaman has been killed as a
> result of negligence, and it limits recovery to pecuniary loss.  The

> general maritime claim here alleged that [Plaintiff's decedent] had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

Id. at 33.

The Supreme Court observed that in so holding it was removing an anomaly it had created in Mobil Oil Corp. v. Higginbotham, 436 U.S. 618 (1978), in which is held that recovery for loss of society was not available under the Death on the High Seas Act ("DOSHA") (46 U.S.C. App. § 761 et seq.), which applies to both seamen and nonseamen and all types of defendants:

> Our decision also remedies an anomaly we created in Higginbotham. Respondents in that case warned that the elimination of loss of society damages for wrongful deaths on the high seas would create an unwarranted inconsistency between deaths in territorial waters, where loss of society was available under Gaudet, and deaths on the high seas. We recognized the value of uniformity, but concluded that a concern for consistency could not override the statute. Higginbotham, *supra*, 436 U.S. at 624. Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOSHA, the Jones Act, or general maritime law.

498 U.S. at 33. That uniform rule is that nonpecuniary damages such as loss of society cannot be recovered for the death of a seaman.

    B.    <u>Damages for loss of society cannot be recovered in personal injury actions.</u>

The Circuit Courts of Appeal and the United States District Court for this District have held that the Miles restrictions on damages apply not only to death cases but also to cases involving seamen's personal injuries.

In Murray v. Anthony J. Bertucci Construction Co., 958 F.2d 127, 132, 1992 AMC 2020, 2035 (5th Cir. 1992), the wife and children of an injured seaman sought recovery for loss of society, but the court concluded that Miles precluded any such recovery.  See also Horsley v. Mobil Oil Corp., 15 F.3d 200, 1994 AMC 1372 (1st Cir. 1994) (damages for loss of parental and spousal society and punitive damages are not recoverable under the general maritime law for injury to a seaman); Lollie v. Brown Marine Service, Inc., 995 F.2d 1565, 1993 AMC 2947 (11th Cir. 1993) (the general maritime law does not authorize recovery for loss of society or consortium in personal injury cases); Smith v. Trinidad Corp., 992 F.2d 996, 1993 AMC 2083 (9th Cir. 1993)( "[W]ives of injured mariners may no longer sue the ship for damages for their nonpecuniary losses, if any, caused by injuries to the spouse."); Michel v. Total Transp., Inc., 957 F.2d 186, 191, 1993 AMC 2406 (5th Cir. 1992) ("Miles applies to loss of society or consortium in personal injury cases brought under the general maritime law.").

In Nelson v. Puerto Rico Marine Mgmt., Inc., 1992 AMC 2189 (D. Md. 1992), a seaman sustained multiple injuries while attempting to open a stuck steam stop valve on the S/S NUEVO SAN JUAN.  The seaman sought recovery under the Jones Act and the general maritime law, and his wife sought compensation for loss of consortium.  The plaintiffs argued that Miles related solely to wrongful death claims, but this Court rejected that argument, concluding "that the spouse of a Jones Act seaman may not maintain a cause of action for loss of consortium that is derivative of the injury to that seaman."  Id. at 2192.

      C.    <u>Loss of society damages cannot be recovered from nonemployer defendants.</u>

It is noteworthy that in <u>Miles</u> the deceased seaman's mother brought an action against the vessel owner, charterer, and operator, only one of which could have been his employer (for Jones Act purposes) and only one of which could have been the shipowner (for general maritime law unseaworthiness purposes). Nonetheless, the Supreme Court's holdings that under the general maritime law the mother could not recover for loss of society and that the decedent's estate could not recover for the decedent's lost future earnings applied to all three defendants. 498 U.S. at 37. Subsequent courts have held the <u>Miles</u> restrictions on the damages a seaman may recover under the general maritime law to be equally applicable when the defendant is other than a shipowner/employer.

In <u>Carnival Cruise Lines v. Red Fox Indus., Inc.</u>, 813 F.Supp. 1185, 1993 AMC 2749 (E.D. La. 1993), <u>aff'd</u>, 18 F.3d 935 (5th Cir. 1994), the heirs of seamen killed while cleaning and maintaining a marine-sanitation device and an injured seaman and his wife and children sued the manufacturer of the device seeking, *inter alia*, loss of society damages under the general maritime law. The court held that loss of society damages are unavailable to plaintiffs under the general maritime law, saying:

> The uniformity sought by the Court in <u>Miles</u> is best served by a rule that denies loss of society damages as against a third-party manufacturer when they would be similarly denied against an employer. Indeed, the basic premise of <u>Miles</u> is that courts should not "sanction more expansive remedies in a judicially created cause of action ... than Congress has allowed." [quoting from <u>Miles</u>, 498 U.S. at 32] Allowing plaintiffs to recover loss of society damages against [the manufacturer] when they would not otherwise be recoverable against [the shipowner/employer] would strike a blow to the policy <u>Miles</u> sought to establish. Allowing relatives of injured seamen to circumvent the clear mandate of the Supreme Court merely because of the fortuitous presence of a third-party

manufacturer would provide a recovery which Congress has not allowed.

813 F.Supp. at 1187, 1993 AMC at 2751.

More recently, in In re Goose Creek Trawlers, Inc., 972 F.Supp. 946, 1997 AMC 1546 (E.D.N.C. 1997), the estate of a self-employed commercial shrimper filed a claim against the owner of a fishing vessel that had collided with the decedent's 29-foot boat. The fishing vessel's owner, Goose Greek Trawlers, Inc. ("Goose Creek"), filed a limitation of liability action and then moved for partial summary judgment to limit the estate's recovery to pecuniary damages (a pain and suffering claim was not sustainable). The estate tried to avert the application of Miles to the case, arguing that the decedent was not a seaman under the definition of that term in Yahama Motor Corp. v. Calhoun, 516 U.S. 199 (1996), since he was not covered by any statutory mechanism. 972 F.Supp. at 950, 1997 AMC at 1550. The estate argued that the decedent fell within the "Yahama exception" to Miles, allowing it to avail itself of state wrongful death remedies. Noting that the decedent, even if he was not a seaman, was a "person otherwise engaged in maritime trade," the court held that he thereby met the Yamaha definition of "seafarer":

> Thus, although [decedent] is not covered by a comprehensive federal scheme, the plain defining language in Yahama prevents claimant from benefitting under the narrow exception for nonseafarers.
>
> As a result, the court concludes that this case is governed by Miles v. Apex and thus, claimant is prevented from recovering nonpecuniary damages or damages for future lost wages. By so holding, the court complies with the "constitutionally based principle that federal admiralty law should be a system of law coextensive with and operating uniformly with and operating uniformly in, the whole country." Miles, 498 U.S. at 27.

972 F.Supp. at 950, 1997 AMC at 1550-51.

The estate next tried to argue that Miles did not apply to its claim against Goose Creek, because Goose Creek was not the decedent's Jones Act employer. 972 F.Supp. at 950, 1997 AMC at 1551. Finding the cases cited by the estate in support of that proposition to espouse the minority view, the court, citing numerous cases holding to the contrary, rejected that argument, noting that "nothing in the Supreme Court's reasoning in Miles suggests that the case turned upon the identity of the defendant." 972 F.Supp. at 951, 1997 AMC at 1551 (citing Davis *infra*).

In Davis v. Bender Shipbuilding & Repair Co., 27 F.3d 426, 430, 1994 AMC 2587 (9th Cir. 1994), cert. denied, 513 U.S. 1000 (1994), the estates of seamen who drowned when the M/V ALEUTIAN ENTERPRISE sank in the Bering Sea sued the vessel's builder under the general maritime law. The estates alleged negligence on the part of the shipbuilder and sought to pursue a survival action for the lost future income the crewmen would have received but for the shipbuilder's negligence. The shipbuilder filed a motion to dismiss based on the Miles proscription of such damages, and the district court granted the motion. 27 F.3d at 428; 1994 AMC at 2588. On appeal, the estate attempted to distinguish Miles, arguing that the shipbuilder was not a "Jones Act defendant." 27 F.3d at 430, 1994 AMC at 2592. The United States Court of Appeals for the Ninth Circuit rejected this argument, saying:

> There is nothing in Miles' reasoning to suggest that the decision turned upon the identity of the defendant. Indeed, not all of the defendants in Miles were Jones Act employers. Miles, 498 U.S. at 21. Moreover, the principle underlying the Supreme Court's decision in both Miles and Moragne is that general maritime law is intended to supplement the statutory remedies created by Congress, not to enhance or replace them. Miles instructs the lower federal courts that a claim for lost future earnings is not available in connection with a maritime death for which Congress has already

> provided a remedy and has excluded such damages. The identity
> of the defendant is irrelevant to these considerations.

27 F.3d at 430, 1994 AMC at 2592; Trident Marine, Inc. v. M/V ATTICOS, 876 F.Supp. 832, 1995 AMC 2354 (E.D. La. 1994) (nonemployer's motion for partial summary judgment to preclude claims for nonpecuniary loss filed by the personal representatives of the estates of the three seamen granted on the basis of Miles); Earhart v. Chevron U.S.A. Inc., 852 F.Supp. 515, 1994 AMC 762 (E.D. La. 1993) (damages for loss of consortium, society, and/or service are not recoverable in suit under the general maritime law against a nonemployer defendant); Ellender v. John E. Graham & Co., 821 F.Supp. 1136, 1993 AMC 747 (E.D. La. 1992) (motion to dismiss claim of wife of injured seaman for loss of consortium against a nonemployer granted); Duplantis v. Texaco, Inc., 771 F.Supp. 787 (E.D. La. 1991) (wife of commercial fisherman allegedly injured when his fishing nets became entangled in submerged pilings left by the defendant oil company cannot recover for loss of consortium under the general maritime law); Turley v. Co-Mar Offshore Marine Corp., 766 F.Supp. 501 (E.D. La. 1991) (wife of injured Jones Act seaman cannot recover for loss of consortium, services, or society in suit under the general maritime law against his employer and a nonemployer); Trahan v. Texaco, Inc., 625 So. 2d 295 (La. Ct. App. 1993) (the spouse of an injured seaman has no cause of action for loss of consortium against a nonemployer under the general maritime law); Phillips v. Water Towing, Inc., 620 So. 2d 1387 (La. Ct. App. 1993) (rejecting argument that wife of injured seaman could pursue her loss of consortium claim under the general maritime law because the claim was against a nonemployer).

The Supreme Court's recent decision in Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811 (2001), also informs the analysis of the application of Miles to nonemployer

defendants. In <u>Garris</u>, the Supreme Court recognized a wrongful death remedy under the general maritime law for the death of a longshoreman in territorial waters caused by negligence. This decision expanded the wrongful death remedy the Supreme Court had recognized/established in <u>Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375 (1970), for the death of a seaman caused by unseaworthiness, a cause of action available only to seamen. In <u>Garris</u>, the action was against a nonemployer, and, in recognizing a cause of action for wrongful death in territorial waters based on negligence, the Supreme Court minimized, if not eliminated, the distinction between causes of action for wrongful death or personal injury against an employer or against a nonemployer. It recognized a uniform right of action to recover for personal injury or death to a seafarer on territorial waters:

> Because of Congress' extensive involvement in legislating causes of action for maritime personal injuries, it will be the better course, in many cases that assert new claims beyond what those statutes have seen fit to allow, to leave further development to Congress. The cause of action we recognize today, however, is new only in the most technical sense. The general maritime law has recognized the tort of negligence for more than a century, and it has been clear since <u>Moragne</u> that breaches of a maritime duty are actionable when they cause death, as when they cause injury. Congress's occupation of this field is not yet so extensive as to preclude us from recognizing what is already logically compelled by our precedents.

532 U.S. at 820. Similarly, no distinction should be drawn between the damages a seafarer can recover from his employer or from a nonemployer.

The reasoning utilized by the United States Court of Appeals for the Eleventh Circuit in a recent decision in which it denied the recovery of loss of society damages by the nondependant survivor of a nonseaman minor also is instructive in this analysis. In <u>Tucker v. Fearn</u>, 333 F.3d 1216 (11th Cir. 2003), the father of a boy who died in a collision between a powerboat and a

sailboat in territorial waters brought suit against the sailboat operators seeking recovery for loss of society. In affirming the district court's order granting the sailboat operators' motion to strike the claim for loss of society damages, the Eleventh Circuit stated:

> Denying recovery to Tucker for loss of society damages is also consonant with the principle that courts seek a uniform vindication of federal maritime policies. It would be discordant for this Court to sanction additional remedies for deaths of nonseamen occurring in a state's territorial waters than (1) Congress has permitted under DOSHA for death of nonseamen occurring on the high seas, <u>Higginbotham</u>, 436 U.S. at 623, (2) Congress has permitted for seamen under the Jones Act, <u>Miles</u>, 498 U.S. at 32, and (3) the Supreme Court has allowed for seamen under general maritime law, <u>Miles</u>, 498 U.S. at 32-33.
>
> We are also mindful that our decision comports with the "special solicitude" that admiralty law displays for seamen. <u>Moragne</u>, 398 U.S. at 398. A strange anomaly would result if we were to permit the survivors of nonseamen the right to recovery loss of society damages while the survivors of seamen – the traditional wards of admiralty law – are barred from such recovery under the Jones Act and general maritime law. Because neither Congress nor the Supreme Court have ever indicated that admiralty law evinces any particular consideration for nonseamen, we decline to fashion a rule that would permit their survivors a more liberal recovery under general maritime law.

333 F.3d at 1222.

In the same way, it would be discordant to the principle of a uniform vindication of maritime policies if this Court were to hold that nonpecuniary damages are not recoverable by a seaman or his estate when he is suing his Jones Act employer but are available when he is suing a nonemployer defendant. As the <u>Tucker</u> court recognized, the Court in so ruling would be creating an anomaly by granting to the seaman greater recovery than Congress ever intended or the Supreme Court ever has allowed. Instead, this Court, following the "constitutionally based principle that federal admiralty law should be a 'system of law coextensive with and operating

-10-

uniformly in, the whole country'" (Miles, 498 U.S. at 27), should rule, as the vast majority of the courts that have addressed this issue have, that under the general maritime law seamen or their survivors and estates cannot recover from employers or from nonemployers for loss of society.

### III.  CONCLUSION

For the reasons and based upon the authorities cited above, this Court should enter an order holding that Claimants, if they are awarded damages in this action, are not entitled to recover for loss of society.

                                            /S/
James W. Bartlett, III (No. 00017)
Alexander M. Giles (No. 25474)
Semmes, Bowen & Semmes, P.C.
250 West Pratt Street, 16th Floor
Baltimore, Maryland 21201-2423
(410) 539-5040

Attorneys for Captain Timothy M. Cober

                                                      /S/
_____
M. Hamilton Whitman, Jr. (No. 00373)
Robert B. Hopkins (No. 06017)
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 East Baltimore Street, Suite 800
Baltimore, Maryland 21202-1643
(410) 685-1120

Attorneys for Gypsum Transportation, Ltd.
and Beltship Management


                                                      /S/
_____
J. Stephen Simms (No. 4269)
Simms Showers LLP
20 South Charles Street, Suite 702
Baltimore, Maryland 21201
(410) 783-5795


                                                      /S/
_____
Patrick M. Brogan
Davey & Brogan, P.C.
101 Granby Street, Suite 300
Norfolk, Virginia 23514-3188
(757) 622-0100

Attorneys for Buchanan Marine, L.P. and
Buchanan Trust

(B0357917.WPD;1):03298:00294