IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| **NORFOLK DREDGING COMPANY** | * | |
| Plaintiff | * | |
| v. | * | Consolidated Cases Under |
| M/V A.V. KASTNER, etc., et al. | * | Civil Action No. WMN-02-CV-00662 |
| Defendants | * | |

\* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO NORFOLK DREDGING COMPANY'S
MOTION TO APPROVE AND CONFIRM DISCONTINUANCE
OF MAINTENANCE AND CURE**

Claimant Jeffrey M. Slaton submits this Memorandum and attached exhibits in opposition to Norfolk Dredging's Motion to Approve and Confirm Discontinuance of Maintenance and Cure.

### I. LEGAL AUTHORITIES

The obligation of a shipowner who employs seamen to care for them when they are sick or injured is a duty which appeared as early as medieval sea codes. In the United States, the right to receive maintenance and cure is a right created under the general maritime law first mentioned in *Harden v. Gordon*, 11 Fed. Cas. 480 (C.C.D.Me. 1923) and it is the first of four propositions set forth in the landmark case *The Osceola*, 189 U.S. 158, 23 S. Ct. 483, 47 L.Ed. 760 (1903).

"Maintenance" is the right of a seaman to food and lodging if he falls ill or becomes injured while in the service of the ship. *Calmar S. S. Corp. v. Taylor*, 303 U.S. 525, 527, 58 S. Ct. 651, 653 (1938). "Cure" is the right to necessary medical services.

*Id.* In its motion and accompanying memorandum of law, Norfolk Dredging Company ("NDC") does not contest its obligation to pay maintenance to Jeffrey M. Slaton; it merely asks the Court to relieve it of its obligation. As to Mr. Slaton, the request if premature.

The duty to pay maintenance and cure commences when the seaman falls ill or is injured and leaves the vessel. *See, i.e., Morales v. Garijak*, Inc. 829 F. 2d 1355, (1988 A.M.C. 1075 (5th Cir. 1987). This duty continues until the seaman reaches the point of "maximum cure." *Holmes v. J. Ray McDermott & Co.*, 734 F. 2d 1110, 1985 A.M.C. 2024 (5th Cir. 1984). In another landmark maritime decision, *Vaughan v. Atkinson,* 369 U.S. 527, 531-32 (1962), the Supreme Court made it clear that the maintenance and cure relief is "not to be defeated by restrictive distinctions" and, therefore, all doubts should be resolved in the seaman's favor.

Termination of a seaman's maintenance and cure should be based on an "unequivocal medical determination." *Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 388 (5th Cir. 1985). "Cure" has always included the payment of "therapeutic" medical expenses. *Gaspard v. Taylor Diving & Salvage Co., Inc.,* 649 F.2d 372, 374 (5th Cir. (1981), *cert. denied,* 455 U.S. 907 (1982).

The Fourth Circuit articulated the following in *Williams v. Kingston Shipping Co., Inc.,* 925 F.2d 721, 723 (4th Cir. 1991):

> Maintenance and cure provide a seaman who becomes ill or injured in the service of his ship lodging, board, and medical expenses until he reaches maximum recovery. This shipowner's willful, arbitrary failure to pay maintenance and cure gives rise to damages that include a reasonable attorney's fee. *Vaughan v. Atkinson,* 369 U.S. 527, 82 S. Ct. 997, 8 L.Ed.2d 88 (1962).

> Contrary to the position asserted by Kingston, a lawyer's services in pursuing a complete remedy for a wrongful denial of maintenance and cure is not limited simply to the collection of funds for lodging, board, and medical expenses. [F]ailure to give maintenance and cure may give rise to a claim for damages for the suffering and for the physical handicap which follows. *Vaughan,* 369 U.S. at 530 82 S.Ct. at 999. In *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 371 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932), the Court said: If the failure to give maintenance and cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him, the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt.
>
> A text summarizes the precepts of *Vaughan* and *Cortes* and follows:
>
> The penalties for arbitrary or capricious failure to pay maintenance are money damages for any prolongation or aggravation of the physical injury suffered by the seaman; and for expenses incurred by the injured seaman to hire a lawyer to prosecute his claim for maintenance.

In *Johnson v. Marlin Drilling Co.,* 893 F.2d 77, 79 (5th Cir. 1990), the Fifth Circuit held:

> Furthermore, under the *Vaughan* rule, the possibility of physical improvement, expressed by Dr. Jackson, would require a finding in favor of Johnson. Due to the importance of maintenance and cure payments, evidentiary hearings should rarely be denied.

The general rule is termination of disability so a seaman can return to employment in his accustomed trade terminates the remedies of maintenance, cure and unearned wages. A seaman is entitled to maintenance and cure each day he was unable to obtain work or unable to perform work during convalescence. *Wilson v. United States*, 229 F. 2d 277, 1956 A.M.C.308 (2nd Cir. 1956); *Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 1967 A.M.C. 192 (9th Cir. 1966); *Brown v. Aggie & Millie,*

*Inc.*, 485 F.2d 1293, 1973 A.M.C. 2465 (5th Cir. 1973).

A seaman remains entitled to maintenance and cure even if he returns to "light duty". *Capone v. St. Vincent*, 1989 A.M.C. 1782 (D. Mass. 1989). The vessel's obligation to pay maintenance and cure may continue a reasonable time after maximum cure is reached until the seaman is successful in finding substitute employment. *Lamont v. United States*, 613 F.Supp. 588 (S.D.N.Y. 1985).

As is set forth in detail below, Jeffrey M. Slaton has not yet reached maximum medical improvement. In addition, although he has this very week obtained employment outside the maritime trade, he remains unable to return to maritime employment because of his physical and psychological impairments.

## II.  JEFFREY M. SLATON HAS NOT YET REACHED MAXIMUM MEDICAL IMPROVEMENT

The Court must deny NDC's motion because Mr. Slaton has not reached maximum medical improvement. Affidavits of Dr. Pasquale and Charles DeMark attached as **Exhibits 1 and 2** show unequivocally that Mr. Slaton has not reached maximum medical improvement and, therefore, Mr. Slaton is entitled to a continuance of the benefit of maintenance and cure.

Thomas Pasquale, Ph.D. is a licensed clinical psychologist who has been treating Mr. Slaton since April 4, 2002. *Exh. 2 at 1*. He has diagnosed Mr. Slaton as suffering from Post Traumatic Stress Disorder ("PTSD") with corresponding depression and anxiety. He also suffers from hydrophobia, fear of water. *Id.* Dr. Pasquale opines his conditions were caused by Slaton's near death experience he suffered at the time

the Tug SWIFT sank on February 25, 2002. *Id*. at 2. Dr. Pasquale also states Mr. Slaton has not reached maximum medical improvement, also known as, maximum psychological improvement in the field of psychology. *Id.*

The only affidavit provided by Norfolk Dredging is an affidavit of one psychiatrist hired by NDC who has neither met Mr. Slaton nor spoken with him. Paul Mansheim was hired by NDC merely to conduct a records review. He has never actually treated Mr. Slaton. Mr. Slaton's own treating psychologist is in the best position to assess Mr. Slaton's condition. As is clearly stated in his affidavit, Dr. Pasquale opines although Mr. Slaton has improved dramatically with treatment, he has not reached maximum medical improvement. *Id.* Indeed, he estimates treatment will continue as much as one year. *Id.*

Courts have long recognized treating physicians' opinions are entitled to greater weight than examining physicians. *Hensley v. Washington Met. Area Transit Authority,* 655 F.2d 264, 273 n.13 (D.C. Cir. 1981), *cert. denied,* 456 U.S. 904. Norfolk Dredging relies solely on Dr. Mansheim who has neither talked with nor examined Mr. Slaton, thus, his opinion must be given less weight than that of Dr. Pasquale who is well qualified and well acquainted with Mr. Slaton's needs. Given that fact, Dr. Pasquale's assessment that Slaton still requires additional treatment must be taken at full value. In addition, given the fact that the seaman must be given the benefit of the doubt, the court must deny NDC's motion.

Also attached is an affidavit of Charles DeMark, M.S., C.R.C., C.C.M., a certified rehabilitation counselor. **Exh. 2.** In his opinion, Mr. Slaton requires a complete neuro-

psychological evaluation to clarify his neurological status which in turn will assist in his vocational evaluation and rehabilitation. *Id. at 2.* He states Dr. Pugach has recommended such testing be performed and Mr. DeMark agrees and requests the evaluation as well. *Id. and note of Dr. Pugach quoted in detail below.* Mr. DeMark further opines Mr. Slaton is in need of additional vocational rehabilitation services and, based upon his interviews of Slaton's physicians, he is of the impression Slaton has not yet reached maximum medical improvement. *Id.* Dr. Pugach himself could not be reached in time to obtain an affidavit in time for the filing of this response.

As Mr. Slaton's vocational counselor, Mr. DeMark has worked closely with Mr. Slaton to assist him in obtaining a job within his restrictions. Slaton does not dispute NDC's claims that in January 2003 from an orthopaedic standpoint he was released back to work on light duty status with significant restrictions. His not fit for duty status continued from a psychological standpoint until June, 2003, when Dr. Pasquale permitted Mr. Slaton to seek work outside of his trade and not around water. He still was not ready to face bodies of water and ships. *Ex. 1.*

He sought work within his orthopaedic and psychological restrictions and has just obtained a position at Wal-Mart. *Exh. 2 at 2.* Mr. DeMark believes his prognosis is guarded as far as Slaton's ability to perform the work. *Id.*

Norfolk Dredging comes before this Court requesting permission to terminate payment of maintenance and cure, when in fact it has already done so. On July 22, 2003 sent Mr. Slaton a check in the amount of $60.00 stating it was final installment of maintenance to him. (**Exhibit 3**) NDC has long refused to pay for neurological testing recommended by Mr. Slaton's treating neurologist and his vocational rehabilitation

counselor.  A portion of Dr. Pugach's notes from March 27, 2003 state as follows:

> I am still trying to arrange for an autonomic disorders evaluation at UVA. . . . I have never maintained that his condition was definitely not due to the February trauma-- it is simply that . . . autonomic neuropathy is an uncommon condition and I am not able to comment with any certainty either one way or the other on the issue of causation and this is the main reason why I want him to be seen by an autonomic disorders specialist at UVA.  However, I have also explained to him today, that I doubt that his workers' compensation carrier will pay for this, as they have recently sent me a letter indicating that they are not going to pay for any of his medical care related to this condition since they do not feel that it is related to the above-mentioned trauma.

Furthermore, NDC has not paid bills for Dr. Pasquale's counseling of Mr. Slaton for any time following February 27, 2003, although, in all fairness, the statement for services rendered between April 29, 2003 and July 2, 2003 was only recently presented to NDC.   Bills for treatment between February and the beginning of July totaling approximately $1,500.00 remain outstanding, $800 of which is for the February through April time frame. (**Exhibit 4**)   As is evidenced by the above, NDC unilaterally made the decision without court's permission to terminate maintenance and cure.

NDC must continue to pay maintenance for a reasonable period of time for Slaton to obtain a suitable position.  *Wilson v. United States*, 229 F. 2d 277, 1956 A.M.C.308 (2nd Cir. 1956).   NDC should not be permitted to discontinue maintenance payments until such time as it is certain Slaton's employment is indeed "suitable" for him.
Furthermore, Slaton is entitled to continuing maintenance and cure even though he is working on "light duty" status.  *Id.*

The affidavit of Dr. Pasquale makes it clear Mr. Slaton is in continuing need of

medical treatment so NDC is simply not entitled to discontinuance of cure.  Moreover, if the neurological tests show Slaton's neurological condition is related to the tug sinking, he would be entitled to payment of those costs and costs of further treatment.   No treating physician other than the orthopaedic surgeon who performed shoulder surgery have opined Mr. Slaton has reached MMI.   Accordingly, NDC's motion must be denied.

## CONCLUSION

It being the opinion of Claimant's treating physicians that Slaton has reached neither maximum medical improvement nor maximum psychological improvement, it is respectfully submitted that Norfolk Dredging's Motion to Approve and Confirm Discontinuance of Maintenance and Cure should be denied.

Respectfully submitted,

/s/ Robert M. Schwartzman
Robert M. Schwartzman
Trial Bar No. 01092
Lord & Whip, P.A.
Charles Center South
36 S. Charles Street, 10th Floor
Baltimore, Maryland 21201
(410) 539-5881

Deborah C. Waters, Esquire
C. Arthur Rutter, III, Esquire
Rutter, Walsh, Mills & Rutter, LLP
415 St. Paul's Boulevard, Ste. 700
Norfolk, Virginia 23510
Telephone 757-622-5000
Facsimile 757-623-9841

Counsel for Jeffrey M. Slaton

## **CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on this  14th  day of August, 2003, a copy of Slaton's Memorandum in Opposition to Norfolk Dredging Company's Motion to Approve and Confirm Discontinuance of Maintenance and Cure was electronically filed and mailed, first class, postage prepaid to the following:

>Deborah C. Waters, Esquire
>C. Arthur Rutter, III, Esquire
>Rutter, Walsh, Mills & Rutter, LLP
>Bank of Hampton Roads Building
>415 St. Paul's Boulevard, Suite 700
>Norfolk, VA 23510
>
>A. Davis Bugg, Jr., Esquire
>Rumsey & Bugg, P.C.
>Irvington Road
>P.O. Box 720
>Irvington, VA 22480
>
>Peter G. Decker, Jr., Esquire

9

Decker, Cardon, Thomas
201 East Plume Street
Norfolk, VA 23510

John Hughes Cooper, Esquire
John Hughes Cooper, P.C.
1808 Middle Street
P.O. Box 395
Sullivan's Island, SC 29482

Cain Denny, Esquire
Cain Denny, P.A.
P.O. Box 1205
Charleston, SC 29402

Thomas B. Shuttleworth, Esquire
Lisa P. O'Donnell, Esquire
Shuttleworth, Ruloff, Giordano & Swain, P.C.
4525 South Boulevard, Suite 300
Virginia Beach, VA 23452

Ralph Rabinowitz, Esquire
Rabinowitz, Swartz, Taliaferro, Lewis,
Swartz & Goodove, P.C.
Town Point Center, Suite 800
150 Boush Street
P.O. Box 23514
Norfolk, VA 23514

M. Hamilton Whitman, Jr., Esquire
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, MD 21202

Michael J. Carcich, Esquire
Nicoletti, Hornig, Campise & Sweeney
Wall Street Plaza
88 Pine Street
New York, NY 10005-1801

J. Stephen Simms, Esquire
Greber, Simms & Showers, LLP
Twenty South Charles Street
Suite 702
Baltimore, MD 21201-3754

Patrick M. Brogan, Esquire
Davey & Brogan, P.C.
101 Granby Street, Suite 300
P.O. Box 3188
Norfolk, VA 23514-3188

David H. Sump, Esquire
Crenshaw, Ware & Martin, P.L.C.
1200 Bank of America Center
Norfolk, VA 23510-2111

Paul D. Bekman, Esquire
Salsbury, Clements, Bekman, Marder
& Adkins, LLC
300 W. Pratt Street, Suite 200
Baltimore, MD 21201

James W. Bartlett, III, Esquire
Semmes, Bowen & Semmes
250 W. Pratt Street
Baltimore, MD 21201

Peter Ayers Wimbrow, III, Esquire
4100 Coastal Highway
Ocean City, MD 21842

David W. Skeen, Esquire
Wright, Constable & Skeen, LLP
100 N. Charles Street, 16th Floor
Baltimore, MD 21201-3812

Johnnie L. Cochran, Jr., Esquire
J. Farrest Taylor, Esquire
Cochran, Cherry, Givens & Smith, P.C.
163 West Main Street
P.O. Box 927
Donthan, Alabama 36302

William E. Johnson, Esquire
Johnson Law Center
P.O. Box 99
Matthews, VA 23109

W. Charles Bailey, Jr., Esquire
Simms Showers, LLP
20 S. Charles Street, Suite 702
Baltimore, MD 21201

John T. Ward, Esquire
Ward/Kershaw, P.C.
113 West Monument Street
Baltimore, MD 21201

/s/ Robert M. Schwartzman
Robert M. Schwartzman