IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY | * | |
| Plaintiff | * | CONSOLIDATED CASES UNDER |
| v. | * | CIVIL ACTION NO. |
| M/V A.V. KASTNER, her engines, boilers, tackle, etc., <u>in rem</u>, et al., | * | WMN-02-CV-00662 |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

**REPLY BRIEF OF NORFOLK DREDGING COMPANY IN SUPPORT OF ITS
MOTION TO APPROVE AND CONFIRM DISCONTINUANCE
OF MAINTENANCE AND CURE**

Plaintiff Norfolk Dredging Company ("NDC") submits this Reply Brief in support of its Motion to Approve and Confirm Discontinuance of Maintenance and Cure ("Motion") and in response to the Brief in Opposition filed by claimants Troy Link ("Link") and Dennis Wallace ("Wallace").

**LEGAL STANDARD**

Maintenance and cure is a right created under the General Maritime Law, which may only be asserted by a Jones Act seaman against his employer. *See Schoenbaum*, *Thomas J.*, ADMIRALTY AND MARITIME LAW 359 (3ed. 2001). It is the seaman's burden to prove his right to maintenance and cure. *See McMillan v. Tug Jane A. Bouchard*, 885 F.Supp. 452, 459 (E.D.N.Y. 1995); *See also* BENEDICT ON ADMIRALTY §43 (7ed. 2002). The seaman must prove that (1) he is an actual seaman; (2) he became ill or was injured in the service of the ship and (3) any expenditures he may have incurred for medicine, treatment, lodging and the like. *See*

BENEDICT ON ADMIRALTY, *supra*. After the seaman meets his burden, the employer has an obligation to pay maintenance and cure until the seaman reaches the point of maximum medical recovery. *See Farrell v. United States*, 336 U.S. 511, 519, 1949 A.M.C. 613, 619 (1949); *See also Vella v. Ford*, 421 U.S. 1, 5, 1975 A.M.C. 563, 566 (1975).

Maximum medical recovery terminates maintenance and cure, regardless of whether the seaman has returned to employment in his accustomed trade. *See Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985) ("[T]he cut off point for maintenance and cure is not that at which the seaman recovers sufficiently to return to his old job but rather the time of maximum possible cure.").

## ARGUMENT

In opposition to NDC's Motion, Link and Wallace have hinged their argument on the premise that "treating physicians are entitled to greater weight than examining physicians." *Claimants' Brief in Opposition*, p. 3. In support of this proposition, claimants have cited the thirteenth footnote of a D.C. Circuit court case involving a bus driver's compensation claim against his land-based employer. *See id.*; *See also Hensley v. Washington Met. Area Transit Authority*, 655 F.2d 264 (D.C. Cir. 1981). What escapes the claimants is that maintenance and cure are traditional maritime remedies that are unique to admiralty. *See Mitola v. Johns Hopkins Univ. Applied Physics Lab.*, 839 F.Supp. 351, 359 (D. Md. 1993); *See also Gauthier v. Crosby Marine Service, Inc.*, 752 F.2d 1085, 1089 (5th Cir. 1985). As such, non-maritime case law is not instructive on this ancient maritime remedy and should have no part in determining its availability.

For the reasons cited herein, in addition to those previously cited in its Brief filed in support of its Motion, NDC respectfully requests this Court to find that Link and Wallace are no longer entitled to maintenance and cure.

I. **BECAUSE LINK REACHED MAXIMUM MEDICAL RECOVERY FOR ALL CONDITIONS HE IS NOT ENTITLED TO ANY ADDITIONAL MAINTENANCE AND CURE**

According to the medical records of his treating physicians, Link has reached maximum medical recovery for all conditions he allegedly sustained and, thus, lacks any right to maintenance and cure payments.

A. PSYCHIATRIC CONDITIONS

NDC promptly commenced the payment of maintenance to Link and for his cure following the Elk River collision on or about February 25, 2002 and continued to timely provide him with such benefits for the next sixteen months. On May 12, 2003, NDC sent Link's medical records to Dr. Paul Mansheim, a board-certified psychiatrist in Norfolk, Virginia, for review. Specifically, NDC asked Dr. Mansheim to review Link's psychiatric treatments for the past fifteen months and determine the (1) diagnosis, if any; (2) the treatment given and (3) whether maximum medical recovery had been reached. On July 21, 2003, after reviewing the medical records of Link's treating physicians, Dr. Mansheim in a signed affidavit given under oath stated that Link had in all probability reached maximum medical recovery for any psychological condition almost a year ago by August 20, 2002, and had definitely reached maximum medical recovery by the date of the affidavit.

In a futile attempt to sidestep Dr. Mansheim's determination of maximum medical recovery for all psychological conditions, Link pins his argument to Dr. Ali Aziz's July 25, 2003 letter and psychologist, Suzanne Brassel's July 29, 2003 letter. It is significant that Link does

3

not cite to a single medical record in his brief to counter Dr. Mansheim's affidavit.[1]  Moreover, neither Dr. Aziz nor Suzanne Brassel refer to any medical record in their respective letters.  Instead, both letters are simply conclusory endorsements of Link's verbal psychological complaints.

      i.      **ANXIETY DUE TO FINANCIAL CONCERNS**

Furthermore, Dr. Aziz's letter states that Link is exhibiting symptoms of depression, anxiety and mood swings.  However, Suzanne Brassel's Progress Notes reveal that Link's depression, anxiety and mood swings are being caused by his concerns about his financial status and not the collision.  NDC has no obligation to furnish payments to treat depression, anxiety and mood swings stemming from financial concerns.  *See In re Gulf South Marine Transportation, Inc.*, 2002 U.S. Dist. LEXIS 1312, *9-*10 (E.D.La 2002) ("Plaintiff points to no legal authority, and the Court can find none that requires shipowners to make cure payments to treat anxiety arising from purely financial concerns.").

      ii.      **CHRONIC CONDITIONS**

Alternatively, if Link is actually exhibiting symptoms of Posttraumatic Stress Disorder, this will be the eighteenth month he has exhibited such symptoms.  According to the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition), when the duration of symptoms is three months or longer, the Posttraumatic Stress Disorder is specified as being chronic.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 425 (4th ed. 1994).  It is apparent, therefore, NDC has no duty to furnish maintenance and cure payments for an illness

---

[1] It should be noted that although maintenance and cure payments have been promptly made through June 2003, NDC has not received any medical records from Dr. Aziz's office after November 7, 2002.  Dr. Aziz claims in his letter that Link has been under his psychiatric care since March 5, 2002.  NDC has requested from Link's counsel all medical records from November 7, 2002 to date and hereby reserves the right to supplement its brief upon receipt of all such records.

that has become chronic. *See Travis v. The Motor Vessel Rapids Cities*, 315 F.2d 805 (8th Cir. 1963) ("even if further treatment be required to maintain or hold static a condition, such fact does not extend maintenance and cure if the seaman's recovery has become fixed and his disease is chronic and incurable.")

### iii. NONCOMPLIANCE WITH ORDERS OF TREATING PHYSICIANS

Interestingly, the only new information referred to in the letters is Link's noncompliance with the proposed treatment plan. Dr. Aziz's letter states that Link "has shown some improvements when **compliant** with medications. He relapsed with alcohol abuse and I encourage him to attend AA meetings and abstain from alcohol … His treatment period will depend on his **compliance and abstinence from alcohol**, possibly years." (emphasis added) *Claimants' Brief in* Opposition, Exhibit A. By refusing to comply with the orders of his treating physicians, Link has forfeited his right to maintenance and cure payments. As the Fifth Circuit explained in *Oswalt v. Williamson Towing Company, Inc.*, 488 F.2d 51 (5th Cir. 1974),

> A forfeiture for unreasonable refusal is called into play in one of two ways. First, the seaman may simply reject all timely medical attention or quit participation in a course of therapy already begun. In such a case, **the right to maintenance and cure is forfeited** because the purpose of the award can no longer be achieved. These conjunctive remedies do not operate as substitutes for damages; they are not general compensation, but rather are directed toward the specific objective of providing for the subsistence and medical expenses of a seaman until he has reached the point of maximum medical cure. *Farrell v. United States*, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L. Ed. 850.

(emphasis added) 488 F.2d at 53-54. NDC has absolutely no obligation to pay maintenance and provide cure to an individual who fails and refuses to cooperate with his treating physician.

It is significant and revealing that the only evidence Link uses to defend his position are the letters of Dr. Aziz and Suzanne Brassel, both of which were written after July 21, 2003, the

5

date NDC filed its Motion to Approve and Confirm the Discontinuance of Maintenance and Cure, and both were written only at the direction of Link's attorney.

### B. ORTHOPEDIC CONDITIONS

The United States Supreme Court has stated that a seaman is only entitled to maintenance and cure "for a period which can be *definitely ascertained*." (emphasis added) *Calmar S.S. Corp v. Taylor*, 303 U.S. 525, 532, 1938 A.M.C. 341, 346 (1938).

With regards to Link's alleged orthopedic conditions, there have been no objective findings or treatments prescribed for the cure of a determined trauma or malady. Again, Link does not use medical records to support his position, but instead relies on Dr. Eric Dominguez's August 8, 2003 facsimile to allege that he has not reached maximum medical recovery. Dr. Dominguez states that "pain remains poorly controlled" and that he has "not tried all possible advanced pain management therapies yet." *Claimants' Brief in Opposition*, Exhibit "C". However, Dr. Dominguez fails to make any diagnosis or provide a concrete treatment plan. Without doing so, Dr. Dominguez's review of Link leaves the duration of NDC's maintenance and cure payments open-ended. This is contrary to the admonition of the United States Supreme Court. *See Calmar*, *supra*.

Link claims that NDC's review of the records emphasizes Dr. Dennis Skogsbergh's x-ray of the cervical spine and that this was not the area of principal orthopedic injury. *See Claimants' Brief in Opposition*, p. 4. Link conveniently ignores, however, that NDC also acknowledged Dr. Wallace K. Garner's evaluation and treatment of low back pain, which after examination Dr. Garner found no evidence of *cauda equina* or nerve root compression, no abnormalities in the low back curvature, no lower extremity motor or sensory deficit, no evidence of a radiculopathy and no evidence of disc herniation. Dr. Garner also explained to Link that he did not have a

surgically treatable problem with regard to his spine and the degree of pain he was experiencing at that time seemed to exceed objective findings.

Link also fails to note that NDC cited the opinion of Dr. Robert Mariano, who was asked by Dr. Greene to interpret a MRI of Link's left hip. Dr. Mariano found there was no evidence of abnormal signs involving the femoral head or acetabulum, no significant joint effusion was present, no abnormal marrow signal was identified, no evidence of fracture, no abnormalities in the appearance of the right hip and no significant abnormality was identified. In summary, Link's medical records do not contain a diagnosis of any orthopedic condition.

Link's cursory treatment of NDC's review of the orthopedic records overlooks its very substance. NDC has taken the time to meticulously review Link's orthopedic records. NDC continued to make maintenance and cure payments even though it was questionable that some of the procedures were related to or advanced cure. NDC even sought the opinion of Dr. Felix Kirven, a board certified orthopedist in Norfolk, Virginia, who after thoroughly reviewing all of the medical records concluded in a sworn July 21, 2003 affidavit that Link had in all probability reached maximum medical recovery for any orthopedic condition more than a year ago by April 15, 2002 and had definitely reached maximum medical recovery by date of the affidavit.

Accordingly, Link has not overcome the evidence presented by NDC demonstrating that he has reached maximum medical improvement for all conditions and, therefore, he is no longer entitled to maintenance and cure.

II.   **BECAUSE WALLACE HAS REACHED MAXIMUM MEDICAL RECOVERY FOR ALL CONDITIONS HE IS NOT ENTITLED TO ADDITIONAL MAINTENANCE AND CURE**

   A.   **PSYCHIATRIC CONDITIONS**

NDC commenced paying Wallace maintenance and for his cure on or about February 25,

2002, and continued the payments for the next sixteen months.  On May 12, 2003, Dr. Mansheim reviewed the medical records of Wallace to determine if he had reached maximum medical recovery for all psychiatric conditions.  After thoroughly reviewing the medical records of Wallace's treating physicians, Dr. Mansheim found that Wallace had in all probability reached maximum medical recovery for any psychological condition by almost a year ago August 19, 2002, and had definitely reached maximum medical recovery by the date of the affidavit.

Wallace attempts to dilute the affidavit of Dr. Mansheim, a board-certified psychiatrist, by attaching the July 28, 2003 letter of his psychologist Dr. Daniel Nagelberg.  It is telling that this letter was also written after NDC filed its Motion and was written at the request of Wallace's attorney.

        i.      **PALLIATIVE TREATMENT**

Dr. Nagelberg's July 28, 2003 letter states that Wallace is being treated with Xanax, Paxil and Lorcet. *See Claimants' Brief in Opposition*, Exhibit F.  All of these drugs are recognized by the medical community as medications for palliative treatment rather than curative treatment.[2] NDC only has an obligation to provide treatment slated for cure and has no duty to furnish palliative care. *See McMillan*, 885 F.Supp. at 461; *See also Brown v. OMI Corp.*, 1994 U.S. Dist. LEXIS 1223, *13 (S.D.N.Y. 1994); *In re Cooper/T Smith Stevedoring Co.*, 942 F.Supp. 267, 270 (E.D. La 1996).

        ii.      **NO TREATMENT PERIOD THAT CAN BE DEFINITELY ASCERTAINED**

Dr. Nagleberg's letter also states that "It is difficult to say how long he will require treatment but he will almost certainly have residual symptoms, mostly in terms of anxiety and phobic response to the open waters, **for years**."  (emphasis added) *Claimants' Brief in*

---

[2] *See* EPEC Project, the Robert Wood Johnson Foundation, <u>Medications Commonly Used in Palliative Medicine in United States</u>, 1999

8

*Opposition*, Exhibit F. The Supreme Court has stated that maintenance and cure is only available "for a period that can be definitely ascertained." *Calmar*, *supra*. Furthermore, maximum medical recovery may have been achieved, despite the possible existence of residual symptoms. Wallace may have a fear of water for the rest of his life, however, such a phobia does not translate into a lifetime award of maintenance and cure. *See Farrell v. United States*, 336 U.S. 511, 513, 1949 A.M.C. 613, 615 (1949). ("Admittedly there is no authority in any statute or American admiralty decisions for the proposition that he is entitled to maintenance for life.").

### iii. CHRONIC CONDITIONS

As previously stated, when an individual exhibits symptoms of Posttraumatic Stress Disorder for a duration of longer than 3 months, the disorder is specified as chronic. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, *supra*. NDC has no duty and the authorities do not impose a responsibility to provide maintenance and cure for illnesses that have become chronic. *See Travis*, *supra.*

### B. ORTHOPEDIC CONDITIONS

Wallace alleges that he has not reached maximum medical recovery for any orthopedic condition. In support of this argument, Wallace relies on the recommendations of his treating physicians that epidural injections may help his pain. Since epidural injections are traditionally and primarily forms of palliative care, *See Affidavit of Kirven*, attached hereto as Exhibit "A", and NDC has an obligation to provide maintenance and cure for curative treatments only, it has no duty to furnish additional palliative treatments to its employees. *See McMillan*, 885 F.Supp. at 461; *See also Brown*, 1994 U.S. Dist. LEXIS 1223 at *13; *In re Cooper/T Smith Stevedoring Co.*, 942 F.Supp. at 270 (E.D. La 1996).

Accordingly, Wallace has failed to overcome the evidence presented by NDC that he has reached maximum medical recovery for all conditions and, therefore, he is no longer entitled to maintenance and cure.

## **CONCLUSION**

WHEREFORE, Norfolk Dredging Company requests this Honorable Court to enter an Order approving and confirming the termination of the payment of maintenance and cure on behalf of Troy Link and Dennis Wallace.

```
                                    _____/S/_____
                                    David W. Skeen, Esquire
                                    Bar No. 01084
                                    Wright, Constable & Skeen, LLP
                                    One Charles Center, 16th Floor
                                    100 N. Charles Street
                                    Baltimore, MD  21201-3812
                                    (410) 659-1305

                                    Attorneys for Norfolk Dredging Company
```

Of Counsel:

David H. Sump, VSB # 28897
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
Norfolk, VA  23510
(757) 623-3000

CERTIFICATE OF SERVICE

I hereby certify that on this 25 day of August, 2003, a true and correct copy of the foregoing Reply Brief was mailed to:

| | |
|---|---|
| Paul D. Bekman, Esquire<br>Israelson, Salsbury, Clements & Bekman, LLC<br>300 W. Pratt Street, Suite 450<br>Baltimore MD 21201<br><br>Counsel for Troy A. Link and Dennis Wallace | Ralph Rabinowitz, Esquire<br>Rabinowitz, Swartz, Taliaferro,<br>Lewis, Swartz & Goodove, P.C.<br>Town Point Center<br>150 Boush Street<br>Norfolk, VA 23510<br><br>Counsel for Troy A. Link and Dennis Wallace |
| Robert M. Schwartzman, Esquire<br>Lord & Whip, P.A.<br>Charles Center South<br>36 South Charles Street, 10th Floor<br>Baltimore, MD 21201<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell | C. Arthur Rutter, III, Esquire<br>Deborah C. Waters, Esquire<br>Rutter, Walsh, Mills & Rutter, LLP<br>415 St. Paul's Boulevard<br>Norfolk, VA 23510<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell |
| Thomas B. Shuttleworth, Esquire<br>Shuttleworth, Ruloff, Giordano & Swain, P.C.<br>4525 South Boulevard, Suite 300<br>Virginia Beach, VA 23452<br><br>Counsel for the Estate of Justin Maurice Bryant | Peter Ayers Wimbrow, III, Esquire<br>4100 Coast Highway<br>Ocean City, MD 21842<br><br>Counsel for the Estate of Justin Maurice Bryant |
| J. Stephen Simms, Esquire<br>Simms Showers LLP<br>20 South Charles Street, Suite 702<br>Baltimore, MD 21201<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust | Patrick M. Brogan, Esquire<br>Davey & Brogan, P.C.<br>101 Granby Street, Suite 300<br>Norfolk, VA 23510<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust |
| James W. Bartlett, III, Esquire<br>Semmes, Bowen & Semmes<br>250 W. Pratt Street, 16th Floor<br>Baltimore, MD 21202<br><br>Counsel for Timothy M. Cober | Robert B. Hopkins, Esquire<br>Ober, Kaler, Grimes & Shriver, P.C.<br>120 East Baltimore Street<br>Baltimore, MD 21202<br><br>Counsel for Gypsum Transportation |

/S/
David W. Skeen