IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY | * | |
| Plaintiff | * | CONSOLIDATED CASES UNDER |
| v. | * | CIVIL ACTION NO. |
| M/V A.V. KASTNER, her engines, boilers, tackle, etc., in rem, et al., | * | WMN-02-CV-00662 |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

**REPLY BRIEF OF NORFOLK DREDGING COMPANY IN SUPPORT OF ITS
MOTION TO APPROVE AND CONFIRM DISCONTINUANCE
OF MAINTENANCE AND CURE**

Plaintiff Norfolk Dredging Company ("NDC") submits this Reply Brief in support of its Motion to Approve and Confirm Discontinuance of Maintenance and Cure ("Motion") and in response to the Brief in Opposition filed by claimant Jeffrey Slaton ("Slaton").

**LEGAL STANDARD**

Maintenance and cure is a right created under the General Maritime Law, which may only be asserted by a Jones Act seaman against his employer. *See Schoenbaum*, *Thomas J.*, ADMIRALTY AND MARITIME LAW 359 (3ed. 2001). It is the seaman's burden to prove his right to maintenance and cure. *See McMillan v. Tug Jane A. Bouchard*, 885 F.Supp. 452, 459 (E.D.N.Y. 1995); *See also* BENEDICT ON ADMIRALTY §43 (7ed. 2002). The seaman must prove that (1) he is an actual seaman; (2) he became ill or was injured in the service of the ship and (3) any expenditures he may have incurred for medicine, treatment, lodging and the like. *See* BENEDICT ON ADMIRALTY, *supra*. After the seaman meets his burden, the employer has an

obligation to pay maintenance and cure until the seaman reaches the point of maximum medical recovery. *See Farrell v. United States*, 336 U.S. 511, 519, 1949 A.M.C. 613, 619 (1949); *See also Vella v. Ford*, 421 U.S. 1, 5, 1975 A.M.C. 563, 566 (1975).

Maximum medical recovery terminates maintenance and cure, regardless of whether the seaman has returned to employment in his accustomed trade. *See Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985) ("[T]he cut off point for maintenance and cure is not that at which the seaman recovers sufficiently to return to his old job but rather the time of maximum possible cure.").

## ARGUMENT

In opposition to Norfolk Dredging Company's Motion to Approve and Confirm Discontinuance of Maintenance and Cure, Slaton has alleged that maximum medical recovery has not been reached. In an attempt to support his position, Slaton cites a non-maritime case for the authority that treating physicians' opinions are entitled to greater weight than examining physicians. *See Slaton's Brief in Opposition*, p. 5. But Slaton has not provided an opinion of any treating **physician**. Instead, he relies solely on the affidavit of psychologist Thomas Pasquale and the affidavit of a rehabilitation counselor, Charles DeMark. Neither one of these individuals is a physician. The only physicians' opinions regarding whether maximum medical recovery has been reached are those provided with NDC's original Brief filed in support of its Motion. Moreover, because maintenance and cure are traditional maritime remedies that are unique to admiralty, *See Mitola v. Johns Hopkins Univ. Applied Physics Lab.*, 839 F.Supp. 351, 359 (D. Md. 1993); *See also Gauthier v. Crosby Marine Service, Inc.*, 752 F.2d 1085, 1089 (5th Cir. 1985), non-maritime case law does not affect this ancient maritime remedy and has no part in determining its availability.

Slaton also attempts to lead this Court to believe that NDC has an obligation to pay maintenance and cure until Slaton can return to his accustomed trade or for a reasonable period of time for Slaton to obtain a suitable position. *See Slaton's Brief in Opposition*, pp. 3 and 7. This is absolutely wrong. As stated above, the United States Supreme Court has repeatedly announced that the standard for terminating maintenance and cure is the point of maximum medical recovery. *See Farrell*, 336 U.S. at 519, 1949 A.M.C. at 619; *See also Vaughn v. Atkinson*, 369 U.S. 527, 531, 1962 A.M.C. 1131, 1134 (1962); *Salem v. United States*, 370 U.S. 31, 38, 1962 A.M.C. 1456, 1461 (1962); *Fitgerald v. United States Lines Co.*, 374 U.S. 16, 20 n.7, 1963 A.M.C. 1093, 1096 n.7 (1963); *Vella*, 421 U.S. at 5, 1975 A.M.C. at 566 (1975).

For the reasons cited herein, in addition to those previously cited in its Motion, NDC respectfully requests this Court to find that Slaton has reached maximum medical recovery and is no longer entitled to payments of maintenance and cure.

## ARGUMENT

**I.  SINCE SLATON HAS REACHED MAXIMUM MEDICAL RECOVERY FOR ALL CONDITIONS HE IS NO LONGER ENTITLED TO MAINTENANCE AND CURE**

According to the medical records of his treating physicians, Slaton has reached maximum medical recovery for all conditions he allegedly sustained and, thus, he is not entitled to further maintenance and cure payments.

**PSYCHIATRIC CONDITIONS**

NDC began providing Slaton with maintenance and cure following the Elk River collision on or about February 25, 2002 and continued to provide for his care for the next sixteen months. On May 12, 2003, NDC sent Slaton's medical records to Dr. Paul Mansheim, a board-certified psychiatrist in Norfolk, Virginia, for review. Specifically, NDC asked Dr. Mansheim to

review Slaton's psychiatric treatments for the past fifteen months and determine the (1) diagnosis, if any; (2) the treatment given and (3) whether maximum medical recovery had been reached. On July 21, 2003, after reviewing the Slaton's medical records, Dr. Mansheim in a signed affidavit given under oath stated that Slaton had in all probability reached maximum medical recovery for any psychological condition almost a year ago by August 20, 2002, and had definitely reached maximum medical recovery by the date of the affidavit.

Slaton offers the opinion of psychologist Dr. Pasquale to challenge Dr. Mansheim's findings. He states that Dr. Mansheim's opinion should be given less weight than that of Dr. Pasquale who is "well acquainted with Mr. Slaton's needs." *Slaton's Brief in Opposition*, p. 6. Dr. Pasquale's acquaintance with Slaton's needs is not conclusive as to whether maximum medical recovery has been reached, especially when his opinions are unsupported by facts. Slaton has not cited to a single medical record to confirm that maximum medical recovery has not been attained.

Slaton also provides the opinion of Mr. Charles DeMark, a vocational rehabilitation counselor. The point of maximum medical recovery is a **medical** determination. *See Schoenbaum, Thomas J.*, ADMIRALTY AND MARITIME LAW 375 (3ed. 2001); *See also Breese v. AWI, Inc.*, 823 F.2d 100, 104-05, 1989 AMC 108 (5th Cir. 1987). A vocational rehabilitation counselor is not a Doctor of Medicine ("M.D."). Nor is a vocational rehabilitation counselor a Doctor of Philosophy ("Ph.D."). Without either degree, a vocational rehabilitation counselor is not qualified to opine about whether maximum medical recovery has been achieved and is certainly not the appropriate person to guide this Court. NDC respectfully requests that Mr. DeMark's affidavit be disregarded.

### NEUROLOGICAL CONDITIONS

Slaton also relies on the opinion of Mr. DeMark to establish that he needs a neuropsychological evaluation. Once again, DeMark is not within the realm of his expertise and is not the appropriate source for this information, especially when Slaton has a treating neurologist, Dr. Neil Pugach.

Furthermore, Slaton alleges that NDC has refused to pay for neurological testing, which was apparently recommended by his treating Dr. Pugach. However, NDC's decision not to pay for Slaton's neurological examination was fully based upon Dr. Pugach's own assessment in his July 9, 2002 letter, in which he stated "[t]he possibility of orthostatic hypotension arises, although if this is the case, I am not sure how it would relate to the above-mentioned accident." *Dr. Pugach's July 9, 2002 Letter*, a copy of which is attached hereto as Exhibit "A". NDC found that Dr. Pugach's findings were sufficient to deny payment, and counsel for Slaton did not oppose NDC's denial when the subject was discussed back in July 2002.

Now Slaton points to portions of Dr. Pugach's March 27, 2003 letter to support his position. However, Slaton's careful editing of the March 27, 2003 letter leaves out Dr. Pugach's statement that he is "not aware of such a trauma causing autonomic neuropathy." *Dr. Pugach's March 27, 2003 Letter*, a copy of which is attached hereto as Exhibit "B". As the complete letter more fully reveals, Dr. Pugach never states that the collision caused any of Slaton's alleged neurological conditions. *See* Exhibit "B".

### ORTHOPEDIC CONDITIONS

Slaton concedes that his treating orthopedic surgeon has found that maximum medical recovery has been reached for all orthopedic conditions. *See Slaton's Brief in Opposition*, p. 8.

## **CONCLUSION**

Slaton has failed to overcome the evidence presented by NDC demonstrating that he has reached maximum medical improvement for all conditions and is, therefore, no longer entitled to maintenance and cure.

WHEREFORE, Norfolk Dredging requests this Honorable Court to enter an Order approving and confirming the termination of the payment of maintenance and cure on behalf of Jeffrey Slaton.

                                                                                              _____/S/_____
                                                                                               David W. Skeen, Esquire
                                                                                               Bar No. 01084
    Wright, Constable & Skeen, LLP
    One Charles Center, 16th Floor
    100 N. Charles Street
    Baltimore, MD  21201-3812
    (410) 659-1305

    Attorneys for Norfolk Dredging Company

Of Counsel:

David H. Sump, VSB # 28897
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
Norfolk, VA  23510
(757) 623-3000

CERTIFICATE OF SERVICE

I hereby certify that on this 25 day of August, 2003, a true and correct copy of the foregoing Reply Brief was mailed to:

| | |
|---|---|
| Paul D. Bekman, Esquire<br>Israelson, Salsbury, Clements & Bekman, LLC<br>300 W. Pratt Street, Suite 450<br>Baltimore MD  21201<br><br>Counsel for Troy A. Link and Dennis Wallace | Ralph Rabinowitz, Esquire<br>Rabinowitz, Swartz, Taliaferro,<br> Lewis, Swartz & Goodove, P.C.<br>Town Point Center<br>150 Boush Street<br>Norfolk, VA  23510<br><br>Counsel for Troy A. Link and Dennis Wallace |
| Robert M. Schwartzman, Esquire<br>Lord & Whip, P.A.<br>Charles Center South<br>36 South Charles Street, 10th Floor<br>Baltimore, MD 21201<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell | C. Arthur Rutter, III, Esquire<br>Deborah C. Waters, Esquire<br>Rutter, Walsh, Mills & Rutter, LLP<br>415 St. Paul's Boulevard<br>Norfolk, VA  23510<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell |
| Thomas B. Shuttleworth, Esquire<br>Shuttleworth, Ruloff, Giordano & Swain, P.C.<br>4525 South Boulevard, Suite 300<br>Virginia Beach, VA 23452<br><br>Counsel for the Estate of Justin Maurice Bryant | Peter Ayers Wimbrow, III, Esquire<br>4100 Coast Highway<br>Ocean City, MD  21842<br><br>Counsel for the Estate of Justin Maurice Bryant |
| J. Stephen Simms, Esquire<br>Simms Showers LLP<br>20 South Charles Street, Suite 702<br>Baltimore, MD  21201<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust | Patrick M. Brogan, Esquire<br>Davey & Brogan, P.C.<br>101 Granby Street, Suite 300<br>Norfolk, VA  23510<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust |
| James W. Bartlett, III, Esquire<br>Semmes, Bowen & Semmes<br>250 W. Pratt Street, 16th Floor<br>Baltimore, MD 21202<br><br>Counsel for Timothy M. Cober | Robert B. Hopkins, Esquire<br>Ober, Kaler, Grimes & Shriver, P.C.<br>120 East Baltimore Street<br>Baltimore, MD  21202<br><br>Counsel for Gypsum Transportation |

/S/
David W. Skeen