**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Northern Division

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY | * | |
| Plaintiff, | * | Consolidated |
| | | Civil Action No. WMN-02-662 |
| v. | * | |
| M/V A.V. KASTNER, etc., et al. | * | |
| Defendants. | * | |

*     *     *     *     *     *     *

**MEMORANDUM OF LAW OF ESTATES OF RONALD L. BONNIVILLE,**
**WILLIAM THOMAS BRYANT, AND CLARENCE MCCONNELL IN**
**OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

This action arises from a collision in the upper Chesapeake Bay between the freighter M/V A.V. KASTNER, and a tug-and-tow combination of the tug BUCHANAN 14, the tug SWIFT, and the dredge JECKYL ISLAND. Four crewmen aboard the tug SWIFT died in the collision; three others were injured. All were employed by the Norfolk Dredging Company ("Norfolk Dredging"), which owned and operated the SWIFT.

Personal injury and wrongful death claims were asserted against Norfolk Dredging, and also against Gypsum Transportation, Limited, which owned and operated the A.V. KASTNER; Captain Timothy Cober, who piloted it; Buchanan Trust, which owned the BUCHANAN 14; and Buchanan Marine, L.P., which operated the Buchanan

1

vessel.  (For ease of reference, Gypsum Transportation, Capt. Cober, and the two Buchanan entities will be collectively referred to herein as "the Non-Employer Defendants".)  Norfolk Dredging and the Non-Employer Defendants then filed limitation of liability actions, which have been consolidated in this Court.

Pending before the Court is the Non-Employer Defendants' Motion for Partial Summary Judgment[1] asking this Court to dismiss all claims for non-pecuniary damage (loss of society, consortium, etc.) on the theory that, because the dead and injured crewmembers were seaman, such damages are foreclosed by <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990).  The Estates of Ronald L. Bonniville, William Thomas Bryant, and Clarence McConnell (hereinafter "the Bonniville Claimants") oppose the motion for procedural and substantive reasons alike.

Procedurally, the motion seeks relief which this Court lacks the power to grant. There are fact issues concerning the Non-Employer Defendants' fault which, if resolved against them, preclude this Court from exercising jurisdiction.  And, even if those fact issues are resolved in the Non-Employer Defendants' favor, the Court's authority remains limited to determining the amount of funds available to satisfy a damage award, not the type of damages recoverable.  In neither event can this Court grant the motion.

---

[1]The Limitation of Liability Act applies to vessel *owners*, and by its express terms preserves all remedies against the masters, officers and seaman of offending vessels.  46  U.S.C. Appx. § 187. Since Capt. Cober therefore has no basis for seeking any relief in these proceedings, his joinder in the pending motion is, a fortiori, improper.

Furthermore, the motion is unsound as a matter of substantive law because it rests upon the *non sequitur* that, because Jones Act seamen and their estates cannot recover non-pecuniary damages from their *employers* (the holding of <u>Miles v. Apex Marine Corp.</u>, <u>supra</u>), they cannot recover such damages from *non*-employer *third parties*. Neither precedent nor common sense supports this leap of logic.

## **ARGUMENT**

### I.    **THIS COURT'S AUTHORITY UNDER THE LIMITATION OF LIABILITY ACT DOES NOT PERMIT THE DISMISSAL OF CLAIMS FOR NON-PECUNIARY DAMAGE.**

The Bonniville Claimants did not file suit in this Court, but rather in Virginia state court.   In response to the present actions commenced by Norfolk Dredging and the Non-Employer Defendants under the Limitation of Liability Act, 46 U.S.C. Appx. § 181 et seq., they filed answers and claims pursuant to Supplemental Admiralty and Maritime Claims Rule F(5).   At no point, however, have the Bonniville Claimants invoked the Court's admiralty jurisdiction.   To the contrary, they have consistently asserted their right to trial by jury in state court.[2]   This Court's authority under the Limitation of Liability Act thus conflicts with the "saving to suitors" clause of 28 U.S.C. § 1333(1), conferring upon federal courts jurisdiction over admiralty and maritime claims, but "saving to suitors in all cases all other remedies to which they are otherwise entitled."   <u>Lewis v. Lewis & Clark Marine, Inc</u>. 531 U.S. 438, 448, 121 S. Ct. 993, 1001, 148 L. Ed. 2d 921

---

[2] <u>See</u> Answer and Defenses of the Estate of Ronald L. Bonniville, Fifth Defense; Answer and Defenses of the Estate of William Thomas Bryant, Fifth Defense; Answer and Defenses of the Estate of Clarence McConnell, Fifth Defense.

(2001) ("tension exists between the saving to suitors clause and the Limitation Act. One statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court").   In order to accommodate these conflicting rights, federal jurisdiction is to be exercised only to the extent necessary to protect the vessel owner's right to seek limitation of liability.  Lewis v. Lewis & Clark Marine, Inc., supra, 531 U.S. at 452, 121 S. Ct. at 1003.

In the case at bar, the Non-Employer Defendants and Norfolk Dredging have no right, nor any need, to seek summary judgment on part of the damage claims.  They have no right because the Limitation of Liability Act limits a vessel owner's liability only where the accident occurred without the owner's privity or knowledge.  46 U.S.C. Appx. § 183(a); see In re Bay Runner Rentals, Inc., 113 F. Supp. 2d 795, 805-06 (D. Md. 2000) (dismissing limitation claim where vessel owner failed to show that accident occurred without its privity or knowledge); In re Marine Sports, Inc., 840 F. Supp. 46, 49 (D. Md. 1993) (same).  The Bonniville Claimants contend that the collision at issue here occurred *with* the Non-Employer Defendants' and Norfolk Dredging's privity or knowledge.[3]   If the Court resolves this issue in the Bonniville Claimants' favor and denies limitation, the Limitation of Liability Act would have no more force and effect,  concursus would be unnecessary, and the Limitation Court's jurisdiction would end.  Unless and until this

---

[3]See Answer and Defenses of the Estate of Ronald L. Bonniville, Third Defense; Answer and Defenses of the Estate of William Thomas Bryant, Third Defense; Answer and Defenses of the Estate of Clarence McConnell, Third Defense.

threshold question is resolved, the Court's jurisdiction is uncertain.  Hence any ruling on the pending motion is premature.

Even if the Court determines it has jurisdiction and establishes a limitation fund, moreover, further proceedings are still unnecessary.  Where a claimant stipulates (or, the case of multiple claimants, they all stipulate) to the federal court's jurisdiction over limitation issues, and not to seek or execute a state court judgment in excess of the amount of the limitation fund, the vessel owner's right to limitation is adequately protected.  In that situation, the "saving to suitors" clause takes precedence over the Limitation of Liability Act, and the district court should not address the merits of the claims, but instead allow the claimants to proceed in state court.  Lewis v. Lewis & Clark Marine, Inc., supra; In re Mohawk Assocs., 897 F. Supp. 906 (D. Md. 1995).

If and when this Court establishes a limitation fund, the Bonniville Claimants (and the other claimants as well) are prepared to stipulate to the Court's jurisdiction over limitation issues, and not to execute a state court judgment in excess of the amount of the fund.  Accordingly, under *no* circumstances would it be proper for this Court to consider, much less grant, the pending Motion for Partial Summary Judgment.

## II.    THE **MILES** DECISION DOES NOT APPLY TO CLAIMS AGAINST NON-EMPLOYER THIRD PARTIES.

In Miles v. Apex Marine Corp., supra, the mother of a seaman fatally stabbed by a fellow crew member sued the vessel's owner, operator and charterer under the Jones Act, 46 U. S. C. Appx. § 688, for failing to prevent the assault on her son, and for breach of

the warranty of seaworthiness under general maritime law for hiring a crew member unfit
to serve.   Observing that both the Jones Act and the Death on the High Seas Act
(DOHSA), 46 U.S.C. Appx. § 761 *et seq*., restrict a seaman's recovery to pecuniary loss,
the Supreme Court concluded that the plaintiff should not be allowed to circumvent these
statutory limits by the simple expedient of switching theories.   "It would be inconsistent
with our place in the constitutional scheme were we to sanction more expansive remedies
in a judicially created cause of action in which liability is without fault than Congress has
allowed in cases of death resulting from negligence."   498 U.S. at 32-33, 111 S. Ct. at
326.  The court therefore disallowed non-pecuniary loss under the  general maritime law
claim of unseaworthiness.

> [T]here is no recovery for loss of society in a general maritime action for
> the wrongful death of a Jones Act seaman.
>
>       . . . .   Today we restore a uniform rule applicable to all actions for
>
> the wrongful death of a seaman, whether under DOHSA, the Jones Act, or
>
> general maritime law.

 498 U.S. at 21, 111 S. Ct. at 320.  The scope and effect of <u>Miles</u> upon maritime claims
for non-pecuniary damage is a vexing question which has left many members of the
federal judiciary scratching their heads.[4]  One thorny issue in particular is whether <u>Miles</u>

---

[4]<u>See</u>, <u>e.g.</u>, <u>Randall v. Chevron U.S.A., Inc.</u>, 13 F.3d 888, 902 (5th Cir.), <u>reh'g denied</u>, 22 F.3d 568
(5th Cir.), <u>cert. denied</u>, 513 U.S. 994, 115 S. Ct. 498, 130 L. Ed. 2d 408 (1994) ("[t]he availability of loss
of society damages in maritime cases is an issue that has led the courts to weave an intricate web of case
law"); <u>Trident Marine, Inc. v. M/V Atticos</u>, 876 F. Supp. 832, 837 (E.D. La. 1994) ("[t]he sea of non-
pecuniary damages in maritime law is . . . difficult to navigate"); <u>Smallwood v. American Trading &</u>
<u>Transp. Co.</u>, 839 F. Supp. 1377, 1384 (N.D. Cal. 1993) (characterizing the post-<u>Miles</u> jurisprudence

applies only to claims against Jones Act employers, or also to those against non-employers. That very issue is now before this Court.

The Non-Employer Defendants cite a string of decisions, mostly from the Eastern District of Louisiana, extending <u>Miles</u> to claims against non-employers.[5]  <u>Davis v. Bender Shipbuilding & Repair Co.</u>, 27 F.3d 426 (9th Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 1000, 115 S. Ct. 510, 130 L. Ed. 2d 418 (1994); <u>In re Goose Creek Trawlers, Inc.</u>, 972 F. Supp. 946 (E.D.N.C. 1997); <u>Trident Marine, Inc. v. M/V Atticos</u>, 876 F. Supp. 832 (E.D. La. 1994); <u>Earhart v. Chevron U.S.A., Inc.</u>, 852 F. Supp. 515 (E.D. La. 1993); <u>Carnival Cruise Lines v. Red Fox Indus., Inc.</u>, 813 F. Supp. 1185 (E.D. La. 1993), <u>aff'd without opinion</u>, 18 F.3d 935 (5th Cir. 1994); <u>Ellender v. John E. Graham & Co.</u>, 821 F. Supp. 1136 (E.D. La. 1992); <u>Duplantis v. Texaco, Inc.</u>, 771 F. Supp. 787 (E.D. La. 1991); <u>Turley v. Co-Mar Offshore Marine Corp.</u>, 766 F. Supp. 501 (E.D. La. 1991).  Far more recent, numerous and geographically dispersed, however, are contrary decisions, unacknowledged by the Non-Employer Defendants, which limit <u>Miles</u> to claims against

regarding non-pecuniary damages as "murky waters"); <u>see</u> <u>generally</u> Treadway & Overton, "Recoverable Damages in Maritime Personal Injury and Death Cases: The Aftermath of <u>Miles v. Apex Marine Corp.</u>", 8 U.S.F. MARITIME L.J. 91, 116 (1995) (noting "widespread disagreement" among the lower courts concerning the scope and implications of <u>Miles</u>).

[5]The personal injury cases cited by the Non-Employer Defendants are of no assistance on this issue for two reasons.  First, all address loss of consortium claims against a seaman's employer.  <u>See</u>, <u>e.g.</u>, <u>Michel v. Total Transp., Inc.</u>, 957 F.2d 186, 188 (5th Cir. 1992) (plaintiff "filed this action against his <u>employer</u> . . . and its insurer") (emphasis added); accord, <u>Horsley v. Mobil Oil Co.</u>, 15 F.3d 200 (1st Cir. 1994); <u>Lollie v. Brown Marine Service, Inc.</u>, 995 F.2d 1565 (11th Cir. 1993); <u>Smith v. Trinidad Corp.</u>, 992 F.2d 996 (9th Cir. 1993); <u>Murray v. Anthony J. Bertucci Constr. Co.</u>, 958 F.2d 127, 132 (5th Cir. 1992); <u>Nelson v. Puerto Rico Marine Mgmt., Inc.</u>, 1992 AMC 2189 (D. Md. 1992).  Second, in personal injury cases as opposed to death cases, the FELA restricts recovery to the employee, so these cases have no pertinence to the pending death claims in any event.

Jones Act employers. See, e.g., Consolidation Coal Co. v. Consolidation Coal Co., Inc., 228 F. Supp. 2d 764, 771-72 (N.D. W. Va. 2001) (wife of crewman injured by defective winch aboard tug could assert loss of consortium claim against non-employer manufacturer and installer of winch: "the uniformity principle of Miles should not be applied so broadly as the defendants suggest"); In re Denet Towing Service, Inc., 1999 WL 329698, 1999 U.S. Dist. LEXIS 8058 at *9 (E.D. La. May 21, 1999) (family of seaman killed in territorial waters when a tug, owned and operated by a non-employer third party, pushed a barge into a drilling rig on which he was working, could recover non-pecuniary damages: "the Miles opinion did not address an action by a seaman against a non-employer third party tortfeasor"); Gerdes v. G&H Towing Co., 967 F. Supp. 943, 945 (S.D. Tex. 1997) (denying motion for partial summary judgment as to non-pecuniary damages in action for death of tugboat crewmembers in collision with tanker, holding that estates of deceased crewmembers could recover non-pecuniary damages from supplier of tug's steering system: "Defendant Hough Marine was not the employer of the deceased and injured seamen; rather it was the supplier of the component parts for the steering mechanism on the tugboat. As such, Plaintiffs' claims against it are not, and could not be, Jones Act claims. Therefore, Plaintiffs' remedies should not be limited to those available under the Jones Act and caselaw interpreting it"); Powers v. Bayliner Marine Corp., 855 F. Supp. 199, 201 (W.D. Mich. 1994) ("the extent of the uniformity [restored in Miles] is defined by the Jones Act, which purports to govern only as between seamen and their employers. .. . Here .. . no claim is made against a

seaman's employer.   As important as the Miles decision is in some respects, it simply is inapposite here"); In re Cleveland Tankers, Inc., 843 F. Supp. 1157, 1158 (E.D. Mich. 1994), aff'd, 67 F.3d 1200 (6th Cir. 1995), cert. denied, 517 U.S. 1220, 116 S. Ct. 1848, 134 L. Ed. 2d 949 (1996) (in wrongful death action by family of deceased seaman against nonemployer defendants, denying defense motion by for partial summary judgment as to non-pecuniary damages: "The precise issue presented by this motion is whether family members of a deceased Jones Act seaman may recover non-pecuniary damages in a wrongful death action under the general maritime law from a defendant who was not his employer. . . . The Court [in Miles] did not address whether a seaman could recover loss of society damages against a nonemployer defendant under general maritime law"); Mussa v. Cleveland Tankers, Inc., 802 F. Supp. 84, 86 (E.D. Mich. 1992) ("Miles was decided in the context of a Jones Act seaman (via his parent) suing his employer under the Jones Act for negligence and under general maritime law for unseaworthiness. . . . Total's argument that Miles compels a similar result in the present case goes too far. Such argument seeks to extend Miles' policy of uniformity to situations . . . where Jones Act seamen are not suing their employer under related Jones Act and general maritime law claims, but instead, are suing a third-party . . . .   Miles does not control the instant actions"); Emery v. Rock Island Boatworks, Inc., 847 F. Supp. 114, 118 (C.D. Ill. 1994) ("In situations, such as here, where the plaintiff does not have a cause of action available against the defendant under the DOHSA or the Jones Act, the concerns for uniformity, as expressed in Miles . . . simply do not exist"); Sugden v. Puget Sound Tug & Barge Co.,

796 F. Supp. 455, 457 (W.D. Wash. 1992) (in action against non-employer third party for wrongful death of seaman, denying motion to dismiss non-pecuniary damage claims: "the Court in <u>Miles</u> did not reach the issue in the case at bar. Plaintiff here ... . seeks non-pecuniary damages only from Duwamish, a non-employer, under general maritime law"); <u>Rebstock v. Sonat Offshore Drilling</u>, 764 F. Supp. 75, 76 (E.D. La. 1991) (allowing loss of consortium damages: "<u>Miles v. Apex</u> sought to establish a uniform rule for seaman suing their employers. Seaman suing third parties were not considered by the Supreme Court"); <u>Verdin v. L&M Bo-Truc Rental, Inc.</u>, 1992 AMC 93 (E.D. La. 1991), <u>aff'd</u>, 968 F.2d 17 (5th Cir. 1992) (<u>Miles</u> did not preclude loss of consortium damages for wife of self-employed tugboat captain against builder and owner of barge slip with which vessel collided).

There is no dispositive Fourth Circuit precedent. Hence the pending motion requires this Court to decide which of these divergent lines of authority represents the better view. The Bonniville Claimants submit that, for several reasons, the second group of cases is the sounder interpretation of <u>Miles</u>. The very number and diversity of these cases, indeed, attests to the more compelling logic behind them.

Consider, first of all, how the cases relied upon by the Non-Employer Defendants evolved. Most are simply the results of a bandwagon effect within the Eastern District of Louisiana.[6] The earliest of these cases, <u>Turley v. Co-Mar Offshore Marine Corp.</u>, <u>supra</u>,

---

[6]Two of the Non-Employer Defendants' cases, <u>Davis v. Bender Shipbuilding & Repair Co.</u> and <u>In re Goose Creek Trawlers, Inc.</u>, were decided by other courts. However, as will be discussed below,

relied merely on "[t]he general language of the <u>Miles</u> opinion" (766 F. Supp. at 502) with no discussion of the distinction between employer and nonemployer defendants, or the rationale in <u>Miles</u>. <u>Accord</u>, <u>Trident Marine, Inc. v. M/V Atticos</u>, <u>supra</u>, 876 F. Supp. at 837 ("this court feels compelled by the broad language in <u>Miles</u> which states that 'today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law'"). Later decisions became accretions of earlier ones within the same district.[7] This superficial reading of <u>Miles</u> is as ironic as it is unfortunate, for the Supreme Court in <u>Miles</u> expressly cautioned *against* this very fallacy i.e., excerpting ostensibly sweeping pronouncements without reference to the specific circumstances in which they are uttered. <u>See</u> 498 U.S. at 31, 111 S. Ct. at 325 ("<u>Gaudet</u>, although broadly written, applied only in territorial waters

---

<u>Goose Creek</u> was unsoundly reasoned, while <u>Davis</u> affirmatively *refutes*, rather than supports, the Non-Employer Defendants' expansive reading of <u>Miles</u>.

[7]<u>See</u> (in chronological order) <u>Duplantis v. Texaco, Inc.</u>, <u>supra</u>, 771 F. Supp. at 788 (citing prior case law from the Eastern District of Louisiana, concluding that "[t]his holding having been uniformly accepted throughout the Eastern District of Louisiana, is similarly the rule of this case" with no discussion of distinction between employers and nonemployers); <u>Ellender v. John E. Graham & Co.</u>, <u>supra</u>, 821 F. Supp. at 1136-37 (following <u>Turley</u> and <u>Duplantis</u>); <u>Earhart v. Chevron U.S.A., Inc.</u>, <u>supra</u>, 852 F. Supp. at 516 (conceding that "neither <u>Miles</u> nor <u>Michel</u> [<u>v. Total Transp., Inc.</u>, <u>supra</u>] dealt with the recoverability of damages for loss of consortium in a general maritime law claim against a nonemployer defendant" but following <u>Carnival Cruise Lines v. Red Fox Indus., Inc.</u>, <u>supra</u>, and <u>Ellender</u>).

But even within the Eastern District of Louisiana, this view is hardly a matter of consensus. Many judges disagree. <u>See</u> <u>In re Denet Towing Service, Inc.</u>, <u>supra</u>; <u>Rebstock v. Sonat Offshore Drilling</u>, <u>supra</u>; <u>Verdin v. L&M Bo-Truc Rental, Inc.</u>, <u>supra</u>. Even some of the cases in agreement, moreover, caution against a "broad brush" reading of <u>Miles</u>. <u>See</u> <u>Duplantis v. Texaco, Inc.</u>, <u>supra</u>, 771 F. Supp. at 788 ("[t]his Court disagrees with the potential broad brush of the statement the court in <u>Donaghey v. Ocean Drilling and Exploration Co.</u>, No. 90-0163, 1991 U.S. Dist. LEXIS 7734 (E.D. La. June 5, 1991) (Judge Livaudais [who decided <u>Turley</u>, <u>supra</u>]) to the effect that "the Supreme Court has recently limited the available damages in wrongful death claims brought under the General Maritime law to such damages as a available under the Jones Act, i.e. pecuniary," citing <u>Miles v. Apex Marine Corp.</u>, 112 L. Ed. 2d 275, 111 S. Ct. 317 (1990).").

11

and therefore did not decide the precise question presented [in Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 56 L. Ed. 2d 581, 98 S. Ct. 2010 (1978)]"). As always, "the devil is in the details." In re Microsoft Corp. Antitrust Litig., 232 F. Supp. 2d 534, 538 (D. Md. 2002).

As one commentator has pointed out in exhaustive detail, see Force, "The Curse of Miles v. Apex Marine Corp.: The Mischief of Seeking 'Uniformity' and 'Legislative Intent' in Maritime Tort Cases", 55 LA. L. REV. 745, 755 n.64 (1995) (hereinafter cited as "Force"), whether the Supreme Court in Miles even considered the applicability of its holding to non-employer defendants, much less intended that it be so applied, is far from certain. To the contrary, everything in the opinion suggests that the focus of the court's attention was on employers. The claim under discussion, after all, was "breach of the warranty of seaworthiness under general maritime law for hiring a crew member unfit to serve." 498 U.S. at 21, 111 S. Ct. at 320 (emphasis added). Since the deceased seaman was also a crew member, the logical inference is that both were employed by the same entities (collectively lumped together as "Apex" in the Miles opinion), and hence that a claim for hiring a fellow crew member was necessarily directed against the decedent's employer. The defense argument adopted in Miles, moreover, was framed in these terms: "The Jones Act provides a cause of action against the seaman's employer for wrongful death resulting from negligence that Apex contends is preclusive of any recovery for death from unseaworthiness." 498 U.S. at 28, 111 S. Ct. at 323 (emphasis added). Admittedly, the foregoing is open to debate; for, as noted, the scope of Miles is as clear

as mud.  But this very uncertainty counsels against blindly applying the "uniformity" language of Miles as a one-size-fits-all dogma regardless of context.

Indeed, as a blanket goal, "uniformity" in maritime law concerning remedies is neither possible nor appropriate.  In Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 215, 116 S. Ct. 619, 628, 133 L. Ed. 2d 578 (1996), for example, the court held that federal maritime law did not displace state remedies in an action for the wrongful death of a minor killed in a jet ski accident.  Obviously, the facts in Yamaha differ from those here or in Miles.  Be that as it may, Yamaha irrefutably demonstrates one salient lesson—i.e., that uniformity has its limits.  Hence "Yamaha . . . sheds new light on Miles[.]"  In re Horizon Cruises Litig., 101 F. Supp. 2d 204, 212 (S.D.N.Y. 2000).

Miles and Yamaha taken together counsel that where Congress has legislated with respect to a class of maritime cases, relief under state law as well as traditional admiralty remedies may be displaced in the interests of uniformity. However, Yamaha makes clear that this uniformity principle does not sweep away the common law unless Congress has spoken.
Horizon Cruises Litig., supra, 101 F. Supp. 2d at 214.

Thus, the mere fact that Yamaha applies only to "nonseafarers" (persons who are neither seamen under the Jones Act nor longshoreman under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq., see 516 U.S. at 205 & n.2, 116 S. Ct. at 623 & n.2), as emphasized by In re Goose Creek Trawlers, Inc., supra,[8] 72 F. Supp. at 950 ("the plain defining language in Yamaha prevents claimant from benefitting under the narrow exception for nonseafarers"), is beside the point.  Indeed,

13

uniformity of remedy remains a myth even within the class of "seafarers". For example, the LHWCA permits longshoremen to sue nonemployer vessel owners for negligence, see 33 U.S.C. §§ 905(b), 933; and, under Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S. Ct. 806, 39 L. Ed. 2d 9 (1974), the survivors of longshoremen killed within territorial waters are entitled to recover loss of society damages.[9]    Allowing such damages to the families of longshoreman while denying them to the families of seamen creates an inconsistency between seamen and longshoremen.    Nelson v. Puerto Rico Marine Mgmt., Inc., 1992 AMC 2189, 2192 (D. Md. 1992); Rebstock v. Sonat Offshore Drilling, supra, 764 F. Supp. at 76.

The simplistic mantra of "uniformity", therefore, cannot be the guiding principle. More than a decade ago, this Court hit the nail on the head when, in Nelson v. Puerto Rico Marine Mgmt., Inc., supra, the Court observed that the applicability of Miles hinges both on status (whether the plaintiff is a Jones Act seaman) and statutes (whether Congress has foreclosed recovery in the particular circumstances):

> The relevant distinction that seems to have arisen in the case law ... does not involve the nature of the plaintiff's claim, but the nature of the plaintiff. That is, courts have conditioned relief on plaintiff's classification as a seaman or a longshoreman, and not on plaintiff's cause of action. Thus the spouse of a longshoreman may maintain a cause of action for loss of

---

[8]Goose Creek is one of the few cases cited by the Non-Employer Defendants decided after Yamaha. Most pre-date, and hence had no occasion to consider, the Supreme Court's 1996 ruling.

[9]Although, in Miles, the Supreme Court limited Gaudet to its facts, see 498 U.S. at 31, 111 S. Ct. at 325 ("[t]he holding of Gaudet applies only in territorial waters, and it applies only to longshoremen"), within that setting it remains good law.    See, e.g., Randall v. Chevron U.S.A., Inc., 13 F.3d 888, 902-03 (5th Cir.), reh'g denied, 22 F.3d 568 (5th Cir.), cert. denied, 513 U.S. 994, 115 S. Ct. 498, 130 L. Ed. 2d 408 (1994).

> consortium that is derivative of the injury or death of a longshoreman. . . . This result is consistent with the Longshore and Harbor Workers Compensation Act, which does not expressly limit recoverable damages to pecuniary losses. . . .  By contrast, the spouse of a Jones Act seaman may not maintain a cause of action for loss of consortium that is derivative of the injury or death of a seaman.
>
> This result is consistent with the Jones Act and DOHSA, which limit recoverable damages to pecuniary losses.

1992 AMC at 2192 (citations and footnotes omitted).  The scope of <u>Miles</u>, in other words, is coextensive with the statutes it applied.

Given the favored status of seamen as wards of admiralty, "certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." <u>Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375, 387, 90 S. Ct. 1772, 1780-81, 26 L. Ed. 2d 339 (1970) (quoting <u>The Sea Gull</u>, 21 F. Cas. 909, 910 (No. 12,578) (C.C. Md. 1865) (Chase, C.J.)).  As even the Non-Employer Defendants' cases recognize,[10] the only "established and inflexible rules" which justify withholding a remedy in admiralty are statutes enacted by Congress.  Such was the situation in <u>Miles</u>, as the Supreme Court has subsequently remarked:

> *When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied*, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided.  <u>See</u> <u>Miles</u> . . . .  But Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters.

---

[10]<u>See</u>, <u>e.g.</u>, <u>Davis v. Bender Shipbuilding & Repair Co.</u>, <u>supra</u>, 27 F.3d at 429 (<u>Moragne</u> "strongly suggested that the 'humane and liberal character' of proceedings in admiralty favors a liberal extension of remedies for maritime deaths unless such remedies are *expressly foreclosed by Congress*") (emphasis added).

Yamaha Motor Corp. v. Calhoun, supra, 516 U.S. at 215, 116 S. Ct. at 628 (emphasis added; citations omitted in part); see also Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 817-18, 121 S. Ct. 1927, 1932, 150 L. Ed. 2d 34 (2001) (general maritime claim for negligently-caused death of nonseaman was not precluded by federal statute: "[decedent], who was not a seaman, was not covered by the Jones Act, and we have held that the Jones Act bears no implication for actions brought by nonseamen").

Most lower courts recognize the limited scope of Miles.  See, e.g., CEH, Inc. v. F/V Seafarer, 70 F.3d 694 (1st Cir. 1995):

> Though these principles of uniformity [in Miles] defy precise limits, we think it clear that the Supreme Court had in mind the need to defer to statutory enactments addressing like issues.  As the Court reasoned: "In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. . . . [and] must be vigilant not to overstep the well-considered boundaries imposed by federal legislation."  Miles, 498 U.S. at 27.  Miles, therefore, does not, as defendants contend, signify a call for universal uniformity of maritime tort remedy, but rather emphasizes the importance of uniformity in the face of applicable legislation.
>
>     . . . .
>
>     . . . The concern expressed in Miles . . . was not with respect to an award of nonpecuniary damages in maritime cases in general, but with inconsistency with Congressional pronouncement.  Miles does not mandate a uniform result for every maritime action . . . .

In sum, in the absence of any relevant legislation, we think that the uniformity principle enunciated in Miles is inapplicable.  70 F.3d at 700-02. Accord, Jurgensen v. Albin Marine, Inc., 214 F. Supp. 2d 504, 509 (D. Md. 2002) ("none of the plaintiffs is a seaman or personal representative of a seaman, *and no*

16

*claim is made against a seaman's employer*. Thus, the <u>Miles</u> decision is simply inapposite here as <u>Miles</u> does not signify a 'universal uniformity of maritime tort remedy,' but rather 'emphasizes the importance of uniformity in the face of applicable legislation'") (emphasis added; citations omitted); <u>In re Plaquemine Towing Corp.</u>, 190 F. Supp. 2d 889, 892 (M.D. La. 2002) (punitive damage and loss of consortium claims could be asserted by ferryboat passengers injured in collision: "The <u>Miles</u> decision does not set forth an absolute bar to recovery of non-pecuniary damages in all general maritime cases. . . . <u>Miles</u> does not signify a case for 'universal uniformity of maritime tort remedy,' but rather 'emphasizes the importance of uniformity in the face of applicable legislation'").

Indeed, the specific rationale of <u>Miles</u>, and the resulting limitation on its scope, are confirmed by the Non-Employer Defendants' own cases. <u>Davis v. Bender Shipbuilding & Repair Co.</u>, <u>supra</u>, was an action for the death of a seamen who drowned in the Bering Sea. Recovery for lost future earnings was therefore squarely foreclosed by DOHSA: "DOHSA does not permit such damages" (27 F.3d at 430).

> <u>Miles</u> instructs the lower federal courts that a claim for lost future earnings is not available in connection with a maritime death for which Congress has already provided a remedy *and has excluded such damages*. The identity of the defendant is irrelevant to these considerations.

<u>Id</u>. (emphasis added). Note what the court did *not* say. It did not flatly declare that "[t]he identity of the defendant is irrelevant", period. Rather, it concluded that "[t]he identity of

17

the defendant is irrelevant *to these considerations*" (emphasis added), i.e., where Congress has already provided a remedy and has excluded the damages sought.

In light of the preceding discussion, the flaw in <u>In re Goose Creek Trawlers, Inc.</u>, <u>supra</u>, becomes self-evident.  The court concluded that "although [the decedent] is *not* covered by a comprehensive federal scheme, the plain defining language in <u>Yamaha</u> prevents claimant from benefitting under the narrow exception for nonseafarers."  72 F. Supp. at 950 (emphasis added).  The opinion thus ignores the critical factor (whether a comprehensive federal scheme applies) and, instead, perpetuates the fallacy of relying upon abstract language ("the plain defining language").[11]

A proper exegesis of <u>Miles</u> demands more careful attention to the actual opinion. The issue decided was "the preclusive effect of the Jones Act for deaths of true seamen." 498 U.S. at 31-32, 111 S. Ct. at 325.  Why seamen?  And, even more importantly, why the Jones Act?  A "seaman" is not anyone one who ventures onto navigable water.  The term has meaning only in the context of a relationship with an employer.  "Seaman" status is determined based upon the injured person's relationship to the vessel on which he is employed, and in light of the unique perils faced by persons who make their living at sea.  <u>Chadris, Inc. v. Latsis</u>, 515 U.S. 347, 354-55, 115 S. Ct. 2172, 2183, 132 L. Ed.

---

[11]<u>Goose Creek</u> also mistakenly follows what it characterizes as the majority view, <u>see</u> 972 F. Supp. at 951 (stating that <u>In re Cleveland Tankers, Inc.</u> and <u>Sugden v. Puget Sound Tug & Barge Co.</u>, <u>supra</u>, "espouse a minority view") when, in actuality, cases limiting <u>Miles</u> to claims against Jones Act employers are in the majority, as demonstrated earlier.

2d 314 (1995). Thus a seaman's status as such is meaningless with regard to persons

other than his employer:

> Assume that three people are on Vessel 1 in territorial waters: a seaman, a
> longshoreman, and a passenger. Another vessel, Vessel 2, is operated
> negligently and collides with Vessel 1, killing all three persons. Wrongful
> death actions are commenced against Vessel 2 in regard to each death. Why
> should the seaman's dependents not be able to recover the same damages as
> the others? As to a suit against a stranger who is not the employer, the
> seaman should not be regarded as a seaman at all. His status vis-a-vis the
> stranger is no different than that of the longshoreman or the passenger. His
> dependents are not basing any special claim on his capacity as a seaman.
> An allegation that he was a seaman on Vessel 1 is irrelevant to the wrongful
> death claim. Therefore, Miles should not control this collision situation or
> any other situation in which the decedent's status as seaman is irrelevant to
> the claim.

Force, supra, 55 La. L. Rev. at 795-76 (footnote omitted).

Furthermore, the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq.,

which is incorporated by the Jones Act, involves a quid pro quo similar to that effected

by workers' compensation laws, which make it easier for employees to receive

compensation from their employer, but at a lower rate than traditional tort remedies,

recovery being limited to pecuniary losses. See Martin v. Beverage Capital Corp., 353

Md. 388, 419 n.9, 726 A.2d 728, 743 n.9 (1999). The FELA makes recovery easier.

Atchison, Topeka & S.F. Ry. Co. v. Buell, 480 U.S. 557, 562, 107 S. Ct. 1410, 1413, 94

L. Ed. 2d 563 (1987) ("[a] primary purpose of the [FELA] was to eliminate a number of

traditional defenses to tort liability and to facilitate recovery"); Rogers v. Missouri Pac.

R. Co., 352 U.S. 500, 507-08, 77 S. Ct. 443, 449, 1 L. Ed. 2d 493 (1957) ("[t]he [FELA]

was enacted because the Congress was dissatisfied with the common-law duty of the

master to his servant. The statute supplants that duty with the far more drastic duty of

paying damages for injury or death at work due in whole or in part to the employer's

negligence. The employer is stripped of his common-law defenses") (footnote omitted);

see 45 U.S.C. §§ 53, 54 (abrogating the defenses of assumption of risk, contributory

negligence and the fellow servant rule).    By the same token, it limits recovery to

pecuniary losses. Miles, 498 U.S. at 32, 111 S. Ct. at 325.

Congress has, in this manner, adjusted the rights between Jones Act seamen and

their employers.    To disrupt this balance under the guise of common law maritime

recovery would clearly be an affront to Congress' intent.    But the same cannot be said of

actions against non-employers, to whom the Jones Act is inapplicable:

> The Jones Act creates a negligence action only against a seaman's
> employer. It does not create any rights against non-employers. Therefore,
> there is neither a statute nor a congressional policy restricting the award of
> damages in suits against non-employers. There are rational reasons for
> allowing a seaman's beneficiary to recover loss of consortium against a
> non-employer and yet deny recovery against an employer. The first is based
> on the Court's premise in Miles that, under the Jones Act, Congress
> intended to restrict recovery in wrongful death actions to pecuniary loss.
> As stated above, the Jones Act creates a negligence action that is more
> advantageous to seamen on the liability issue than the general maritime law
> negligence action. It may be argued that the restriction on the scope of
> damages should be considered as part of a "trade-off."   In other words,
> Jones Act beneficiaries get the benefit of substantive rules which make it
> easier to establish liability, and employers get the benefit of the "pecuniary"
> damages restriction.   However, in actions against a non-employer, a person
> who happens to be a Jones Act seaman is relegated to the general maritime
> law, as is a non-seaman.   Where the beneficiaries of a seaman cannot bring
> suit under the Jones Act and invoke the benefits of that statute because the
> defendant was not the decedent seaman's employer, it seems unfair to
> impose the Jones Act detriment by way of restrictions on damages.   The
> Jones Act imposes liability on a specified class of defendants, employers of

> seamen. The court in <u>Miles</u> believed itself constrained by the Jones Act
> from imposing on this designated class of defendants more extensive
> liability under judge-made law than Congress had seen fit to authorize.
> This deference to the Jones Act employer is inapplicable in an action
> against a defendant who was not the seaman's employer.

Force, <u>supra</u>, 55 La. L. Rev. at 795.

Seamen and their families cannot sue non-employers under the Jones Act. They can maintain such claims only under general maritime law, whose protections are far less generous than those available under the Jones Act. <u>Chadris, Inc. v. Latsis</u>, <u>supra</u>, 515 U.S. at 356, 115 S. Ct. at 2184. There is, in other words, no overlap of common law and statutory remedies. Nor, therefore, is there any potential conflict. As a consequence, "there is no need for uniform treatment of an employer and a third party tortfeasor where there is no statutory remedy that is different than the general maritime law remedy." <u>In re Denet Towing Service, Inc.</u>, <u>supra</u>, 1999 WL 329698 at *2, 1999 U.S. Dist. LEXIS 8058 at *10; <u>accord</u>, <u>Consolidation Coal Co. v. Consolidation Coal Co., Inc.</u>, <u>supra</u>, 228 F. Supp. 2d at 771-72. The fallacy of the Non-Employer Defendants' misplaced reliance on <u>Miles</u> was eloquently articulated in <u>Mussa v. Cleveland Tankers</u>, <u>supra</u>:

> <u>Miles</u> was decided in the context of a Jones Act seaman (via his parent)
> suing his employer under the Jones Act for negligence and under general
> maritime law for unseaworthiness. In the context of its announced policy of
> uniformity in related actions under statutory and case-developed maritime
> law, the Court's ruling in <u>Miles</u> is compelled. Simply put, under the <u>Miles</u>
> Court's view, there should be no reason why a Jones Act seaman, unable to
> sue his employer for nonpecuniary damages directly under a Jones Act
> negligence claim, could sue his employer for such damages under a related
> general maritime law claim for unseaworthiness.

> Total's argument that Miles compels a similar result in the present case goes too far. Such argument seeks to extend Miles' policy of uniformity to situations, such as the one presented in the cases at bar, where Jones Act seamen are not suing their employer under related Jones Act and general maritime law claims, but instead, are suing a third-party . . . . In the action against Total no situation is presented where statutory law provides a remedy different than the remedy provided under general maritime law, unlike the situation in Miles. As such, Miles does not control the instant actions as to plaintiffs' claims against Total.

802 F. Supp. at 86.

Nor are law and logic the sole obstacles to the Non-Employer Defendants' motion. Equally fatal are fairness and efficiency. The Jones Act is designed to further the traditional status of seaman as wards of admiralty entitled to special solicitude commensurate with the hazards of their occupation. Chadris, Inc. v. Latsis, supra, 515 U.S. at 354, 115 S. Ct. at 2183. Yet, if allowed as a defense by non-employers, it will have precisely the *opposite* effect. It will lessen seamen's remedies against third parties without any countervailing ease of recovery. As applied in this fashion, the Jones Act would no longer be a mutual balancing of rights, but a one-sided erosion to the detriment of those very persons it was meant to protect. Such a perverse misuse of the statute cannot be what Congress intended.

In general maritime law claims against non-employers, moreover, the claimant's status as a seaman is normally immaterial, and the evidence needed to determine such status therefore unnecessary. Introducing seaman status as an issue will complicate and lengthen the trials of what otherwise would be ordinary negligence actions. See McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S. Ct. 807, 818, 112 L. Ed. 2d

866 (1991) ("[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it").

## <u>CONCLUSION</u>

For the reasons set forth above, the Non-Employer Defendants' Motion for Partial Summary Judgment should be denied.  Further the Bonniville Claimants request oral argument regarding the issues relative to this Motion.

MARY HOLLOMAN BRYANT,
ADMINISTRATRIX AND PERSONAL
REPRESENTATIVE OF THE
ESTATE OF WILLIAM T. BRYANT

By      */s/* Robert M. Schwartzman
        Robert M. Schwartzman
        Federal Trial Bar # 01092
              Of Counsel

SHIRLEY MCCONNELL, INDIVIDUALLY
AND AS MOTHER OF JASMINE E.
MCCONNELL, AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF CLARENCE MCCONNELL, AND
SHENECCA M. GARRETT, INDIVIDUALLY
AND LESHEON MCCONNELL,
INDIVIDUALLY, CHILDREN
OF CLARENCE MCCONNELL

By      */s/* Robert M. Schwartzman
        Robert M. Schwartzman
        Federal Trial Bar # 01092
              Of Counsel

ELIZABETH KELLAM AND HORACE L.
BONNIVILLE, CO-ADMINISTRATORS
AND PERSONAL REPRESENTATIVES
OF THE ESTATE OF RONALD L. BONNIVILLE


By      _/s/ Robert M. Schwartzman_
        Robert M. Schwartzman
        Federal Trial Bar # 01092
            Of Counsel


C. Arthur Rutter, III, Esquire
VSB # 36827
Deborah C. Waters, Esquire
VSB # 28913
Rutter, Walsh, Mills & Rutter, L.L.P.
415 St. Paul's Boulevard, Suite 700
Norfolk, Virginia  23510
(757) 622-5000
(757) 623-9189 (fax)

Robert M. Schwartzman, Esquire
Federal Trial Bar # 01092
Lord & Whip, P.A.
36 South Charles Street, 10th Floor
Baltimore, Maryland 21201
(410) 539-5881
(410) 685-6726 (fax)

## CERTIFICATE OF MAILING

On this 28th day of August, 2003, I hereby certify that the foregoing was delivered via postage prepaid U.S. first class mail to:

M. Hamilton Whitman, Jr., Esquire
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, MD 21202

John A. V. Nicoletti, Esquire
Nicoletti, Hornig, Campise & Sweeney
Wall Street Plaza
88 Pine Street
New York, NY 10005-1801

J. Stephen Simms, Esquire
Greber Simms & Showers, LLP
Twenty South Charles Street, Suite 702
Baltimore, MD 21201-3754

Patrick M. Brogan, Esquire
Davey & Brogan, P.C.
101 Granby Street, Suit 300
P.O. Box 3188
Norfolk, VA 23514-3188

John T. Ward
Ward Kershaw
113 W. Monument Street
Baltimore, MD 21201

David W. Skeen, Esquire
Wright, Constable and Skeen, LLP
100 N. Charles, 16th Floor
Baltimore, MD 21201-3812

David H. Sump, Esquire
Crenshaw, Ware & Martin, P.L.C.
1200 Bank of America Center
Norfolk, VA 23510-2111

A. Davis Bugg, Jr., Esquire
Rumsey & Bugg, P.C.
Irvington Road, P.O. Box 720
Irvington, Virginia 22480

John Hughes Cooper, Esquire
John Hughes Cooper, P.C.
1808 Middle Street
P.O. Box 395
Sullivan's Island, SC 29482

Thomas B. Shuttleworth, Esquire
Shuttleworth, Ruloff, Giordano & Swain, P.C.
4525 South Boulevard, Suite 300
Virginia Beach, VA 23452

James W. Bartlett, III, Esquire
Semmes, Bowen & Semmes
250 West Pratt Street, 16th Floor
Baltimore, MD 21202

Ralph Rabinowitz, Esquire
Rabinowitz, Swartz, Taliaferro,
   Lewis, Swartz & Goodove, P.C.
Town Point Center, Suite 800
150 Boush Street
P.O. Box 3332
Norfolk, VA 23514

Paul D. Bekman, Esquire
Israelson, Salsbury,
  Clements & Bekman, LLC
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201


                                        */s/* Robert M. Schwartzman
                                        Robert M. Schwartzman
                                        Federal Trial Bar # 01092


303778