IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NORFOLK DREDGING COMPANY          *

     Plaintiff          *

v.                                *  Consolidated cases under

M/V A.V. KASTNER, etc., *et al.,*   *  Civil Action No.: WMN-02-CV-00662

     Defendants          *

        *     *     *     *     *     *     *

**CLAIMANTS' SURREPLY TO PLAINTIFF, NORFOLK DREDGING COMPANY'S
REPLY BRIEF IN SUPPORT OF Its MOTION TO APPROVE AND CONFIRM
<u>DISCONTINUANCE OF MAINTENANCE AND CURE</u>**

     Claimants, Troy A. Link and Dennis Wallace, submit this surreply in further opposition

to Plaintiff Norfolk Dredging Company's Motion to Approve and Confirm Discontinuance of

Maintenance and Cure.

**I.   PLAINTIFF'S CONTENTION THAT THE TREATING PHYSICIANS' OPINIONS
SHOULD NOT BE ACCORDED GREATER LEGAL WEIGHT IS SERIOUSLY FLAWED.**

     Plaintiff Norfolk Dredging Company (hereinafter "NDC") states in its Reply that it is

"significant and revealing that the only evidence Link uses to defend his position are letters of

Dr. Aviv and Susan Braffel, both of which were written after July 21, 2003, the date NDC filed

its Motion to Approve and Confirm the Discontinuance of Maintenance and Cure, and both have

been only at the direction of Link's attorney."  <u>See</u> Reply Brief of Norfolk Dredging Company in

Support of its Motion to Approve and Confirm Discontinuance of Maintenance and Cure, pages

5-6.  Further, in response to Claimant Wallace's treating physician Dr. Daniel Negelberg's letter,

the Plaintiff states "it is telling that this letter was also written after NDC filed its motion and was written at the request of Wallace's attorney." Id. at page 8. This line of argument is seriously flawed. To begin with, NDC is factually mistaken when it states that only Dr. Aziz and Dr. Brassel's correspondence support Claimant Link's position. There is other medical correspondence which also supports Claimant Link's need for additional treatment. Additionally, it is beyond cavil that prior to the filing of said motion Claimants treating physicians had no reason for to create a document that stated maximum improvement had not yet been achieved. This conclusion, was self-evident as the Claimants' treatment was ongoing. Further, the need for said treatment had never been questioned. Moreover, for the Plaintiff to suggest that the Claimants' physicians' correspondence should be given less weight because they were prepared as a response to the motion filed by Plaintiff is illogical considering that all of the affidavits prepared by the Plaintiff's experts were prepared in anticipation of their motion and at the direction of Plaintiffs' counsel. In actuality, the law states that the opinions of non-treating experts should be accorded less weight than that of the treating physician. See Hensley v. Washington Met. Area Transit Authority, 655 F.2d 264, 273 n.13 (D.C. Cir. 1981), cert. denied, 456 U.S. 904 (stating that even the opinion of a physician who has examined the injured party once is given less legal weight than that of a treating physician.)

The Plaintiff hinges several of its arguments on the fact that the correspondence provided by the Claimants' treating physicians does not cite to any medical records. However, what the Plaintiff fails to recognize is that, unlike the examining experts in this matter, the treating physicians had met with and examined the Claimants personally. Therefore, these physicians do

not need to base their opinions on mere medical records, but can rely on their own examinations of the Claimants, when stating further treatment is needed to achieve maximum medical improvement.

Similarly, Plaintiff's criticism of the Claimants' citing of case law from non-admiralty matters is also flawed. Plaintiff suggests that non-admiralty cases which express a clear preference for the opinions of treating physicians over hired experts should not be considered in this matter. See Reply Brief at p. 2. However, as seen in the Fourth Circuit case of Boleski v. American Export Lines, Inc., 385 F.2d 69, 72 (1967), the courts are free to cite to on non-admiralty cases when ruling in an admiralty case on issues involving expert opinions. As such, contrary to the claims of the Plaintiff, non-admiralty cases may be used in reaching the conclusion that a treating physician's opinions should be afforded greater legal deference than that of a hired expert.

## II.    A SEAMAN IS ELIGIBLE FOR MAINTENANCE AND CURE FOR VIRTUALLY ANY AILMENT, AND THE OPINION OF THE SEAMAN'S CHOSEN PHYSICIAN IS TO BE  ACCORDED DEFERENCE.

The law is clear that virtually any ailment can render a seaman eligible for maintenance and cure. Harrell v. Airlogistics, Inc., 805 F.2d 1173, 1174-75 (6th Cir. 1986). Therefore, any illness, including alcoholism, is eligible for cure. Plaintiff contends that because Claimant Link has been suffering from alcoholism, and this disease has impacted his recovery process, he should be barred from receiving further cure. However, the Plaintiff does not contend that the alcoholism is unrelated to the injuries he sustained during the admiralty accident during which he almost died. Consequently, it is contrary to the dictates of admiralty law to suggest that a disease which has evolved, or at the least been exasperated, due to the injuries sustained in the

3

accident, including extreme pain that has been described as "poorly controlled," and multiple physiological disorders, all of which Claimant Link grapples with on a daily basis, should bar his ability to obtain future treatment. See attached Exhibit A, correspondence from Dr. Eric Dominguez describing Claimant Link's pain, and attached Exhibit B, correspondence from Dr. Aziz describing his various physiological ailments.

As stated in Dr. Dominguez's letter, there are advanced pain management therapies that are available and have not yet been tried, and as such Claimant Link has not reached maximum medical improvement. Claimants believe that this is just another attempt by the Plaintiff to avoid the responsibility which the law clearly dictates to provide maintenance and cure until maximum medical improvement has been reached.

In its motion and reply brief, Plaintiff states that the opinions of its hired experts, who have never personally examined the Claimants but still claim that the Claimants have reached maximum improvement, should be given stronger weight than the opinions of the Claimants' treating physician. However, the case law specifically states that a seaman has the right to be treated by the physician of his choosing. Rodriguez Alvarez v. Bahama Cruise Line, Inc., 898 F.2d 312, 315 (2nd Cir. 1990). Therefore, it would follow that when two physicians differ as to the treatment needed by a particular seaman, his choice to be furnished treatment by the physician of his choosing would give his physician's opinion in regard to treatment a greater amount of weight than that of the non-chosen physician. As such, when the Court is weighing which physician's opinion to rely on, greater weight should be accorded to the physician whose treatment has been chosen by the seaman. In this matter, the physicians chosen by the Claimants have all stated that further cure is necessary for each of the Claimants to reach maximum medical

4

improvement.  Further, as stated earlier, the testimony of a treating physician is accorded greater

weight than that of an examining physician. Hensley v. Washington Met. Area Transit Authority,

655 F.2d 264, 273 n.13 (D.C. Cir. 1981), cert. denied, 456 U.S. 904.


III.    ANY DOUBT AS TO WHETHER MAXIMUM IMPROVEMENT HAS BEEN
ACHIEVED MUST BE RESOLVED IN FAVOR OF THE CLAIMANTS.

The burden is on the Plaintiff to illustrate that the treatment in question is excessive.

Rodriguez, 898 F.2d  at 315.  The Supreme Court has stated unequivocally that any doubt as to

whether or not the liability for maintenance and cure of the shipowner has been exhausted  shall

be resolved in favor of the seaman.  Vaughan v. Atkinson, 369 U.S. 527, 532 (1962).

Additionally, the case law states that when an employer is deciding whether or not to terminate

maintenance and cure, he should seek a "declaration" from the responsible physician or

physicians that the point of maximum cure has been obtained.  Gillikan v. United States, 764 F.

Supp. 261, 268 (E.D.N.Y. 1991).  In the matter at bar, the Plaintiff has not obtained such a

declaration from the Claimants' physicians.  Had the employer properly requested such a

declaration, they would have been advised by the treating physicians, as noted in their

correspondence attached to the Claimants' Brief in Opposition to Norfolk Dredging Company's

Motion to Approve and Confirm Discontinuance of Maintenance and Cure, that the Claimants

have not reached the point of maximum cure and that further treatment is necessary.  Arguably,

this is why the Plaintiff felt it had to resort to hired experts to opine, absent any physical

examination of either Claimant, that they had reached maximum medical cure.  This is especially

curious given the fact that the Claimants' are suffering from psychiatric disorders, including post

traumatic stress disorders, that certainly require, at a minimum, an in-person consultation in order to determine whether maximum medical improvement has been obtained. See attached Exhibit C correspondence from Dr. Aziz and Dr. Nagelberg indicating the psychiatric disorders suffered respectively by each Claimant.

## IV.    CLAIMANTS CAN STILL BENEFIT FROM MEDICAL TREATMENT.

In its reply brief Plaintiff cites numerous times to the case of Farrell v. United States, 336 U.S. 511 (1949), in support of its contention that the Claimants have reached maximum medical improvement. Similarly, in the case of Gibson v. United States, 100 F. Supp. 954 ( E.D. Pa.1951), an employer attempted to argue that Farrell supported his argument that the claimant was not entitled to further maintenance and cure. Gibson, 100 F. Supp at 955. However, the court in Gibson pointed out that the Farrell case is distinguishable because it involved severe permanent injuries, including blindness and post traumatic convulsions, for which at the time of the trial there was **no possibility of further cure**. Id. at 956 (emphasis added). Therefore, it is not instructive in cases that involve seaman who suffer from injuries which are treatable. Id. at 956-7. Similarly, in the case at bar, the Claimants suffer from various ailments which can benefit from further medical treatment. See e.g. attached Exhibit A the report from Dr. Dominguez stating that Claimant Link requires continuing psychiatric care, physical therapy, and pain management in the form of medications and invasive procedures, and Exhibit D, a report from Claimant Wallace's physician, Dr. Snow, prescribing additional physical therapy and specialty referrals as treatment for his lower extremity pain. As such, because the Claimants are need of further medical attention to reach maximum improvement they should be provided with the

6

medication and treatment necessary for their rehabilitation.

## CONCLUSION

In conclusion the Claimants respectfully ask  this court to deny the Plaintiff's motion to discontinue maintenance and cure.  As stated in this memorandum and its predecessor, the Claimants have not reached maximum cure, and thus the laws of admiralty require the Plaintiff to provide further medical treatment.

_____

PAUL D. BEKMAN
ROCHEL Z. SCHNUR
Salsbury, Clements, Bekman, Marder
     & Adkins, L.L.C.
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201
Telephone:  410-539-6633
Facsimile:  410-652-9554

_____

RALPH RABINOWITZ
Rabinowitz, Swartz, Taliaferro, Lewis,
     Swartz & Goodove
Town Point Center, Suite 800
150 Boush Street
Norfolk, Virginia 23510

Attorneys for Troy A. Link
and Dennis Wallace

7

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on this _____ day of September, 2003, a copy of Claimants'

Motion for Leave to File a Surreply, and Claimants' Surreply to Plaintiff, Norfolk Dredging

Company's Reply Brief in Support of its Motion to Approve and Confirm Discontinuance of

Maintenance and Cure was mailed, first class, postage prepaid to the following:


Ralph Rabinowitz, Esquire
Rabinowitz, Swartz, Taliaferro, Lewis,
    Swartz & Goodove
Town Point Center, Suite 800
150 Boush Street
Norfolk, Virginia 23510

J. Stephen Simms, Esquire
W. Charles Bailey, Jr., Esquire
Simms Showers LLP
20 S. Charles Street, Suite 702
Baltimore, Maryland 21201

John T. Ward, Esquire
Ward/Kershaw, P.C.
113 West Monument Street
Baltimore, Maryland 21201

David W. Skeen, Esquire
Wright, Constable & Skeen, L.L.P.
One Charles Center, 16th Floor
100 North Charles Street
Baltimore, Maryland 21201

Robert M. Schwartzman, Esquire
Lord & Whip
800 One Center Plaza
120 West Fayette Street
Baltimore, Maryland 21201-3700

Peter Ayers Wimbrow, III, Esquire
4100 Coast Highway
Ocean City, Maryland 21842

C. Arthur Rutter, III, Esquire
Deborah C. Waters, Esquire
Rutter, Walsh, Mills & Rutter, LLP
415 St. Paul's Boulevard, Ste. 700
Norfolk, Virginia 23510

Thomas B. Shuttleworth, Esquire
Shuttlworth, Ruloff, Giordano & Swain, P.C.
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452

Carter T. Gunn, Esquire
Vandeventer, Black, LLP
500 World Trade Center
Norfolk, Virginia 23510-1699

Patrick M. Brogan, Esquire
R. Arthur Jett, Jr., Esquire
Davey & Brogan, P.C.
101 Granby Street, Suite 300
Norfolk, Virginia 23510

M. Hamilton Whitman, Jr., Esquire
Robert B. Hopkins, Esquire
Charles A. Diorio, Jr., Esquire
Ober, Kaler, Grimes & Shriver, P.C.

9

120 East Baltimore Street
Baltimore, Maryland 21202

David H. Sump, Esquire
David N. Payne, Esquire
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
One Commercial Place
Norfolk, Virginia 23510

Cain Denny, Esquire
Cain Denny, P.A.
P.O. Box 1205
Charleston, South Carolina 29402

John Hughes Cooper, Esquire
1808 Middle Street
P.O. Box 395
Sullivan's Island, South Carolina 29482

Peter G. Decker, Jr., Esquire
Decker, Cardon, Thomas, Neskis
Decker Building
201 E. Plume Street
Norfolk, Virginia 23510

W. Hamilton Whitman, Jr., Esquire
Robert B. Hopkins, Esquire
Charles A. Diorio, Esquire
Ober, Kaler, Grimes & Shriver, P.C.
120 E. Baltimore Street
Baltimore, Maryland 21202-1643

William E. Johnson, Esquire
Johnson Law Center
P.O. Box 99
Mathews, Virginia 23109

A. Davis Bugg, Jr., Esquire
Rumsey & Bugg, P.C.
Irvington Road
P.O. Box 720
Irvington, Virginia 22840

James W. Bartlett, III, Esquire
Alexander M. Giles, Esquire
Semmes, Bowen & Semmes
250 West Pratt Street, 16th Floor
Baltimore, Maryland 21202

Johnnie L. Cochran, Jr., Esquire
J. Farrest Taylor, Esquire
Cochran, Cherry, Givens & Smith, P.C.
163 West Main Street
P.O. Box 927
Donthan, Alabama 36302

John A. V. Nicoletti, Esquire
Michael J. Carcich, Esquire
Nicoletti, Hornig, Campise & Sweeney
Wall Street Plaza
88 Pine Street
New York, New York 10005-1801

_____

_____ PAUL D. BEKMAN

10

11