bridge, with heavy loss of life. The owner's unwritten policy was to place the pilot rather than the master in ultimate command in pilotage waters, so that the master's failure to countermand negligent orders of the pilot caused the allision. Limitation was denied for this reason and others, including the lack of a shipboard training program and the owner's failure to check the licenses of the chief and second mates (which were in fact fraudulent), although the management knew of a problem of fraudulent licenses in the fleet. In *In re Chevron Transport Co.*[60] a tanker collided with a dredge flotilla, the management personnel of the tanker owner having failed to distribute to the masters of vessels in the fleet a notice to mariners concerning the presence of the dredge. Limitation was therefore denied. In *In re Thebes Shipping Co. (The Argo Merchant)*[61] a tanker went aground, broke in two, and sank, causing a massive oil spill; limitation was denied because of general gross mismanagement and neglect of the owners, who were thus in privity with the improper, slipshod navigational practices of the master. Furthermore, persistent failures of the gyrocompass and radio direction finder rendered the ship unseaworthy. There was ample notice to the management, because the deck logs contained irregular true-course entries having no rational relationship to the magnetic compass entries. In *In re Cameron Boat Rentals, Inc.*[62] an oil rig crew boat struck and sank an anchored wooden pleasure fishing boat, causing death and personal injuries. Limitation was denied because pilots ignorant of radar fundamentals were hired and their maintenance of excessive speed and failure to keep a proper look-out caused the disaster.

Section C. Limitation of Liability in Both-to-Blame Collision Cases

### 1. The Single Liability Rule

At the outset it should be noted that much judicial thinking has centered around the almost ideal situation where the colliding vessel interests and all possible claimants are proceeding in the same court, where, additionally, the contending shipowners have filed complaints for exoneration from, or limitation of, liability. Since claimants remain free to select a favorable forum outside the United States, however, it is not always possible to force a single forum, regardless of efficiency.[63]

The judicial goal is a single judgment, essentially a shortcut, where the one judgment determines all issues, including not only the liability issues but the right of each owner to limit and the constitution and distribution of the

---

60. 613 F. Supp. 1428 (MD Fla. 1985), modified, 832 F.2d 1540, 1988 AMC 2278 (11th Cir. 1987).
61. 486 F. Supp. 436, 1980 AMC 1686 (SDNY 1980).
62. 683 F. Supp. 577 (WD La. 1988), on remand from 819 F.2d 1140 (5th Cir. 1987).
63. See *The Salvore*, supra note 4.

fund of the shipowner on the "paying end." Because of the difficulty sometimes encountered in achieving this goal today, a court must devise solutions for those situations in which only a part of the collision-limitation puzzle has been referred to it. The place to begin is the 1882 Supreme Court decision in *The North Star—The Ella Warley*,[64] involving a collision between two steamships in an end-on meeting situation, one entering and the other leaving New York Harbor. The inbound *Ella Warley* sank and was a total loss; the outbound *North Star* was badly damaged, but survived to be arrested *in rem* in an action brought by the *Ella Warley*'s owners. The *North Star*'s owners filed a cross-libel (counterclaim) against the *Ella Warley*'s owners, and the libel and cross-libel were tried together. The result was both-to-blame, and the circuit court divided the damages equally under the American rule then in force,[65] rendering a decree in favor of the *Ella Warley*'s owners for the amount by which their damages exceeded one-half the total damages of both parties.

Neither owner petitioned for limitation, but the Supreme Court described the *Ella Warley*'s total-loss situation as the equivalent of one where her owners had filed a limitation petition.[66] (At the time *The North Star* was decided, an owner was permitted to delay seeking limitation until after being held liable.) The Court noted that the *North Star* would probably not be entitled to limit because the faulty positioning of her sidelights was attributable to her owners and was a contributing cause of the collision. The *Ella Warley*'s owners contended that, as their vessel was a total loss, the Limitation Act protected them against any liability to the *North Star*'s owners, they were entitled to recover half their damages from the *North Star*'s owners, and that the latter were not entitled to any deduction in respect of the *North Star*'s damages, i.e., that limitation should be applied *before* a balance was struck between the damages of the two vessels. This contention was flatly rejected by the Supreme Court, which affirmed the decree of the circuit court as written. The Court thus established the rule that in both-to-blame collision cases, limitation is applied only after a balance has been struck, and then, in the absence of privity or knowledge, it is applied to the balance which would otherwise be owing by one owner to the other. The rule was stated by the Court as follows: "When this resulting liability of one party to the other has been ascertained, then, and not before, would seem to be the proper time to apply the rule of limited responsibility, if the party decreed to pay is entitled to it. It will enable him to avoid payment pro tanto of the balance found against him."[67] While the rule was adopted at a time when damages were divided equally in both-

---

64. 106 U.S. 17 (1882).

65. *The Schooner Catharine v. Dickinson*, 58 U.S. 170 (1855).

66. 106 U.S. at 29: "The *Ella Warley* by her loss discharged her portion of the common burden, and so much more as the amount that would thus be decreed in her favor. Her delivery to the waves was tantamount to her surrender into court in case she had survived."

67. 106 U.S. at 20. See *The Manitoba*, 122 U.S. 97 (1897), interpreting *The North Star*, and applying it to a situation where the damages were very unequal ($85,818 and $7,470, respectively) although the vessels' faults were equal.

to-blame collision cases, regardless of the respective degrees of blame, it remains valid under the proportional fault rule in force in the United States since *Reliable Transfer*.[68]

The following is an example of its application in a case where Vessel A is 75 percent and Vessel B 25 percent to blame for a collision causing A $100,000 and B $200,000 in damages:

| | |
|---|---|
| A's 75 percent share of total damages: | $225,000 |
| A's own damages: | −100,000 |
| Single liability of A to B before limitation: | $125,000 |
| | |
| B's own damages: | $200,000 |
| B's 25 percent share of total damages: | −75,000 |
| Single liability of A to B before limitation: | $125,000 |

If A is held entitled to limitation, A's fund is $80,000, and there are no other claims against the fund, then B will receive A's entire fund ($80,000) and will have to bear the remaining $45,000 of the $125,000 B would have received from A if limitation had been denied.

Assuming there is no reversal on appeal, as there is only a single liability, i.e., the liability of A to B, and no cross-liability of B to A, then whether or not B has filed a complaint for limitation will be of no consequence. Nor, if B *has* filed a complaint, will it be of any consequence whether or not B has been able to prove absence of privity or knowledge.

In the example given, it is presupposed that any third-party claims for which each vessel is liable have been paid or secured and included in the collision damages of the party or parties paying or securing the claims.[69] It is also presupposed that any claims representative of Vessel A, such as outstanding claims for unrepaired collision damage arising on a prior voyage, have been included in A's limitation fund.[70] Other illustrations of adjustments in both-to-blame collision cases involving limitation will be found in the appendix.

### 2. Innocent Claimants' Right to Priority

This section describes the application of equitable principles[71] in the distribution of an inadequate limitation fund. In the marshaling of claims and the distribution of the fund, a district court, as a court of admiralty, will apply the equitable principle of subordination or postponement of claims of parties without "clean hands" (such as the other colliding vessel in a both-to-blame case) until all claimants innocent of fault have been paid in full or the fund

---

68. 421 U.S. 397, 1975 AMC 541 (1975).
69. *The Albert Dumois*, 177 U.S. 240 (1900).
70. *O'Brien v. Miller*, supra note 36.
71. *Hartford Accident and Indemnity Co. v. Southern Pacific Co. (The Bolikow)*, supra note 22, 1927 AMC 402 (1927).