

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| Elk River Collision Proceedings | * | |
| Norfolk Dredging Company, et al. | * | Civil Action No. WMN-02-CV-00662 (Consolidated) |
| Plaintiffs/Counter-Defendants, | * | |
| v. | * | |
| M/V A.V. KASTNER, etc., et al., | * | |
| Defendants/Counter-plaintiffs. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### BUCHANAN AND BUCHANAN LP RESPONSE TO GYPSUM'S FIRST INTERROGATORIES

Buchanan and Buchanan LP (collectively, "Buchanan") respond as follows to Gypsum Transportation Ltd.'s first interrogatories:

### GENERAL OBJECTIONS

In addition to the specific objections to each individual interrogatory, Buchanan incorporates by reference the following General Objections to its answers to specific interrogatories as if fully set forth therein:

A.   Buchanan objects to each interrogatory and instruction to the extent that it is inconsistent with Fed. R. Civ. P. 33.

B.   Buchanan objects to each interrogatory and instruction to the extent that it calls for information which is privileged, attorney work product, or created in anticipation of litigation.

C.   In its responses, Buchanan has made a good faith effort to provide complete and accurate information by conducting a reasonable investigation with respect to the requested information. Buchanan's investigation of this case is ongoing, however, and, among other things, damages have not yet been determined with finality. Accordingly, Buchanan hereby

Quality Assurance Syndicate; Bill Daley, Chesapeake Engineering and Design.

**Interrogatory No. 3:** Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

**Answer to Interrogatory No. 3:** Buchanan has not identified its trial or deposition expert witnesses. Buchanan will identify those witnesses as Fed. R. Civ. P. 26(b) requires and objects to this interrogatory to the extent that it requires information beyond what Fed. R. civ. P. 26(b) requires.

**Interrogatory No. 4:** Give a concise statement of the facts as to how you contend the Incident occurred setting forth all facts and identifying all documents that support any contention(s) that you have that GTL and/or any other person(s) is/are liable to you with regard to the Incident.

**Answer to Interrogatory No. 4:** On Monday morning, February 25, 2002, the M/V A.V. KASTNER was heading toward Baltimore on the Elk River in this District, from the C&D Canal. The TUG BUCHANAN 14 was towing several barges and a dredge, owned by Norfolk Dredge Company, and with its tow was heading toward the C&D Canal, also on the Elk River. The TUG SWIFT, also owned by Norfolk Dredge Company, was in some manner tied to either one of the barges, or the dredge, towed by the TUG BUCHANAN 14. The M/V A.V. KASTNER, and the TUG BUCHANAN 14, were in regular contact, recognized that each was on a course that would require each to pass by the other on opposite sides of the channel, and agreed that they would pass port to port, with the M/V A.V. KASTNER maintaining a course on the north side of the channel, and the TUG BUCHANAN 14 maintaining a course on the south side of the channel. When the M/V A.V. KASTNER approached the TUG BUCHANAN 14, however, the M/V A.V. KASTNER was on the south side of the channel, approaching the starboard, and not the port, side of the TUG BUCHANAN 14 and its tow. The TUG

BUCHANAN 14 therefore took evasive action to port, and the M/V A.V. KASTNER collided with one or more of the barges that the TUG BUCHANAN 14 was towing, and/or the dredge. As a result either of this impact from the M/V A.V. KASTNER, with the barges and/or dredge, or directly with the TUG SWIFT, the TUG SWIFT capsized. The Master of the TUG SWIFT, and three of those others aboard the TUG SWIFT, died from drowning and/or from the impact, and others who were aboard the TUG SWIFT were injured.

The documents responsive to this interrogatory, are those produced by Gypsum in conjunction with the depositions of the officers and crew of the M/V AV KASTNER in February, 2002.

**Interrogatory No. 5:** Describe in detail the navigation and maneuvering of the Tug and Tow Flotilla, including but not limited to, courses, speeds, intended track lines, orders, bearings, fixes and positions, for thirty minutes prior to the Incident through thirty minutes after the Incident.

**Answer to Interrogatory No. 5:** Buchanan produces in response to this interrogatory, pursuant to Fed. R. Civ. P. 33, the statements of the master and crew of the TUG BUCHANAN 14 provided to the United States Coast Guard, and the log of the TUG BUCHANAN 14 including entries for the time period requested.

**Interrogatory No. 6:** Describe in detail the Tug and Tow Flotilla as it transited the Elk River just prior to the Incident, identifying each type of vessel and/or other object in tow and its place in tow, the distances between each vessel and/or other object in tow, the number of hawsers connected to each vessel and/or other object in tow, the length of hawser between each vessel and/or other object in tow, the overall length of the Tug and Tow Flotilla from the lead vessel to the last vessel and/or other object in tow, and the owner and/or operator of each vessel and/or other object in tow.

**Answer to Interrogatory No. 6:** Buchanan produces in response to this interrogatory, pursuant to Fed. R. Civ. P. 33, the statements of the master and crew of the TUG BUCHANAN 14 provided to the United States Coast Guard, and the log of the TUG BUCHANAN 14 including entries for the time period requested. Buchanan LP at the time of the accident owned