IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NORFOLK DREDGING CO.          :
                             :
v.                           :          Civil Action WMN-02-662
                             :
M/V A.V. KASTNER, <u>et. al.</u>     :
                             :

MEMORANDUM

Before the Court is Buchanan Marine's ("Buchanan") Motion for Partial Summary Judgment on the Question of Tugs' "Dominant Mind" and Number of Tows.  Paper No. 203.  The motion is opposed by both the KASTNER interests and Norfolk Dredging Company ("NDC"), and is ripe for decision.  Upon a review of the pleadings and applicable case law, this Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be denied.

I.   BACKGROUND

This litigation arises out of a collision involving multiple vessels in an area of fog on Maryland's Elk River on February 25, 2002.  Immediately prior to the collision, the Tug BUCHANAN 14, owned by the Buchanan Trust and operated by Buchanan Marine, L.P., was proceeding up the Elk River channel toward Delaware City towing the Barge RC-811 astern.  The RC-811 was loaded with dredging equipment and was owned and operated by NDC (as were each of the remaining vessels

following behind it and the Buchanan 14).  Towed directly
behind the RC-811 was the dredge JECKYLL ISLAND.  The Tug
SWIFT was secured to the side of the JECKYLL ISLAND and was
providing additional motive power, while towing Derrick Barge
No. 9.  Derrick Barge No. 9 had a bundle of floating dredge
pipe, extending nearly 500 feet astern, attached to its after
deck, and two small self-propelled Pushers tended to the
direction in which the bundle floated.

The M/V A.V. KASTNER, owned by Gypsum Transportation Ltd.
and operated by Beltship Management Ltd., was proceeding in
the Elk River channel towards Baltimore immediately prior to
the collision.  The bow of the KASTNER, a ship several times
bigger than the largest of the vessels described above, first
collided with the bow of the RC-811 and then against the
starboard side of the SWIFT.  The collision resulted in the
sinking of both the SWIFT and RC-811; the latter with its
dredging equipment aboard.  Four NDC employees aboard the Tug
SWIFT at the time of the collision were killed and three
allege injuries stemming from the incident.

On March 1, 2002, NDC instituted a limitation of
liability proceeding in this Court against the M/V A.V.
KASTNER and its owner, Gypsum Transp., to cover its current
and future damages from the incident.  Additional claims

brought Beltship Mgmt., Buchanan Trust, Buchanan Marine, L.P.,
Captain Timothy Cober, the injured individual crew members and
the estates of the deceased crew members into one consolidated
action.  Buchanan has now moved for partial summary judgment,
arguing that as a matter of law the Tug BUCHANAN 14 was not
the "dominant mind" of a single flotilla[1] and that the vessels
involved comprised not one, but two separate tows.

## II. LEGAL STANDARD

Summary Judgment is proper if the evidence before the
court, consisting of the pleadings, depositions, answers to
interrogatories, and admissions of record, establishes that
there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law.  Fed.
R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986).  The moving party bears the burden "of informing the
district court of the basis for its motion . . . and
identifying" the portions of the opposing party's case that
demonstrate the absence of a genuine issue of material fact.
Id. at 323.  A material fact is one "that might affect the
outcome of the suit under the governing law."  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of

---

[1]Buchanan stops short of arguing that any of the NDC
vessels, rather than the BUCHANAN 14, was in fact the dominant
mind of the entire group.

material fact exists where "the evidence is such that a

reasonable jury could return a verdict for the nonmoving

party." Id. at 249.

     If the moving party demonstrates that there is no genuine

issue of material fact and that the moving party is entitled

to summary judgment as a matter of law, the non-moving party

must, in order to withstand the motion for summary judgment,

produce sufficient evidence in the form of depositions,

affidavits or other documentation which demonstrates that a

triable issue of fact exists for trial.  Celotex, 477 U.S. at

324.  Unsupported speculation is insufficient to defeat a

motion for summary judgment.  Felty v. Graves-Humphreys Co.,

818 F.2d 1126, 1128 (4th Cir. 1987)(citing Ash v. United Parcel

Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986).

Furthermore, the mere existence of some factual dispute is

insufficient to defeat a motion for summary judgment; there

must be a genuine issue of material fact. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Thus, only disputes

over those facts that might affect the outcome of the case

under the governing law are considered to be "material."  Id.

     Finally, in assessing such a motion, the Court must view

the evidence and all justifiable inferences in the light most

favorable to the party opposing the motion.  United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).

**III.   DISCUSSION**

Buchanan's motion appears to be a pre-emptive response to anticipated allegations by NDC that the Tug BUCHANAN 14 bore primary responsibility for the collision as the lead tug or "dominant mind" of a single flotilla.  The doctrine of dominant mind is employed to absolve vessels in a flotilla from liability for damage caused by the entire flotilla and to ensure that the only vessel held liable is the one "whose people are actually in control of the operation."  T. Schoenbaum, Admiralty and Maritime Law 258 (3d Ed. 2001).  The general rule is that, "[i]n the absence of an agreement to the contrary, a tug which supplie[s] the motive power to her tow is the dominant mind, and the tow is required to follow direction from the tug."  The Rebecca, 152 F.2d 607, 609 (4th Cir. 1945).

> The rule is not absolute, however; at best it is
> only a presumption that the tug in control is
> responsible as the 'dominant mind.'  If the evidence
> shows some breach of duty on the part of the tow or
> an act of negligence that contributed to the
> casualty, the tow will also be liable.  The doctrine
> of 'dominant mind' is also used as a rebuttable
> presumption that helper tugs aiding an operation are
> not liable if they are merely following instructions
> of the tug in charge.

Schoenbaum at 258.

Buchanan argues that, for a number of reasons, the

BUCHANAN 14 cannot have been the dominant mind of the vessels

that collided with the KASTNER.  First, the Tug SWIFT had its

own motive power and allegedly made its own decisions as to

navigation and whether to tie up to the dredge JECKYLL ISLAND

and thus form part of the chain pulled by the BUCHANAN 14.

Second, Captain Ricky McLamb, an NDC employee stationed aboard

the JECKYLL ISLAND, was allegedly the true decision maker

whose instructions the Buchanan employees were bound to

follow.  Third, the SWIFT and its tows comprised a separate

flotilla from the BUCHANAN 14 and its tows.  The Court will

deal with each of these  arguments by Buchanan, as well as the

responses by the KASTNER interests and NDC, in turn.

### A.    Dominant Mind

Buchanan begins its argument that the BUCHANAN 14 was not

the dominant mind with a cite to <u>The Maria Martin</u> for the

principle that liability for a collision may be apportioned on

either the tug or its tow (or both) depending on the

particular facts concerning navigational decision making.  79

U.S. 31, 44 (1870).  Buchanan then states, without specific

citation to the record, that the SWIFT was under its own

navigation at the time of the collision and made its own

decision as to whether and how to attach to the JECKYLL

ISLAND.  Both NDC and the KASTNER interests respond by quoting

language from the deposition of Dennis Wallace, the mate of

the SWIFT, where he repeatedly stated that the crew of the

BUCHANAN, not the SWIFT, was in charge of navigating.  NDC

Opp. at 4 (quoting Wallace Tr. at 35, 40)("I had my rudders

set pretty much dead center, throttle set, he [the BUCHANAN]

was guiding us.  He was leading us through everything or he

was guiding us. ... [w]e never had to touch our wheel.");

KASTNER Opp. at 11 (quoting Wallace Tr. at 217)("I didn't

navigate.  The [BUCHANAN] navigated.").  The KASTNER interests

further point to evidence in the record that as the group of

boats and the KASTNER approached each other, all conversations

with Captain Cober of the KASTNER were carried out by either

Captain Welch or Mate McMahan, both of the BUCHANAN 14.

KASTNER Opp. at 10.  Finally, NDC cites to The Fort George,

183 F. 731, 732 (2d Cir. 1910), as support for the notion that

the SWIFT's ability to navigate for itself does not excuse the

poor navigation of the BUCHANAN 14 as the lead tug.

Buchanan's next argument in support of its contention

that the BUCHANAN 14 cannot have been the dominant mind is

that Dredge Captain McLamb was giving orders as to how the

flotilla was to proceed from his post on the JECKYLL ISLAND.

Although Buchanan stops short of alleging that McLamb was in

fact the dominant mind of the flotilla, it appears to be their

7

position that his authority supports the BUCHANAN 14 and the
SWIFT taking responsibility for any negligence on their parts
which may have contributed to the collision.  The KASTNER
interests agree with the ultimate position taken by Buchanan;
that both Buchanan and NDC should bear responsibility for the
negligence of their employees.  The KASTNER interests arrive
at this conclusion, however, by dismissing the appropriateness
of a dominant mind analysis at all, because in their view,
both tugs in the flotilla were independently negligent.

NDC responds by citing deposition testimony of Captain
Welch of the BUCHANAN 14 that is equivocal, at best, as to
whether anyone had instructed him that he was to take orders
from Dredge Captain McLamb.  NDC then argues, based on the
deposition testimony of various witnesses, that during the
hours leading up to the collision, when decisions were made
concerning whether the group of vessels should proceed as one
tow or two, McLamb was asleep and could not have participated
in, much less controlled, the decision making process.  The
Court finds that the sum total of these arguments is that
genuine disputes as to material facts remain as to who
controlled the vessels and whether any of the vessels should
be considered the dominant mind.  Accordingly, Buchanan's
motion for partial summary judgment will be denied.

B.    One Flotilla Or Two

Buchanan's remaining argument (made without citation to precedent or the record) is that because the SWIFT and its tows, and the BUCHANAN 14 and its tows traveled separately at points during their trip, they cannot be considered a single flotilla as a matter of law, despite the fact that they were connected in the hours prior to the collision.  Buchanan additionally states that it is undisputed that Captain Bryant separated the SWIFT from the JECKYLL ISLAND immediately prior to the collision.  The Court is unswayed that either of these factors militates a finding that the Court must view the group of vessels as two separate flotillas for purposes of a dominant mind analysis.

The Court finds that whether the vessels traveled as separate flotillas earlier in their journey may have a bearing on the dominant mind analysis, but it does not conclusively establish that in the crucial hours and minutes preceding the collision, the vessels should not be considered as comprising one continuous chain.  As to whether the SWIFT purposefully separated from the JECKYLL ISLAND prior to the collision or whether the separation was merely a by-product of the impact, both NDC and the Kastner interests cite deposition testimony showing that the issue is at least in dispute.  See NDC Opp. at

9

13-14; KASTNER Opp. at 15.  NDC also presents a compelling

argument that even if the SWIFT purposefully separated from the

JECKYLL ISLAND in the seconds preceding the collision, it was

an action taken in desperation after the SWIFT had already been

led into the path of the KASTNER.  The Court concludes that

whether there was more that one flotilla at the time of the

accident is not an issue appropriate for resolution at summary

judgement.

**IV.      CONCLUSION**

For all of the foregoing reasons, Buchanan's motion for

partial summary judgment will be denied.  A separate order will

issue.

/s/

_____
William M. Nickerson
Senior United States District Judge

Dated: January 13, 2004.