IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| Elk River Collision Proceedings | * | |
| Norfolk Dredging Company, <u>et al</u>. | * | Civil Action No. WMN 02-662 (Consolidated Cases) |
| Plaintiffs, | * | |
| v. | * | |
| M/V A.V. KASTNER, <u>et al</u>. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**BUCHANAN RESPONSE OPPOSING
<u>KASTNER'S AND COBER'S MOTION TO COMPEL</u>**

Local Rule 104.8.a provides in pertinent part as follows:

> a.  **Service of Motions Papers**
> If a party who has propounded interrogatories or requests for production is dissatisfied with the response to them and has been unable to resolve informally (by oral or written communications) any disputes with the responding party, **that party shall serve a motion to compel within thirty days of the party's receipt of the response**.

Further, all parties agreed to this Court's November 14, 2003 deadline for **all** motions in the case.

<u>**The Motion is Untimely**</u>

The KASTNER parties and Captain Cober direct their December 16, 2003 motion to compel to Buchanan's supposed failure to respond to a **single** KASTNER production request, which KASTNER served on August 22, **2002** - - over a year and a half ago.

First, Captain Cober never served discovery requests on Buchanan. He has no grounds to move to compel compliance with discovery requests he never served.

Buchanan's initial, September 24, **2002** response to the KASTNER requests, stated as follows:

> **Request No. 20:** All documents in any way referring or relating to the training and experience of the crew of any of the vessels in Tug and Tow Flotilla, including but not limited to licenses, schools, certificates or other documents.
>
> **Response to Request No. 20:** Buchanan [will] produce a copy of the U.S. Coast Guard certificates for each of its certified crew members aboard the TUG BUCHANAN 14 at the time of the incident.

Local Rule 104.8.a required that if the KASTNER parties disagreed with this production, they had to move to compel further production, by October 24, 2002.

But, no motion was filed.

As KASTNER points out, Buchanan chose to supplement its response on January 31, 2003, listing further, specific documents that Buchanan would produce.

Local Rule 104.8.a required that if the KASTNER parties disagreed with this supplemented production, they had to move to compel further production, by March 2, 2003.

But, no motion was filed.

Instead, the KASTNER interests delayed over 45 days more, to the April 16, 2003 30(b)(6) deposition of Buchanan. There, they argued, that their inciteful questioning revealed an entire class of documents - responsive to their September 22, 2002 Request No.10 - that Buchanan had not produced.

These documents that Buchanan would have to produce - - log books, voyage plans, and the like - - the KASTNER interests then revealed, would be anything that ever possibly, ever had to do with TUG BUCHANAN 14's Captain Michael Welch's work at any time on the water.

But of course, what the KASTNER interests attempt to gloss over with the Court now, is, that **all of the parties had deposed Captain Welch months before, on October 1, 2002**! In fact, the movants go so far as to attach Captain Welsh's deposition transcript - of October 1, 2002, where he talks about his experience with Buchanan and the vessels he worked on.

So, was it any mystery to the KASTNER interests, that, by the first, October 24, 2002 deadline for any motion to compel - or the second after Buchanan's supplementary production, of March 2, 2003 -that they did not have what they now say it was revealed to them on April 16, 2003 that they did not have?

Of course not.

Are they really saying, that when they deposed Captain Welsh on October 1, **2002**, that they had no idea that there were voyage plans and log books, for the other Buchanan vessels he had worked on? Really?

Of course not.

The Court should look closely at transcript of the KASTNER's questioning of Buchanan's 30(b)(6) witness on April 16th. It is not questioning, its argument with the witness. What the KASTNER questioning does, is attempt to re-state and reassert the KASTNER's August 22, 2002 document request, and then, argue that the documents - which KASTNER always fully well knew existed - were within that request (at 105):

```
7     Q.  If we wanted to see what type of tows he
8     was involved in, how would we do that?  We would have
9     to look at the log books from the B14 and the B11; is
10    that correct?

11    A.  Yes.
```

12    Q. And the voyage plans?

13    A. And voyage plans.

14    Q. And invoices?

15    A. I don't think you would get much off of
16  invoices, but we may be able to have some.

17    MR. HOPKINS: And I'm going to ask -- I
18  believe I'm going to -- we have some B14 logs. We do
19  not have any B11 logs, which I'm going to ask for
20  those for the time period of his employment --

21    MR. SIMMS: Okay. I'll look at the
22  production request.

23    MR. HOPKINS: -- as well as voyage plans.

24  Well, I'm asking you for them, and if you're telling
25  me you're not going to produce them --

          104

1    MR. SIMMS: I hear you're asking for
2  them.

3  BY MR. HOPKINS:

4    Q. And he worked on the False Cape during
5  his employment; is that correct?

6    A. That's correct.

7    Q. Any other vessels?

8    A. We have a launch, Christine J. It's a
9  45-foot crew boat that we use on construction jobs.
10  We were assisting in some -- standing by for oil
11  spill recovery.

12    Q. Was the Christine J. involved in tow

> 13   operations?
>
> 14      A. No.
>
> 15      Q. Once again, we're going to ask for the
> 16   log books and the invoices and the voyage plans for
> 17   the False Cape for when he was employed.
>
> 18      A. Okay. I doubt that there will be any
> 19   voyage plans for the False Cape, because primarily
> 20   the work was done in the harbor. We do not fill out
> 21   a voyage plan if they're just doing a shift in the
>
> 22   harbor.
>
> 23      Q. Are there any other documents that you
> 24   can think of that we could look at to see what he did
> 25   with you, to see what types of tows he was involved
>
> 105
>
> 1   with?
>
> 2      A. I don't recall -- I don't know if we
> 3   worked up a work history of what tows that he handled
> 4   while he was with us.
>
> 5      Q. Okay.

As the KASTNER interests then must admit - even **if** this was some sort of revelatory discovery of documents - which it was not - they said nothing about the documents for a further, extended time period (again well beyond the Local Rule 108 30 day period) - to June 3rd.

The Court should also look closely at the June 3d e-mail. Again, KASTNER attempts to re-assert its August, 2002 discovery requests, now, after the discovery deadline.

But, again, more than 30 days passes, to the next exchange, on July 28, 2003, where Buchanan responds:

> Concerning documents which Gypsum contends haven't been produced, Buchanan doesn't agree that, even if such documents exist and are responsive to Gypsum's requests, their existence would require a re-convening of the Buchanan 30(b)(6) deposition. Buchanan already has produced many documents, including the "checklist used in hiring." Buchanan expects next week to produce any further responsive documents requested. Thereafter, the parties can discuss further whether the 30(b)(6) notice requires any further testimony concerning any such documents and if so whether there is any real need for the testimony.

There was no agreement at all - and significantly movants do not assert that there was such an agreement, on Buchanan's part, to produce the broad class of documents that movants insist on now. Instead, Buchanan's position was consistent from the beginning. It undertook to produce - and did produce - specific documents, in response to the request.

But, as KASTNER also must admit, Buchanan did not produce any further documents, specifically, the overly-broad collection of logbooks from other vessels, and the like, KASTNER now asks this Court, in December, 2003, to compel.

Instead, the KASTNER (or rather, Captain Cober) waited yet again, until two days after this Court's November 14, 2003 motions deadline - November 16th (and months beyond the last communication on this, of July 28th), to raise any question.

The KASTNER claimants' arguments must fail for a number of reasons.

First, from the beginnings of Buchanan's responses to KASTNER's August, 2002 "Request No. 20," it was clear that there was a dispute about the scope of the request. Buchanan believed that its production met that scope. KASTNER believed it didn't. Local Rule 108 clearly established the time for KASTNER to move to compel and assert its view of the request. KASTNER never complied, repeatedly, with the rule.

Second, simply because KASTNER chose to ask about the overly-broad category of documents it wanted - at a deposition - or in an e-mail - did not revive the time limits of Local Rule 108, or, revive the discovery deadline. Local Rule 104.2, for example, states that:

> 2. **Timely Written Discovery Requests Required**
> Interrogatories, requests for production, motions for physical and mental examination, and written deposition questions must be made at a sufficiently early time **to assure that they are answered before the expiration of the discovery deadline set by the Court**. Unless otherwise ordered by the Court, no discovery deadline will be extended because written discovery requests remain unanswered at its expiration.

(Emphasis added). KASTNER knew that - by the May 30, 2003 discovery deadline, not only did it lack the documents it thought its August 2002 "Request 20" entitled it to have - but, also, that Buchanan had never undertaken to provide those. Discovery Guideline 8 provides similarly that:

> Unless otherwise provided by the Local Rules of this Court, no stipulation which modifies a Court-imposed deadline shall be deemed effective unless and until the Court approves the stipulation.

Nothing here, of course, modified either this Court's November 14, 2003 motions deadline, May 30, 2003 discovery deadline, or the Local Rule 108 30 day deadline for serving motions to compel.

Third, although KASTNER might claim that it somehow is entitled to "rolling" discovery here, it is not; the deadlines for discovery, and the scope of its document production requests, have nothing to do with when KASTNER decided on the time require compliance with its view of them.

This case is on the cusp of a scheduled, February, 2004 trial. KASTNER only now moves to compel production of a vast range of documents that it always knew existed, certainly, from the time of its August, 2002 production requests.

This Court accordingly should deny KASTNER's attempt, to compel its view of the production - which it insists now is vast (but waited some time to assert) - in response to its August, 2002 Request No. 20.

### The Demand for Captain Welch's Personal Diary Is Also Late - But Buchanan Has Produced the Pages Proximate to the Accident

KASTNER also must admit, that it learned of Captain Welch's personal diary at his October 1, **2002** deposition. Significantly, KASTNER further fails to cite any production request - to Buchanan - calling for Captain Welch's personal diary; there was none. KASTNER simply asked for it, at the deposition.

KASTNER fails to inform the Court, however, that sometime in the first half of 2003 (and before the May 30, 2003 discovery deadline), one of the lawyers representing KASTNER contacted Captain Welch, ex parte, inquiring about Captain Welch's address, and telling him, that he would receive a subpoena, for his personal diary.[1]

For some reason that the KASTNER only knows, however, KASTNER did not serve that subpoena, although, as it must admit as well, it knew then, that Captain Welch was no longer Buchanan's employee.

Buchanan has produced pages of the diary, which it was able to obtain from Captain Welch in November, 2003, voluntarily; these are for the February 22-February 25 period, proximate to the accident. These documents, however, are not Buchanan documents. They are Captain Welch's documents. Buchanan would assert, that any request for other pages of the

---

[1] KASTNER has had no difficulty locating Captain Welch. On December 26, 2003, it served him with a deposition subpoena - asking for his personal diary. Captain Welch, and Buchanan, have objected to this subpoena pursuant to Fed. R. Civ. P. 45.

diary are outside of the scope of Fed. R. Civ. P. 26.  But, at any rate, KASTNER cannot have this Court compel Buchanan to produce this document, that it never required Buchanan to produce pursuant to Fed. R. Civ. P. 34 in the first place, and, that Buchanan never possessed, prior to obtaining it voluntarily, in November, 2003 and well after the Court's May 30, 2003 discovery deadline.

This Court accordingly, as well, should deny movants motion, concerning Captain Welch's personal diary.

Dated: December 30, 2003.

/s/   J. Stephen Simms
J. Stephen Simms (#4269)
W. Charles Bailey, Jr. (#23580)
Simms Showers LLP
Suite 702
Twenty South Charles Street
Baltimore, Maryland 21201
Telephone: (410) 783-5795
Facsimile: (410) 510-1789

John T. Ward (# 1507)           Patrick M. Brogan
WARD KERSHAW, P.A.              Mark E. Newcomb
113 West Monument Street        Davey & Brogan P.C.
Baltimore, Maryland 21201       101 Granby Street, Suite 300
Telephone: (410) 685-6700       Norfolk, Virginia 23514-3188
Facsimile: (410) 685-6704       Telephone: (757) 622-0100
                                Facsimile: (757) 622-4924

Buchanan Counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 30, 2003 a copy of the foregoing was served via electronic mail on counsel of record for each party.

/s/   J. Stephen Simms