**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY | * | |
| Plaintiff | * | CONSOLIDATED CASES UNDER |
| v. | * | CIVIL ACTION NO. |
| M/V A.V. KASTNER, her engines, boilers, tackle, etc., in rem, et al., | * | WMN-02-CV-00662 |
| | * | |
| Defendants | * | |

* * * * * * *

**BRIEF IN SUPPORT OF NDC'S MOTION IN LIMINE**
**TO EXCLUDE UNDISCLOSED EXPERT OPINIONS**

Plaintiff Norfolk Dredging Company ("NDC"), by counsel, as and for its brief in support of its Motion *in Limine* to exclude from the record any evidence, testimony or mention of certain undisclosed expert opinions, states the following:

## BACKGROUND

A scheduling order was approved in this case on July 16, 2002 (adopting David Skeen's proposed discovery plan in his letter of July 12, 2002) wherein it was set forth that all expert opinions bearing upon allegations for which the litigant had the burden of proof were to be disclosed to opposing parties no later than March 28, 2003. According to that same order, rebuttal expert disclosures were to be made no later than April 30, 2003. By letter of Robert B. Hopkins to the court dated August 29, 2003, the parties agreed to extend the deadline for making Rule 26 Expert Disclosures until September 9, 2003 and the deadline for Expert Rebuttal Disclosures was extended to October 10, 2003.

In the draft Final Pre-trial Order, parties in this litigation have asserted allegations of negligence against Norfolk Dredging Company without disclosing the necessary expert opinion to substantiate the allegation. Norfolk Dredging Company requests that this Court enter an order denying the admissibility of any opinion testimony in support of allegations against Norfolk Dredging Company that were not disclosed in accordance with the aforementioned scheduling orders.

Norfolk Dredging Company identifies the following allegations of negligence for which no expert opinion was timely made, but reserves the right to identify additional allegations of negligence prior to trial, as they become known:

**1. KASTNER alleges that Tug SWIFT contributed to the cause of the accident because the deckhand on SWIFT shut down the engines momentarily, one at a time, to check the oil level in the minutes prior to collision.**

In the Statement of Facts for the KASTNER Interests set forth in the Final Pre-Trial Order, the KASTNER Interests assert the following: "In the minutes leading up to the collision, Captain Bryant permitted his oiler/deckhand, Troy Link, to shut down the engines of the SWIFT, one at a time for routine inspection but did not advise Captain Welch, thus contributing a tendency of the flotilla to veer to port." Pre-Trial Order at P. 31. KASTNER Interests also assert that Captain Bryant "failed to advise Captain Welch that the SWIFT's engines were being cycled and that the heading of the flotilla might be affected." Pre-Trial Order at P. 34.

KASTNER Interests further allege in Paragraph 7 of its Legal Theories section of the Pre-Trial Order the following: "Negligent failure of Captain Bryant, Dredge Captain McLamb and the Norfolk Dredging Company vessels . . . to have the engines of the SWIFT ready at all

times to maneuver, to notify the BUCHANAN 14 of the fact that the engines on the SWIFT were being cycled . . ." Pre-Trial Order at 64.

**2. Buchanan alleges that Tug SWIFT contributed to the cause of the collision because it shut down each main engine for a period of about three minutes, causing the entire dredge tow to move to the left within the channel.**

In the Statement of Facts for Buchanan Marine set forth in the Final Pre-Trial Order, Buchanan asserts: ". . . with Captain Bryant's permission, Troy Link shut the SWIFT's engines down, each for about three minutes. The result of this, was to lessen the power the SWIFT had to pull its tow, and, to move the entire dredge tow to the left within the channel." Pre-Trial Order at P. 18. In the Legal Theories section of the Pre-Trial Order, Buchanan asserts the following: "Captain Bo Bryant's negligence caused and or contributed to the collision between the KASTNER and the Tug SWIFT. . . . Captain Bo Bryant was negligent in at least one of the following ways: . . .failed to properly inform Buchanan 14 that he was shutting down his engines shortly before the port to port passing with the KASTNER . . ." Pre-Trial Order at P. 59.

## ARGUMENT

On January 15, 2003 Troy Link testified in his deposition that upon commencing his deckhand watch on Tug SWIFT at approximately 6:30 a.m. on February 25, 2002 he switched generators and checked the oil level in each of the two main engines. Link testified that each main engine was offline for approximately three minutes during the oil checking procedure. (Link Dep. at. pp. 180-81.) It is apparent from the allegations contained in the Pre-Trial Order that the KASTNER Interests and Buchanan are asserting that the loss of each main engine aboard the Tug SWIFT caused the entire tow to veer to port without the knowledge of Tug BUCHANAN 14's master, thereby causing the collision. Absent the allegation that the engine

procedure caused the tow to veer to port, the procedure could not have contributed to the collision.

Buchanan and the KASTNER Interests were required by the Federal Rules of Civil Procedure 26 and the various local rules and the scheduling order of this case to produce expert opinions on issues for which they bear the burden of proof no later than September 9, 2003.

KASTNER Interests failed to disclose any opinion in either its expert disclosure or its rebuttal expert disclosure that Tug SWIFT's engine maintenance procedure cause the tow to veer to port. KASTNER Interests disclosed the report of navigation expert Russell McVay on or before September 9, 2003, a report that failed to even mention the engine maintenance procedure even though Captain McVay listed in his report that he reviewed the deposition of Troy Link. KASTNER Interests also disclosed the expert report of Michael K. Lawson wherein he set forth a detailed analysis regarding how and why the collision occurred. Nowhere in this report does Captain Lawson assert that the engine maintenance procedure caused the tow to veer to port.

Both Captain McVay and Captain Lawson also produced rebuttal expert reports on or before October 10, 2003. Once again, neither rebuttal expert report nor depositions of KASTNER experts mentions the engine maintenance procedure as a cause of the collision or that it caused navigation difficulty for Captain Welch.

Buchanan produced the expert report of George Reid at or before this deadline which contained allegations of negligence on the various parties. At no point in Mr. Reid's report did he mention the engine maintenance procedure or that such a procedure would cause the entire tow to veer to port in the path of the oncoming KASTNER. Mr. Reid did submit a rebuttal report on or before October 10, 2003 wherein he suggests that performing the engine

maintenance procedure at the moments prior to collision was a "gross error", not because the procedure would cause the tow to veer to port into the oncoming vessel, but because the deckhand should have been on deck rather than in the engine room. Although this allegation of negligence was improperly contained within an expert rebuttal report and therefore was not timely disclosed, it in no way puts Norfolk Dredging Company on notice that Buchanan intended to assert that the engine maintenance procedure would cause the tow to veer to port and thereby cause the collision.

Buchanan also submitted the report of William Daley, III and George M. Saunders,Jr. during the rebuttal period. The report, that provided opinions regarding how the collision occurred, contained a synopsis of information reviewed by the rebuttal experts, including a detailed account of Troy Link's activity in the engine room the morning of February 25, 2002. Although this report identifies various bases for negligence on the part of KASTNER Interests and Norfolk Dredging Company, the report does not mention even the possibility that the engine maintenance procedure caused the tow to veer to port into the path of the oncoming vessel.

Buchanan failed to disclose any opinion in either its expert disclosure or its rebuttal expert disclosure that Tug SWIFT's engine maintenance procedure caused the tow to veer to port. Even at his deposition, Buchanan's expert Daley acknowledged that nowhere in his report or his notebook was the opinion recorded or discussed. Having failed to disclose this opinion, Norfolk Dredging was denied the opportunity to prepare a rebuttal expert report to counter this erroneous presumption. Therefore, Buchanan should be precluded from introducing any evidence that the engine maintenance procedure contributed to the cause of this collision. Norfolk Dredging should not now be required to defend against an allegation that the engine maintenance procedure was a contributory cause of the collision considering all information used

to formulate this opinion was available over one year ago, and that creation of this allegation at the eve of trial denies Norfolk the opportunity to properly defend the claim.

**3. Buchanan Marine alleges that Norfolk was negligent because it did not have proper procedures in place to detect that Troy Link smoked marijuana while working on its tug boat and that Troy Link was negligent for allowing marijuana to affect his judgment which contributed to his turning off the engines on the SWIFT.**

Buchanan Marine sets forth a legal theory that surmises that Troy Link smoked marijuana while working on Tug SWIFT, that this marijuana use caused poor judgment on his part in shutting down the main engines, and that Norfolk Dredging should have a procedure in place to detect Link's use of marijuana on the vessel. Pre-Trial Order at pp. 59-60. Buchanan Marine did not disclose any opinions in its expert disclosures or its rebuttal expert disclosures in any way addressing Troy Link's marijuana usage or Norfolk's system for drug screening its employees. Buchanan Marine cannot assert that Troy Link's marijuana use prior to the voyage would effect his judgment three days after departure without expert testimony to establish such a fact. Buchanan Marine should not now be permitted to assert allegations of negligence against Norfolk or Troy Link based on the affects of marijuana usage without an expert's testimony to support the allegation.

These circumstances are further aggravated by the misstatement of the facts that accompanies the legal theory. At Link's deposition on January 15, 2003, he stated that he did not use drugs during the voyage and did not know of anyone who did use drugs during the voyage. (Link Dep. at pp. 187-88). He further testified that he used marijuana within 24 hours of reporting for work at Norfolk Dredging on February 23, 2002. (Link Dep. at pp. 205-06) There was absolutely no testimony that Link or anyone else aboard Tug SWIFT used marijuana while aboard the vessel, contrary to the statement in the Buchanan Legal Theories. Furthermore,

Buchanan alleges that Link's marijuana use affected his judgment and contributed to his turning off the engines on the Tug SWIFT, despite having previously alleged in the Statement of Facts that Link obtained Captain Bryant's permission before he performed the engine maintenance procedure. This Court should exclude any testimony that Link's admitted prior use of marijuana before the voyage contributed in any way to this collision due to a failure to provide any expert opinion, and likewise any opinion that Norfolk did not have adequate drug screening procedures should also be excluded for lack of expert testimony.

**4. KASTNER Interests allege that Norfolk was negligent for failing to equip the Tug SWIFT with a GPS.**

KASTNER Interests assert in their Legal Theories that Norfolk was negligent for failing to place a GPS navigational device on Tug SWIFT. Tug Swift was equipped with a LORAN C navigation set, but not a GPS navigation device. The expert report of Russell McVay opines that the navigation equipment aboard the BUCHANAN 14 was "below industry standards" but he makes no mention of the equipment aboard Tug SWIFT. Captain McVay's rebuttal expert report also fails to offer an opinion that it was negligent for Norfolk to equip Tug SWIFT with LORAN C instead of GPS.

Probably more insightful, however, is the comment by KASTNER's own expert, Michael Lawson, in his rebuttal expert report wherein he commented: "Once again I would like to point out that the use of a DGPS or a GPS is optional and left to the discretion of the navigator." (Lawson Rebuttal Report p. 9.) This statement alone precludes KASTNER Interests from asserting that it is negligent to use a LORAN C instead of a GPS system to navigate a tug on inland waters. KASTNER's failure to disclose any expert opinion that failure to equip a tug with GPS is negligence precludes the introduction of any opinion evidence on this point.

**CONCLUSION**

For the reasons stated above, justice requires that this Court rule that any evidence, testimony and/or mention of these undisclosed expert opinions be inadmissible at trial.

NORFOLK DREDGING COMPANY

/s/
Of Counsel

David W. Skeen, Esquire
Wright, Constable & Skeen, LLP
One Charles Center, 16th Floor
100 N. Charles Street
Baltimore, MD 21201-3812
(410) 659-1305

David H. Sump, VSB # 28897
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
Norfolk, VA 23510
(757) 623-3000
Counsel for Norfolk Dredging Company

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2004, a true and correct copy of the foregoing brief was mailed to:

| | |
|---|---|
| Paul D. Bekman, Esquire<br>Israelson, Salsbury, Clements & Bekman, LLC<br>300 W. Pratt Street, Suite 450<br>Baltimore MD 21201<br><br>Counsel for Troy A. Link and Dennis Wallace | Ralph Rabinowitz, Esquire<br>Rabinowitz, Swartz, Taliaferro,<br>Lewis, Swartz & Goodove, P.C.<br>Town Point Center<br>150 Boush Street<br>Norfolk, VA 23510<br><br>Counsel for Troy A. Link and Dennis Wallace |
| Robert M. Schwartzman, Esquire<br>Lord & Whip, P.A.<br>Charles Center South<br>36 South Charles Street, 10th Floor<br>Baltimore, MD 21201<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell | C. Arthur Rutter, III, Esquire<br>Deborah C. Waters, Esquire<br>Rutter, Walsh, Mills & Rutter, LLP<br>415 St. Paul's Boulevard<br>Norfolk, VA 23510<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell |
| Thomas B. Shuttleworth, Esquire<br>Shuttleworth, Ruloff, Giordano & Swain, P.C.<br>4525 South Boulevard, Suite 300<br>Virginia Beach, VA 23452<br><br>Counsel for the Estate of Justin Maurice Bryant | Peter Ayers Wimbrow, III, Esquire<br>4100 Coast Highway<br>Ocean City, MD 21842<br><br>Counsel for the Estate of Justin Maurice Bryant |
| J. Stephen Simms, Esquire<br>Simms Showers LLP<br>20 South Charles Street, Suite 702<br>Baltimore, MD 21201<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust | Patrick M. Brogan, Esquire<br>Davey & Brogan, P.C.<br>101 Granby Street, Suite 300<br>Norfolk, VA 23510<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust |
| James W. Bartlett, III, Esquire<br>Semmes, Bowen & Semmes<br>250 W. Pratt Street, 16th Floor<br>Baltimore, MD 21202<br><br>Counsel for Timothy M. Cober | Robert B. Hopkins, Esquire<br>Ober, Kaler, Grimes & Shriver, P.C.<br>120 East Baltimore Street<br>Baltimore, MD 21202<br><br>Counsel for Gypsum Transportation |

/s/
David W. Skeen