IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **NORFOLK DREDGING CO.,** | * | |
| Plaintiff, | * | |
| v. | * | Consolidated Cases Under<br>Civil Action No. WMN-02-CV-00662 |
| **M/V A.V. KASTNER, her engines,**<br>**boilers, tackle, etc.,** *in rem, et al.,* | * | |
| | * | |
| Defendants. | | |
| *        *        *        *        * | *        *        *        * | |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
WITH REGARD TO TESTIMONY OF WILLIAM H. DALEY, III
AND GEORGE M. SAUNDERS, JR.**

Gypsum Transportation, Limited; Beltship Management Limited, the M/V A.V. KASTNER, and Captain Timothy M. Cober (collectively "the KASTNER interests"), by their undersigned attorneys, submit this Memorandum in Support of their Motion *in Limine* to bar the testimony at trial of William H. Daley, III ("Daley") and George M. Saunders, Jr. ("Saunders").

I.    **BACKGROUND**

On February 25, 2002, a collision occurred in the narrow channel of the Elk River in the upper Chesapeake Bay between the M/V A.V. KASTNER and a tug-tow flotilla led by the Tug BUCHANAN 14, which was and is operated and owned by Buchanan Marine, L.P. and The Buchanan Trust (collectively "Buchanan Marine").

Approximately 12 hours after the collision, Chesapeake Engineering & Design, Inc. ("CED") was retained by the attorneys representing Buchanan Marine. (Transcript of deposition of William H. Daley, III taken on December 18, 2003, pertinent portions of which are attached hereto as Exhibit A, hereinafter "Daley Tr.", at 7). By the next day, February 26, 2002, Daley

and Saunders of CED were at the collision site (Transcript of Deposition of George M. Saunders, Jr. taken on January 15, 2004, pertinent portions of which are attached as Exhibit B, hereinafter "Saunders Tr.", at 11).  Saunders was at the collision site every day thereafter, from February 27 through March 4, 2002, with the exception of Sunday, March 3.  (Saunders Tr. At 16).  Saunders observed the scene of the collision from a boat each day, took photographs, spoke to Coast Guard officials on site, and took notes.  (Saunders Tr. at 11-12, 14-18).

Also on February 27, 2002, Daley of CED attended the inspection of the damage to the M/V A.V. KASTNER (Daley Tr. at 8).  Daley would go on to attend the damage inspections of every vessel involved in the collision.  (Daley Tr. at 28-29).

Daley and Saunders subsequently performed various calculations and engaged in analysis relating to the collision.  In his deposition, Daley described what CED considered its task to be:

> Q   And what were you asked to cover or opine on in the report?
>
> A   **Actually, we weren't given any restrictions as to what they wanted a report on.  We indicated – we at Chesapeake indicated that we could write a report that would discuss both the recovery operations that were observed by Mr. Saunders, the inspections that were observed by myself, and an analysis of the discovery data relating to the transit and the actual collision.**
>
> Q   And how did you and Mr. Saunders go about preparing this report?
>
> A   **The division of labor was roughly along the lines – I did not attend any evolution at the scene of the accident, recovery and things of that nature; Mr. Saunders did.  Photographs at the scene and analysis of the markings on the vessels that I took, the inspections of the various vessels, and correlating those with heights of the various vessels to try to figure out, which we and other parties have subsequently figured out, where the vessels collided amongst themselves, not geographically, but**

2

> **amongst themselves where they collided, that analysis was done by Mr. Saunders.**
>
> **Also, Mr. Saunders analyzed the debris field in terms of the Army Corps of Engineers' data and putting that data in a coordinate system that would be recognizable on a chart, for instance. I then did the inspections and analysis of what equipment was on the vessels, and then I also analyzed the navigational aspects of the case.**

(Daley Tr. at 17-18).

On December 12, 19 and 23, 2002, counsel for all of the parties to this case (including counsel for Buchanan Marine) took part in conference calls to formulate a schedule that they could agree to propose to the Court to control future discovery and the trial. It was agreed among counsel for the parties that expert witness disclosures would take place in two phases, as is customary. Due to the unique limitation of liability posture of this case and the fact that the vessel owner parties were both claimants and parties against whom claims had been made, rather than referring to the parties that would be required to disclose their expert witnesses first as the "plaintiffs," counsel agreed that the parties who bore the burden of proof on an issue, i.e., as a claimant or a limitation plaintiff, would be required to disclose their expert witnesses in the first phase. In the second phase, the parties against whom claims had been asserted would designate rebuttal witnesses.

The parties' agreements on proposed dates to govern the future litigation were memorialized in a letter dated December 31, 2002 from counsel for Norfolk Dredging to the Court, which is attached hereto as Exhibit C. This letter resulted in the Court on January 14, 2003 issuing an Amended Scheduling Order, which is attached hereto as Exhibit D. Pursuant to this schedule, the initial expert disclosure date was June 30, 2003, and the expert rebuttal

disclosure date was July 30, 2003.  These dates were later revised by agreement of counsel, with approval by the Court, to be September 9, 2003 and October 17, 2003, respectively.

Daley and Saunders, meanwhile, were first asked in May of 2003 to generate a report in the mid-June time frame.  (Daley Tr. at 16-17).  They had much earlier completed many of their calculations and much of their analysis, as is reflected in notes dated April 8, 2002, which were contained in Exhibit 7 to the Daley deposition transcript and are attached hereto as Exhibit E.  The "report due" date was "successively moved," for reasons Mr. Daley "wasn't privy to," until mid-September, when CED was notified of a report date of mid-October.  (Daley Tr. at 17).

A CED report authored by Daley and Saunders and the identification of Daley and Saunders as "rebuttal experts" for Buchanan Marine were disclosed to other counsel on October 17, 2003 – the rebuttal expert designation deadline.

## II.    DISCUSSION

### A.    Counsel for Buchanan Marine improperly "sandbagged" the other parties in this case.

Daley and Saunders are not rebuttal experts.  Instead, their analysis and opinions go to issues as to which Buchanan Marine, both as a limitation of liability plaintiff and as a claimant for damages, has the burden of proof.

The naming by counsel for Buchanan Marine of Daley and Saunders as rebuttal experts – and not as primary experts in the first round of expert designations – was a transparent attempt to deprive the other parties, including the KASTNER interests, of the opportunity to engage the services of experts to testify at trial to rebut wholly unprecedented opinions from Daley and Saunders regarding key issues as to which Buchanan Marine has the burden of proof.  For prosecution of Buchanan Marine's claims against Norfolk Dredging and the KASTNER

interests, the issues addressed in the CED report include the actions of Norfolk Dredging employees leading up to the collision, the operation of the M/V A.V. KASTNER prior to the collision, and the location of the collision within the narrow channel of the Elk River. For limitation of liability purposes, the issues include the configuration of the Tug BUCHANAN 14 and her tow (including the Tug SWIFT and her tow at all relevant times up to the collision) and the manning of and capabilities of the Tug BUCHANAN 14.

Notably, the issues as to which Buchanan Marine does <u>not</u> have the burden of proof, i.e., whether the Tug BUCHANAN 14 was negligently navigated and whether Buchanan Marine was negligent in placing the Tug BUCHANAN 14 under the command of a captain with no experience navigating a tug with following tow (much less tows) in the Elk River approach to the C&D Canal – issues that were addressed by other parties' experts in their initial reports – are <u>not</u> addressed in the CED report.

### B. Precluding Daley and Saunders from testifying at trial is the appropriate remedy.

The actions of counsel for Buchanan Marine in not naming Daley and Saunders as experts until the second round of expert disclosures – when counsel for the KASTNER interests and for the other parties would have no opportunity to designate truly rebuttal expert witnesses to testify at trial – clearly violated both the spirit and letter of the various agreements of counsel and orders of this Court regarding the timing and nature of discovery disclosures. The prejudice to the KASTNER interests is obvious. The appropriate sanction for this conduct is the preclusion of the testimony of Daley and Saunders at trial.

The disclosure of expert testimony is controlled by Rule 26(a)(2) of the Federal Rules of Civil Procedure, which states that "[these] disclosures shall be made at the times and in the

sequence directed by the Court." Failure to comply with this provision justifies precluding the evidence at trial. Rule 37(c)(1) of the Federal Rules of Civil Procedure states in pertinent part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on motion any witness or information not so disclosed.

"The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material . . . .'" *Yeti by Molly Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001). "Rule 37(c)(1)'s preclusionary sanction is 'automatic' absent a determination of either 'substantial justification' or 'harmlessness.'" *American Stock Exchange, LLC v. Mopex, Inc.,* 215 F.R.D. 87, 93 (S.D.N.Y. 2002). "Implicit in the Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti,* 259 F.3d at 1107.

The United States Court of Appeals for the Fourth Circuit, in a case addressing expert testimony, recently has enumerated five factors that are to be considered for precluding evidence under Rule 37(c)(1):

> We therefore hold that in exercising its broad discretion to determine whether a non-disclosure of evidence is substantially justified or harmless for the purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure that surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003); see also, *Thompson v. HUD,* 219 F.R.D. 93, 103-04 (D.Md. 2003)(Judge Grimm applying the *Southern States* factors to failure to produce 80,000 e-mail records).

An application of these factors to the circumstances surrounding the disclosure of Daley and Saunders as rebuttal expert witnesses – and not primary expert witnesses – justifies precluding their testimony from the trial of this case.  First, the KASTNER interests, against whom the evidence would be offered, were surprised by the "rebuttal" report of Daley and Saunders and their deposition testimonies, because their opinions relate to issues as to which Buchanan Marine has the burden of proof and to which the KASTNER interests, in opposing the claims of Buchanan Marine, would want to present rebuttal evidence.  Second, the KASTNER interests cannot cure the surprise, as only two rounds of expert disclosures were permitted by the agreements of counsel and by the Amended Scheduling Order.  Third, the admission of this evidence admittedly would not "disrupt the trial," but allowing the evidence certainly would not be *harmless,* the issue this factor is meant to influence, as the KASTNER interests are left without the opportunity to rebut this evidence.  See, *Southern States,* 318 F.3d at 597.  Fourth, the evidence Buchanan Marine seeks to introduce through Daley and Saunders is important, as it affects Buchanan Marine's claims for recovery of damages against the KASTNER interests and for limitation of liability, which has the potential of affecting the KASTNER interests' exposure to damages.  Fifth, the analysis performed by Daley and Saunders, as described by Daley above, reveals that counsel for Buchanan Marine can have no explanation for failing to disclose Daley and Saunders and their opinions in the first round of the expert witness disclosures.

### III.   CONCLUSION

For the reasons and based upon the facts and authorities cited above, this Court should enter an Order excluding the testimony of Daley and Saunders at trial.

        /S/
M. Hamilton Whitman, Jr. (No. 00373)
Robert B. Hopkins (No. 06017)
Charles A. Diorio (No. 26369)
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 East Baltimore Street, Suite 800
Baltimore, Maryland 21202-1643
(410) 685-1120

Terry L. Stoltz
Nicoletti Hornig Campise Sweeney & Paige
Wall Street Plaza
88 Pine Street
New York, New York  10005-1801
(212) 220-3830


Attorneys for Gypsum Transportation, Ltd. and Beltship Management Limited



        /S/
James W. Bartlett, III (No. 00017)
Alexander M. Giles (No. 25474)
Semmes, Bowen & Semmes, P.C.
250 West Pratt Street, 16th Floor
Baltimore, Maryland 21201-2423
(410) 576-4833

Attorneys for Captain Timothy M. Cober


B0403182