IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY | * | |
| Plaintiff | * | CONSOLIDATED CASES UNDER |
| v. | * | CIVIL ACTION NO. |
| M/V A.V. KASTNER, her engines, boilers, tackle, etc., in rem, et al., | * | WMN-02-CV-00662 |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

**BRIEF IN SUPPORT OF NDC'S MOTION IN LIMINE
TO EXCLUDE UNDISCLOSED EXPERT OPINIONS OR
EVIDENCE ON ALLEGED UNSEAWORTHINESS OF BERTH DOORS**

Plaintiff Norfolk Dredging Company ("NDC"), by counsel, as and for its brief in support of its Motion *in Limine* to exclude from the record any evidence, testimony or mention of certain additional undisclosed expert opinions, states the following:

**BACKGROUND**

The Pre-Trial Order contains additional allegations of negligence for which no testimony of causation or standard of care has been identified. Specifically, the Pre-Trial Order alleges that certain crewmembers were unable to exit their compartment after the collision due to "frozen doors" in the berthing compartment, presumably resulting in the deaths of two seamen. These alleged causative factors are contrary to the evidence in this case and are not the subject of any disclosed expert opinion contained in an expert report and therefore are not admissible in this case.

149647 v. (01862.00056)

I.  **Frozen Compartment Doors**

The Pre-Trial Order contains allegations that the berthing compartment doors on the Tug SWIFT were "frozen" or otherwise inoperable, presumably contributing in some way to the injuries or deaths of the crewmembers aboard Tug SWIFT.  For instance, on page 45 of the Pre-Trial Order in the Statement of Facts for Slaton & The Estates the following is stated:

> The port and starboard doors which led from the bunkroom to the outside of the vessel were dogged shut in a way that no one could open them from inside the bunkroom.  The only exit was on the portside of the vessel leading from the bunkroom into a small hallway which went past the showers and into the engine room.

The Statement of Facts continues by stating at page 48:

> The failure of Norfolk Dredging Company's owners and crewmembers to carry out their duties and responsibilities constitutes significant breaches of the custom and practice of the maritime industry.  These failures increased the risk of drowning and injury to the SWIFT's crewmembers.

KASTNER Interests also assert that Norfolk Dredging is negligent with regard to the berthing area doors by asserting the following beginning at page 62 of the Pre-Trial Order:

> Also, by way of example, and as set forth in the KASTNER interests' recitation of facts in Section I, above, Captain Bryant and Norfolk Dredging Company were guilty of the following negligent acts and omissions, among others which contributed to make the SWIFT unseaworthy *and to cause the collision*:
>
>         \*        \*        \*
>
> 7. Negligent failure of Captain Bryant, Captain McLamb and the Norfolk Dredging Company vessels to: . . .keep berthing area doors available and usable in time of emergency . . .

(Emphasis Added)

2

Testimony that the conditions of these doors made the SWIFT unseaworthy, or otherwise contributed to the injuries or deaths of the crewmembers should be inadmissible in this case because not only is there no factual predicate for the allegations, but no party in this case has disclosed any expert opinion to support the contention that the condition of the watertight doors aboard Tug SWIFT were not in conformance with any law, regulation or standard practice, or that the condition of these doors in any way contributed to the injuries or deaths of the crewmembers.

Three witnesses testified in depositions regarding the doors in the berthing area where dead crewmembers Ronald Bonniville and Clarence McConnell were found after the Tug SWIFT was raised. Only one surviving witness, Roy Young, was actually in the compartment prior to the collision. Roy Young was shaving in the berthing compartment immediately prior to the collision and contained in his testimony describing how he escaped from the Tug SWIFT during the collision, he testified as follows:

> Q. Do you know what Ralo [Ronald Bonniville] and Clarence [McConnell] did after they left the galley?
>
> A. Yes, ma'am. They went to bed.
>
> Q. Where?
>
> A. In the quarter room there, forward deck on the bottom.
>
> Q. And that's the one that is forward of the engine room?
>
> A. That's forward of the engine room, yes ma'am.
>
> Q. And was that the last you saw of them?
>
> A. Yes, ma'am. When I went in to shave, that was in the same room they were in.
>
> Q. That's right. There's a little sink in there?

A. Yes, ma'am.

Q. Is that where you went, that little sink?

A. Yes, ma'am. That's where I went. I talked to them and told them, we'll be there in a little while. That's the last I seen of them.

Q. And had they climbed into the bunks when you were in there?

A. They were already both in the bunks.

Q. Where were they?

A. Ralo was on the top bunk, Clarence was on the bottom bunk.

Q. So if you were facing that little sink, they would have been in the bunks to your immediate left?

A. Yes, ma'am.

Q. Do you remember the doors of that berthing room? Can you tell me about the doors? The ones to the outside, not the one to the engine room. But what were they like, do you recall?

A. I think I recall they were steel doors. That's about all I can recall of them.

Q. Were they closed tight when you were in there?

A. I went out the one closest to the sink and shut it.

Q. That would have been on the port side?

A. On the port side.

(Young Dep. at pp. 149-51.)

It is clear from the foregoing testimony that the port side watertight door in the crew berthing compartment was not only not frozen, but was used by Roy Young literally minutes before the collision.

Choosing to ignore this direct testimony, various parties prefer to focus on the testimony of Troy Link and Dennis Wallace regarding the general condition of the watertight doors in the crew compartment. Troy Link was the deckhand on watch aboard Tug SWIFT at the time of the collision and he berthed in the same compartment with Mr. Bonniville and Mr. McConnell. Mr. Link testified as follows:

> Q. In the crews' quarters, the bunk engine room let's call it –
>
> A. Sure.
>
> Q. There is a door on either side?
>
> A. Yes, ma'am, there is.
>
> Q. To your knowledge, were those doors operable?
>
> A. They were dogged off.
>
> Q. Tell me what you mean by "dogged off."
>
> A. They were shut down tight and dogged off. What I mean, dogged off, you have a lever that comes down to tighten down the door to pull it tight.
>
> Q. Yes sir.
>
> A. And you take a bar and put on it to tighten it further, to keep the cold air and water out.
>
> Q. Could a person then reopen the doors using – without using some kind of bar or something else?
>
> A. You need that bar to get back out.
>
> Q. Was that bar available in the bunk engine room, do you know?
>
> A. I don't recall. I don't know. I never looked for it, so I just don't know.

(Link Dep. at pp. 229-30)

5

Mr. Wallace, the Mate aboard Tug SWIFT, was not in the compartment at all the morning of the collision, but he testified as follows:

> Q. Were you familiar with the crew's bunk room?
>
> A. Yes.
>
> Q. It's my understanding from prior testimony that there was a door to the outside on either side of the crew's bunk room; is that your recollection?
>
> A. Yes, I think there was a door.
>
> Q. A door to each side, or just one?
>
> A. I think there was a door on each side, but it might have been just one.
>
> Q. Do you know whether that door could be opened from inside the bunk room?
>
> A. I grabbed a hold of it. I couldn't open it. I tried when this, you know, just grabbed it, and wasn't man enough to open it.
>
> Q. When did you do that, do you recall?
>
> A. No. It was just sometime I was on there. It was froze shut.
>
> Q. You mean, it was prior to this particular voyage?
>
> A. Well, yes. I had been working on the boat 30, 40 days straight before we had the accident.
>
> Q. Do you know whether anybody at Norfolk Dredging shoreside knew that those – that that door was frozen shut?
>
> A. No, I don't.
>
> Q. Typically, would those doors be operable?
>
> A. Well, I guess they should have – should be.
>
> Q. That's what I meant.

    A.    But they weren't.

(Wallace Dep. at pp. 255-56)

The testimony of these witnesses clearly indicates that watertight doors were present in the berthing compartment on the forward bulkhead on both port and starboard sides. There was also a door on the aft bulkhead of the compartment on the port side in the vicinity of the head which provided the easiest egress from the compartment. This door led to the athwartships passageway amidships in the Tug SWIFT in the vicinity of the upper engine room. Wallace testified that at some time during his duty aboard Tug SWIFT he grabbed the port watertight door and attempted to open it, but was unable to do so. Link testified that usually the watertight door was dogged tight to prevent cold air and water from entering the space, which of course is the primary function of a watertight door. He also stated that if the door was dogged using a "cheater bar", the bar would be necessary to release the door. Of course, neither of these witnesses testified that the watertight doors in the berthing compartment were frozen or dogged tightly on the day of the collision.

Witness Roy Young, however, testified that he used that very door that would be available for an escape from the berthing area, the forward port watertight door, approximately one minute before the collision. These parties neglect to inform the Court of Young's testimony in the Statement of Facts because it would seriously dilute the argument if the Court were aware that he used that very door immediately before collision.

Also missing from the Pre-Trial Order, and any pre-trial disclosure, is an opinion from an expert that McConnell and Bonniville used the door on the aft bulkhead rather than the watertight door or if they attempted to use the watertight door, it caused their death. No party in this case identified any expert opinion that the condition of the SWIFT's berthing compartment

on the morning of the collision was in violation of any applicable federal, state or local law or regulation, or that it is contrary to the custom and practice of the marine industry to use watertight doors in berthing compartments.

KASTNER Interests and Slaton & Estates should not be permitted to present any evidence that the condition of the berthing area aboard Tug SWIFT contributed in any way to the collision or contributed in any way to the deaths of the crew. Not only do these allegations fly in the face of the uncontroverted evidence of an eyewitness in this case, but further the parties failed to identify these allegations as a causative factor in this case during the expert opinion disclosure period, but instead waited until the presentation of the Pre-Trial Order.

## **CONCLUSION**

For the reasons stated above, justice requires that this Court rule that any evidence, testimony and/or mention of the condition of the berthing compartment or any undisclosed expert opinions be inadmissable at trial.

NORFOLK DREDGING COMPANY

By_____/s/_____
         Of Counsel

David W. Skeen, Esquire
Wright, Constable & Skeen, LLP
One Charles Center, 16th Floor
100 N. Charles Street
Baltimore, MD  21201-3812
(410) 659-1305
David H. Sump, VSB # 28897
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
Norfolk, VA  23510
(757) 623-3000
Counsel for Norfolk Dredging Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2004, a true and correct copy of the foregoing brief was electronically and/or mailed via first class mail to:

| | |
|---|---|
| Paul D. Bekman, Esquire<br>Israelson, Salsbury, Clements & Bekman, LLC<br>300 W. Pratt Street, Suite 450<br>Baltimore MD  21201<br><br>Counsel for Troy A. Link and Dennis Wallace | Ralph Rabinowitz, Esquire<br>Rabinowitz, Swartz, Taliaferro,<br> Lewis, Swartz & Goodove, P.C.<br>Town Point Center<br>150 Boush Street<br>Norfolk, VA 23510<br><br>Counsel for Troy A. Link and Dennis Wallace |
| Robert M. Schwartzman, Esquire<br>Lord & Whip, P.A.<br>Charles Center South<br>36 South Charles Street, 10th Floor<br>Baltimore, MD 21201<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell | C. Arthur Rutter, III, Esquire<br>Deborah C. Waters, Esquire<br>Rutter, Walsh, Mills & Rutter, LLP<br>415 St. Paul's Boulevard<br>Norfolk, VA  23510<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell |
| Thomas B. Shuttleworth, Esquire<br>Shuttleworth, Ruloff, Giordano & Swain, P.C.<br>4525 South Boulevard, Suite 300<br>Virginia Beach, VA 23452<br><br>Counsel for the Estate of Justin Maurice Bryant | Peter Ayers Wimbrow, III, Esquire<br>4100 Coast Highway<br>Ocean City, MD  21842<br><br>Counsel for the Estate of Justin Maurice Bryant |
| J. Stephen Simms, Esquire<br>Simms Showers LLP<br>20 South Charles Street, Suite 702<br>Baltimore, MD  21201<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust | Patrick M. Brogan, Esquire<br>Davey & Brogan, P.C.<br>101 Granby Street, Suite 300<br>Norfolk, VA  23510<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust |
| James W. Bartlett, III, Esquire<br>Semmes, Bowen & Semmes<br>250 W. Pratt Street, 16th Floor<br>Baltimore, MD 21202<br><br>Counsel for Timothy M. Cober | Robert B. Hopkins, Esquire<br>Ober, Kaler, Grimes & Shriver, P.C.<br>120 East Baltimore Street<br>Baltimore, MD  21202<br><br>Counsel for Gypsum Transportation |

/s/
David W. Skeen

DWS.NORFOLK.BRIEF.SUPP.MOT.LIMINE