IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

NORFOLK DREDGING COMPANY,        *

                                              *

v.                                      *

M/V A.V. KASTNER, etc., *et al.*,       *        Consolidated cases under
                                              Civil Action No.:  WMN-02-662

                                            *

*    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM IN SUPPORT OF
MOTION *IN LIMINE* FOR THE COURT TO ADD
THE VALUES OF DREDGE JECKYLL ISLAND, DERRICK
BARGE NO. 4, PUSHER BOAT # 1 AND PUSHER BOAT # 10 TO
<u>NORFOLK DREDGING COMPANY'S LIMITATION FUND</u>**

       Gypsum Transportation Limited ("GTL"), Beltship Management Limited, Timothy M.

Cober, Dennis Wallace and Troy Link (collectively referred to as the "Movants") by their

undersigned counsel, hereby submit this Memorandum In Support of their Motion to Add the

Values of Dredge JECKYLL ISLAND, Derrick Barge No. 4, Pusher Boat # 1 and Pusher Boat #

10 to Norfolk Dredging Company's ("NDC") Limitation Fund available to the personal injury

and death claimants.

**I.      BACKGROUND**

       At approximately 0645 hours on February 25, 2002, a collision occurred in the Elk River

in the upper Chesapeake Bay (the "Collision").  GTL is the owner of one of the vessels involved

in the Collision, M/V A.V. KASTNER (the "KASTNER").  Also involved in the Collision were

the Tug BUCHANAN 14, owned by Buchanan Marine and/or Buchanan Trust (collectively,

"Buchanan"), and several vessels owned by Norfolk Dredging Company ("NDC").  The NDC

vessels involved in the Collision were: the Tug SWIFT, Barge RC-811, Dredge JECKYLL ISLAND, Derrick Barge No. 4, Pusher Boat # 1 and Pusher Boat # 10.

NDC filed a Complaint for Exoneration From or Limitation of Liability in the United States District Court for the Eastern District of Virginia on March 5, 2002. With its Complaint, NDC filed an *Ad Interim* Stipulation for Value for the Tug SWIFT and Barge RC-811 in the amount of $10,000.[1] This figure was accepted by the Virginia Court in an Order allowing filing of *Ad Interim* Stipulation for Value dated March 11, 2002 (the "Order").

GTL and Buchanan have also filed limitation actions and all three proceedings have been consolidated before this Court. Four wrongful death claims and three personal injury claims, including claims by Troy Link and Dennis Wallace, have been filed in all of the limitation actions. In NDC's limitation proceeding, Link and Wallace have filed Claims and Answers asserting that NDC's limitation fund should include the values of Dredge JECKYLL ISLAND, Derrick Barge No. 4, Pusher Boat # 1 and Pusher Boat # 2 (see Link and Wallace Answers, ¶ 4 and Claims, ¶ 4).

Movants request that this Court add to NDC's Limitation Fund the values of the Dredge JECKYLL ISLAND, Derrick Barge No. 4, Pusher Boat # 1 and Pusher Boat # 10.

II.    **DISCUSSION**

NDC's Limitation Fund Must Be Increased
As to the Personal Injury and Death Claimants

The Limitation of Liability Act provides that an owner may limit its liability to value of its vessel at the conclusion of the voyage upon which an accident occurred. See 46 U.S.C. App.

---

[1] The evidence at trial will show that actually NDC was paid $15,000 for the wreck of the Tug SWIFT and $550 for the wreck of the Barge RC 811, so the value of the Limitation Fund must be increased to $15,550 in any event. See Pickle v. Char Lee Seafood, Inc., 174 F.3d 444, 449, 1999 AMC 1840, 1844 (4th Cir. 1999) (limitation fund is determined based on the value of the ship at the conclusion of its voyage).

§183(a).

In limitation cases involving tugs and tows, such as this one, a question arises as to whether the owner can satisfy its obligations by surrendering the value of only the vessel actually involved in the collision giving rise to the damage or must the owner surrender the value of all of its vessels in the flotilla. As the law has developed, the answer depends on whether the claim arises out of a contractual situation or a pure tort situation. See Sacramento Nav. Co. v. Salz, 273 U.S. 326, 332 (1927) (owner must surrender the value of all its vessels in the flotilla in a contractual situation); Liverpool, Brazil & River Plate Steam Nav. Co. v. Brooklyn E. Dist. Terminal, 251 U.S. 48 (1919) (owner only had to surrender the value of its tug in a tort situation). In Steuart Investment Co. v. Bauer Dredging Constr. Co., 323 F. Supp. 907 (D. Md. 1971), the court stated:

> In determining whether a "consensual situation" exists or whether the "pure tort situation" exists, courts first look to see whether the breach of duty was incidental to a contract. If a contract exists between the injured party and the party at fault, and at the time of the injury more than one vessel was engaged in the contractual enterprise, all being devoted to a single venture under a common command, then for purposes of the limitation act all these vessels so engaged must be surrendered, regardless whether they were active participants in the direct injury. . . .
>
> The cases relying on the "consensual situation" have involved the performance of a service or duty by the party at fault to or for the injured party. The injured party having entered a contractual relationship with the faulting party either for the transportation of himself or his goods for employment . . . or for a dredging operation. In these cases there was an obligation on the part of a faulting party to the injured party other than a general duty of care.

Steuart, 323 F. Supp. at 911 (internal citations omitted).

All of the Personal Injury and Death Claimants ("PI Claimants") were employees of NDC at the time of the Collision. All of the vessels in the flotilla (except BUCHANAN 14) were owned by NDC and were being transported to a dredging project in Delaware City. All

were under the common command of NDC Dredge Captain Ricky McLamb. Further, all of the NDC vessels in the flotilla were operating in unison. Almost all of the NDC employees were eating and sleeping on the Tug SWIFT. Therefore, the value of all of the NDC vessels in the flotilla at the time of the Collision must be added to its limitation fund. See Standard Dredging Co. v. Kristiansen, 67 F.2d 548, 550-51, 1933 AMC 1621 (2d Cir. 1933)(employer required to surrender value of flotilla for employee's injuries); United States Dredging Corp. v. Krohmer, 264 F.2d 339, 340-41, 1959 AMC 1110 (2d Cir. 1959)(employer required to surrender flotilla in dredging operation accident); In re Drill Barge No.2, 454 F.2d 408, 410-12, 1972 AMC 1008 (5th Cir. 1972)(employer required to surrender value of all vessels engaged in construction project for employees' injuries); The Alvah Boushell Limitation Proceeding, 38 F.2d 980 (4th Cir. 1930); In re Tom Quinn Co., Inc., 806 F.Supp. 945, 948 (M.D. Fla. 1992); In re Waterman S.S. Corp., 794 F. Supp. 601, 604 (E.D. La. 1992).

Once liability for damages is established, the burden of proof is on NDC to establish all of the elements entitling it to the benefits of the Limitation of Liability Act. Graydon Staring, Limitation Practice & Procedure, 53 Tul. L. Rev. 1134, 1174 (1979). In order to do so, NDC must establish that the value of all of its vessels in the flotilla is less than the total claims of the PI Claimants. Unless NDC meets that burden, the Court must deny NDC's petition for limitation of liability.

### III.    CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court add the values of the Dredge JECKYLL ISLAND, Derrick No. 4, Pusher Boat # 1 and Pusher Boat # 10 to NDC's Limitation Fund for the benefit of the PI Claimants.

Respectfully submitted,

4

| | |
|---|---|
| /s/ | /s/ |
| M. Hamilton Whitman, Jr. (No. 00373) | John A. V. Nicoletti |
| Robert B. Hopkins (No. 06017) | Michael J. Carcich |
| Charles A. Diorio (No. 26369) | Terry L. Stoltz |
| OBER, KALER, GRIMES & SHRIVER | NICOLETTI, HORNIG, CAMPISE & SWEENEY |
| A Professional Corporation | Wall Street Plaza |
| 120 E. Baltimore Street | 88 Pine Street |
| Baltimore, Maryland 21202-1643 | New York, New York 10005-1801 |
| (410) 685-1120 | (212) 220-3830 |
| (410) 547-0699 (facsimile) | (212) 220-3780 (facsimile) |
| Attorneys for Gypsum Transportation | |
| Limited and Beltship Management | Attorneys for Gypsum Transportation |
| Limited | Limited |

| | |
|---|---|
| /s/ | /s/ |
| James W. Bartlett, III (No. 00017) | Paul D. Bekman, Esquire |
| Alexander M. Giles (No. 25474) | Salsbury, Clements, Bekman, Marder & |
| Semmes, Bowen & Semmes, P.C. | Adkins, LLC |
| 250 W. Pratt Street, 16th Floor | 300 W. Pratt Street, Suite 450 |
| Baltimore, MD  21201-2423 | Baltimore, Maryland 21201 |
| (410) 539-5040 | |
| | Attorneys for Troy A. Link and Dennis |
| Attorneys for Captain Timothy M. Cober | Wallace |

/s/

Ralph Rabinowitz, Esquire
Rabinowitz, Swartz, Taliaferro, et al.
Town Point Center
150 Boush Street
Norfolk, VA 23510

Attorneys for Troy A. Link and Dennis
Wallace

736492.1