IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| Elk River Collision Proceedings | * | |
| | | Civil Action No. WMN 02-662 |
| Norfolk Dredging Company, et al. | * | (Consolidated Cases) |
| Plaintiffs, | * | |
| v. | * | |
| M/V A.V. KASTNER, et al. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**BUCHANAN'S MOTIONS IN LIMINE**
**AND SUPPORTING MEMORANDUM**

Buchanan pursuant to this Court's January 20th directions, moves in limine for the Court to establish, and exclude, certain testimony and evidence at trial, as follows**:**

**1.     This Court Should Exclude Undisclosed Expert Testimony Relating the Location of the Spud and Anchor to Establish the Collision Location**:[1] KASTNER apparently intends to argue that the location of the spud and anchor on the channel bottom, shows that the collision occurred far on the "green" side of the channel.

Neither KASTNER nor any other party opposing Buchanan, however, has disclosed expert testimony to this effect. The testimony that it has disclosed, instead, is simply that the spud and anchor were found at certain locations. There is no expert testimony from KASTNER to the effect that either the anchor or spud immediately exited the BARGE 811 (or any other of

---

[1] Norfolk Dredge's January 17, 2004 Motion in Limine sets out the history of expert disclosure deadlines in the case.

the equipment or vessels involved in the collision) exactly at the time of the collision, or for that matter at any time after the collision which can be determined with any reasonable certainty..

This Court therefore should exclude all undisclosed expert testimony, relating the location of the spud and anchor, found on the bottom of the Elk River channel, to the collision location.

2.  **This Court Should Exclude Undisclosed Expert Testimony that Any Inexperience of Captain Welch Towing Astern, Or Any Other Supposed Inexperience of the B-14 Crew, Caused the Collision**:  No party has disclosed any expert testimony to the effect that any inexperience of Buchanan's Captain Welch towing astern caused the collision. Neither has any party disclosed any expert testimony to the effect that any other sort of inexperience of any of the Buchanan crew caused the collision.  The parties opposing Buchanan complain of navigational errors by the B-14, but, no party's expert has testified that any lack of experience that Captain Welch may have had towing astern, or any other supposed inexperience of the B-14 crew, contributed to or caused the collision.

This Court accordingly should exclude any attempted undisclosed expert testimony or argument that Captain Welch's alleged inexperience towing astern, or any other sort of B-14 crew inexperience, caused the collision.

3.  **This Court Should Exclude Undisclosed Expert Testimony that Any "Incompetence" of Captain Welch or Any of the Other B-14 Crew Caused the Collision**: Similarly, no party has disclosed any expert testimony to the effect that any "incompetence" of any of the B-14 crew caused the collision, or for that matter, what any supposed "incompetence" was.  This Court accordingly should bar any attempts to introduce expert testimony that some

sort of B-14 crew "incompetence" caused the collision.

    **4.**    **This Court Should Exclude Any Attempted Argument or Evidence of Tow Length Restrictions in the C&D Canal Because the Collision Occurred Outside of the Canal**: The collision occurred on the Elk River, not in the C&D Canal. Evidence or argument on C&D Canal tow length restrictions is irrelevant and this Court should exclude it.

    **5.**    **This Court Should Exclude Undisclosed Expert Testimony That the Length of the Tow or the Tow Configuration Caused the Collision**: No party has disclosed any expert testimony to the effect that the length of the tow (or tows), or the configuration of the tow (or tows), caused the collision. As set out above, the parties opposing Buchanan complain of navigational errors by the B-14. No party's expert has testified to any connection between the length of the tow (or tows), or the configuration of the tow (or tows), and the cause of the collision.

This Court accordingly should exclude any attempted undisclosed expert testimony or argument that the length of the tow (or tows), or the configuration of the tow (or tows) caused the collision.

    **6.**    **This Court Should Exclude Undisclosed Expert Testimony That Some Lack of Voyage Planning Caused the Collision**: Although KASTNER's and several injury plaintiffs' experts have alleged that Norfolk Dredge and Buchanan did not engage in proper voyage planning, no party has disclosed any expert testimony to the effect that any such lack of proper voyage planning caused the collision. This Court accordingly should exclude any attempted undisclosed expert testimony or argument that any lack of proper voyage planning caused the collision.

7. **This Court Should Exclude Undisclosed Expert Testimony That Some Lack of Understanding About Authority for the Tow(s) Caused the Collision**: Although KASTNER's and several injury plaintiffs' experts also have alleged that Norfolk Dredge and Buchanan (and particularly Captain Welch of the B-14) had no clear understanding of who was in charge of the tow(s), none has offered any expert testimony that this supposed lack of understanding of authority caused the collision. This Court accordingly should exclude any attempted undisclosed expert testimony or argument that any supposed lack of understanding of who was in charge of the tow(s), whether by Norfolk Dredge, Buchanan, or any of their employees, caused the collision.

8. **This Court Should Exclude Undisclosed Expert Testimony That Alleged Deficiency of Navigation Equipment Aboard the B-14 Caused the Collision**: KASTNER's and several injury plaintiffs' experts further have claimed that the B-14's navigational equipment somehow fell below industry standards. No expert, however, has offered any opinion that any supposed insufficiency of B-14's navigational equipment caused the collision, and this Court should exclude any attempted undisclosed expert testimony or argument to this effect.

9. **This Court Should Exclude "Prior Acts" Testimony**: KASTNER and potentially other parties apparently intend to try to introduce, as evidence, that Buchanan (and not even the B-14 or Captain Welch) somehow was involved in prior collisions to show that Buchanan, or Captain Welch, or B-14, somehow acted in conformity with those "prior acts" in this collision and the events that led to it.

Neither Federal Rules of Evidence 406 ("Habit, Routine, Practice") nor 404(b) ("Other Crimes, Wrongs or Acts") permit such evidence and this Court should exclude it.

**10.     This Court Should Exclude Statements Supposedly Overheard on the Radio, Declarant Not Identified**: KASTNER and potentially other parties apparently intend to try to introduce, as evidence, a statement that some witnesses, but not others, say that they heard over the radio shortly after the collision, made by an unidentified man with a high pitched voice. The statement was alleged to be, "I fu**** up," or something to that effect.[2]

First, KASTNER appears ready to contend that Buchanan's Captain Welch made the statement. Captain Welch will be at trial, however. He also was available at his deposition and, on direct questioning about the statement, denied making it. Consequently, **if** such testimony - from some other person besides Captain Welch (who has at his deposition denied making the statement) could be admissible, it would have to be through Federal Rule of Evidence 803 ("Hearsay Exceptions; Availability of Declarant Immaterial").[3]

Fundamentally, however, no witness can conclusively identify Captain Welch to this

---

[2]     At his deposition, Captain (Pilot) Cober (transcript at 183) testified as follows:

```
 2      At some point I called the BUCHANAN 14 to
 3  ask him if he needed our lifeboat to be involved, and
 4  he suggested that it would be a good idea.  At some
 5  point I asked BUCHANAN 14 what happened.  And he
 6  responded something to the effect that "I tried to
 7  miss a buoy and I fucked up."

 8     Q    Were those the exact words?

 9     A    I can't -- it's not a quote, it's as I
10  recall it, as close as I can recall.
```

[3]     Buchanan does not believe that the statement could be introduced under Federal Rule of Evidence 803, however, as set out below the Court does not have to reach the question, because the statement's source is unreliable, and it is either irrelevant, confusing or cumulative of other evidence.

supposed statement, or even exactly what the alleged statement was. The closest is Captain Cober, who said that he called the B-14, and that someone from the B-14 made the statement. Captain Welch will testify that he did not make the statement, and a series of witnesses also will testify that they either did not hear it or did not know who made it. Consequently, this Court should exclude the supposed statement because its source is unreliable.

The statement is also irrelevant and therefore inadmissible under Federal Rule of Evidence 402. Even if somehow this Court believed that it was Captain Welch did say that he "fu**** up," that does not mean anything. It could refer to a number of things which had happened that morning. It is not an admission of anything (which, with the declarant available, is not, as an admission, in and of it self admissible). Even if somehow relevant (and admissible), and reliably attributable to Captain Welch, the Court further should exclude the statement under Federal Rule of Evidence 403. Its introduction confuses the issues and its presentation would be cumulative of the other supposed evidence of Captain Welch's fault that opposing parties apparently intend to produce.

**11.** **This Court Should Hold that the Value of the Vessels, For the Purpose of Establishing the Limitation Fund for Each Vessel, Has Been Established**: The Court wrote as follows on January 7, 2004 with the following procedure for establishing the amount of the limitation fund:

> (3) At the conclusion of the first two rounds of proof, the Court will rule as to:
>
> \*   \*   \*
>
> d) for those parties granted limitation, the amount of the limitation fund and supplemental fund, if any . . . .

Professor Schoenbaum in <u>Admiralty and Maritime Claims</u> 341 (3d ed. 2001 & Supp.

2003), quoting Federal Supplemental Rule F for Certain Admiralty and Maritime Claims, states as follows:

> As a condition to filing the complaint for limitation, the shipowner must also:
>
> deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the owner's interest in the vessel and pending freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary * * *
>
> The posting of security must also include six percent yearly interest. If any claimant is concerned that the amount of security is insufficient, he may move for an increase and an appraisal of the value of the plaintiff's interest in the vessel and pending freight. The court must order an appraisal and may order an increase or reduction in the security.

In March and April, 2002, The KASTNER interests, Buchanan, and Norfolk Dredge began their respective shipowners' limitation of liability proceedings by providing the Court with security in the form of ad interim stipulations of the value of the respective vessels of each, pursuant to Supplemental Rule F, which the Court approved.

Buchanan's value stipulation, accepted by the Court for the TUG BUCHANAN 14, for example, was $250,000.[4]

Thereafter, this limitation action proceeded on that security. Now nearly two years into the case, and well beyond the November, 2003 motions deadline, there have been no motions, pursuant to Supplemental Rule F or otherwise, contending that the security that the KASTNER

---

[4] At the Pretrial Conference on January 20, 2004, KASTNER pointed out that the limitation stipulation that Buchanan had filed was for $350,000, not $250,000. This was a typographical error; in fact, in its answer to KASTNER's arrest complaint, Buchanan posted the identical limitation stipulation, with the correct, $250,000 amount; further, the concursus order that this Court entered, accepting the stipulation, and Buchanan's limitation complaint herein, also stated the $250,000 amount. Buchanan will be filing a line with the Clerk to correct the typographical error.

interests, Buchanan, and Norfolk Dredge provided to begin this limitation action, was insufficient.

The outside value of the limitation fund is established, that is, the fund value is at most the sum of the stipulations that the KASTNER interests, Buchanan, and Norfolk Dredge provided to the Court that the Court accepted by Order and that have not been challenged.

Specifically as to Buchanan, then, Buchanan's $250,000 portion of the limitation fund already is established, and there is no further ruling required on that. The same would be true for Norfolk Dredge, and KASTNER, for the specific amounts that they stipulated to.

Considering Supplemental Rule F, as set out above, the Court does not have to engage in the further consideration of evidence, as the proposed trial order section (3)(d) describes. The KASTNER interests', Buchanan's, and Norfolk Dredge's ad valorem stipulations have already established the amount of the limitation fund,[5] and this Court should enter an order confirming that.

This Court therefore should confirm that pursuant to Supplemental Rule F and 46 U.S.C. App. 183 et seq (the Shipowners Limitation of Liability Act), the valuations of the respective vessels involved are those stipulated by each of those respective parties and not challenged pursuant to Supplemental Rule F or otherwise by the Court motions deadline. In particular, the value of the BUCHANAN 14 for the purpose of establishing the limitation fund is $250,000. If the Court does not so confirm and requires non-employee expert testimony of such for which any

---

[5] Concerning any supplemental fund, this would only apply if the proposed fund of the KASTNER, as an ocean-going vessel, was less than $420/gross ton and insufficient to pay personal injury claims. The KASTNER's stipulated fund, however, exceeds any supplemental fund amount. Neither the B-14 nor SWIFT are ocean-going vessels within the definition of the federal Shipowners Limitation of Liability Act.

FRCP 26(a)(2)(B) report might be required, Buchanan requests that the Court permit the further designation of experts for that purpose.

    12.    **This Court Should Exclude Any Testimony of Captain Michael Lawson on the Handling of Tugboats**: Although in his written opinion, Captain Michael Lawson, an expert offered by KASTNER, purported to give expert opinions on the handling of the B-14, at his deposition, Captain Lawson testified as follows (transcript at 16-17):

```
17   Q   Did you ever have a license, a tug
18   operator's license?
19   A   No, no.
20   Q   Do you consider yourself to be an expert
21   with respect to the handling of tugboats?
22   A   No, I do not.
```

This Court accordingly should exclude any testimony by Captain Lawson relating to the handling of tugboats, including the B-14.

Dated: January 23, 2004.

                                                            /s/   J. Stephen Simms
                                                            J. Stephen Simms (#4269)
                                                             W. Charles Bailey, Jr. (#23580)
                                                              Simms Showers LLP
                                                              Suite 702 - Twenty South Charles Street
                                                               Baltimore, Maryland 21201
                                                               Telephone: (410) 783-5795
                                                               Facsimile: (410) 510-1789

| | |
|---|---|
| John T. Ward (# 1507) | Patrick M. Brogan |
| WARD  KERSHAW, P.A. | Mark E. Newcomb |
| 113 West Monument Street | Davey & Brogan P.C. |
| Baltimore, Maryland  21201 | 101 Granby Street, Suite 300 |
| Telephone:  (410) 685-6700 | Norfolk, Virginia  23514-3188 |
| Facsimile: (410) 685-6704 | Telephone: (757) 622-0100 |
| | Facsimile: (757) 622-4924 |

                                                              Buchanan Counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 23, 2004 a copy of the foregoing was served via CM/ECF on counsel of record for each party.


        /s/   J. Stephen Simms