IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| NORFOLK DREDGING COMPANY | * | |
| Plaintiff | * | CONSOLIDATED CASES UNDER |
| v. | * | CIVIL ACTION NO. |
| M/V A.V. KASTNER, her engines, boilers, tackle, etc., in rem, et al., | * | WMN-02-CV-00662 |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

**NDC'S BRIEF IN OPPOSITION TO MOVANTS' MOTION *IN LIMINE*
FOR THE COURT TO INCREASE NDC'S LIMITATION FUND**

Plaintiff Norfolk Dredging Company ("NDC"), by counsel, in opposition to the motion *in limine*, filed by Gypsum Transportation Limited ("GTL"), Beltship Management Limited, Timothy M. Cober, Dennis Wallace and Troy Link (collectively referred to as "Movants"), for this Court to add the values of the dredge JECKYLL ISLAND, Derrick Barge No. 4, Pusher Boat # 1 and Pusher Boat # 10 to NDC's Limitation Fund, states the following:

**BACKGROUND**

In February 2002 NDC contracted with the Tug BUCHANAN 14 to tow a dredge and its attendant vessels and equipment, including the Barge R.C. 811 and the Tug SWIFT, from its yard in Chesapeake, Virginia to Delaware City, Delaware. On February 25, 2002, the BUCHANAN 14 was proceeding with its tow northerly in the channel of the Elk River, Maryland, when it met the southerly bound M/V A.V. KASTNER which came into collision with and sank the Barge R.C. 811 and the Tug SWIFT. As a result, the Barge R.C. 811 and the Tug SWIFT sank and became total losses, four NDC employees died and three other NDC employees were allegedly injured.

149936 v. (01862.00056)

Movants, Dennis Wallace and Troy Link, were crewmembers of the Tug SWIFT. At the time of the occurrence, Troy Link was on duty in the engine room and Dennis Wallace had just come off duty as a mate on the Tug SWIFT. Both were under the command of Bo Bryant, the Captain of the Tug SWIFT. The Tug SWIFT at the time of the occurrence was tied up to the Dredge JECKYLL ISLAND, but had her engines running, rudder straight ahead, and with her Master, Bo Bryant, in the wheelhouse. The only activity NDC employees, Link and Wallace were engaged in at the time of the occurrence was assisting in the operation of Tug SWIFT. The Dredging Contract in Delaware City had not yet begun. Neither the Dredge JECKYLL ISLAND nor the derrick barge or attendant pushboats was engaged in dredging at the time of the occurrence. GTL and vessel interests had no contractual relationship with NDC at any time. The only undertaking at the time of the occurrence was the towage of equipment up the Chesapeake Bay. In Command of the tugs and tow was Captain Welch of Buchanan Towing, not Rick McLamb.

On, March 5, 2002, counsel for NDC filed a limitation complaint in the United States District Court for the Eastern District of Virginia, Norfolk Division, styled *In the Matter of the Complaint of NORFOLK DREDGING COMPANY, as Owner of the TUG SWIFT and Barge RC-811 for exoneration from or Limitation of Liability, Civil Action No. 2:02cv146*. With its Complaint, NDC filed an *Ad Interim* Stipulation for Value for the Tug SWIFT and Barge RC-811.[1] On January 23, 2004, Movants filed a Motion *in Limine* for this Court to add the values of the dredge JECKYLL ISLAND, Derrick Barge No. 4, Pusher Boat # 1 and Pusher Boat # 10 to NDC's Limitation Fund.

## DISCUSSION

The Limitation of Liability Act, 46 U.S.C. §§ 181-189 provides, in pertinent part:

> The liability of the owner of any vessel … for any loss, damage, or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture done, occasioned or incurred, without the privity or knowledge of such owner or owners, shall not … exceed the amount or value of <u>the interest of such owner in such vessel</u>, and her freight then pending.

(emphasis added) 46 U.S.C. §183(a). The issue raised by Movants' Motion *in Limine* is whether NDC, in seeking to limit its liability to "the interest of such owner in such vessel", must add the values of the Dredge JECKYLL ISLAND, Derrick Barge No. 4, Pusher Boat # 1 and Pusher Boat # 10 to its Limitation Fund. For the reasons stated herein, NDC requests this Court to deny Movants' Motion *in Limine* and to find that NDC is not obligated to transfer or post security for these additional vessels.

**I.   THIS COURT SHOULD DENY MOVANTS' MOTION BECAUSE IT IS UNTIMELY AND VESSEL INTERESTS LACK STANDING**

All substantive Motions were to be filed November 14, 2003. Only one such Motion is filed. Movants' Motion cannot be reasonably considered to be a Motion *in Limine* and therefore is untimely. There was ample time (nearly two years) for this Motion to be filed. Movants instead chose to wait until January 23, 2004, 11 days before trial, to file their Motion.

Such late filing is prejudicial to NDC. Federal Supplemental Rule F(7) for Certain Admiralty and Maritime Claims provides that once such a motion has been filed, "the court shall cause due appraisement to be made of the vessel and pending freight; and if the court finds that the deposit or security is either insufficient or excessive it shall order its increase or reduction." *Supplemental Rule F(7)*. If the Court were to grant the Motion, the Court would have no affidavits or evidence regarding the value of the Dredge JECKYLL ISLAND, Derrick Barge #4, Pusher Boat #1 and Pusher Boat #10. The Court certainly could not cause "due appraisement" to be made of the value of NDC's interest in the proposed vessels at this late date even if the

---

[1] GTL's Footnote 1 suggests an increase in the SWIFT's fund is necessary but fails to note that reductions for salvage costs may also be taken into account. *Kreta Shipping v. AMPHION*, 1997 AMC 1676 (S.D.N.Y. 1997).

Motion were justified which it is not. *See Kreta Shipping, S.A.*, *Limitation Proceedings*, *M/V AMPHION*, 1997 AMC 1676, 1689 (S.D.N.Y. 1997). As a result, this Court would have to direct supplemental expert disclosures to be submitted on the values of the various vessels, along with rebuttal expert disclosures, perhaps, even additional deposition testimony on the subject.

Finally, vessel interests lack standing to raise the flotilla doctrine because they have no contractual relationship with NDC. *In Re Allied Towing Tug TESTER*, 1978 AMC 2484 (E.D. Va. 1978). Recognizing this GTL appears to have enlisted Link and Wallace to join in their Motion. This will not cure GTL and Cober's lack of standing.

**II.   THE COURT SHOULD DENY MOVANTS' MOTION *IN LIMINE* TO INCREASE NDC'S LIMITATION FUND BECAUSE KRISTIANSEN HAS NOT BEEN ADOPTED IN THIS CIRCUIT.**

In their Motion to Increase NDC's Limitation Fund, Movants state that determining whether a shipowner has satisfied its obligations under 46 U.S.C. 183(a) "depends on whether the claim arises out of a contractual situation or a pure tort situation." *Motion to Increase*, p.3. In support of their position, Movants have cited *Standard Dredging Company v. Kristiansen,* 67 F.2d 548 (2nd Cir.), *cert. denied* 290 U.S. 704 (1933) and its progeny. *Kristiansen*, however, was an erroneous decision and has not been adopted by the Fourth Circuit.

*Kristiansen* involved a seaman, employed on a dredge, who brought suit against his employer for personal injuries suffered on a barge in the course of dredging operations. Under the Limitation Act, the employer sought to limit its liability to the value of the barge alone. The United States District Court for the Eastern District of New York dismissed the employer's request to limit its liability to only the barge unless the employer surrendered both the dredge and the barge as security. *See Petition of Standard Dredging Company for Limitation of Liability*, 1933 A.M.C. 1140 (E.D.N.Y. 1933). On appeal, the Second Circuit was asked to determine whether the district court correctly required the surrender of both the dredge and the barge,

despite the fact that the seaman was injured on the barge not the dredge and the barge was not physically attached to the dredge.

The Second Circuit held that, "the owner must surrender all those vessels which share in the execution of this venture." Not only did the barge and dredge have to be surrendered, but the assisting tugboats (which were in no way involved in the casualty) because at the time they were all actually engaged in the venture: dredging. The decision in *Kristiansen* was wrong in that it ignored the rule of *Liverpool, Brazil and River Plate Steam Navigation Co.* v. *Brooklyn Eastern District Terminal*, 251 U.S. 48 (1919), discussed *infra* and relied on a non-Limitation Act Supreme Court decision, *Sacramento Navigation Company v. Salz*, 273 U.S. 326 (1927), discussed *infra*.

    1.    ***Liverpool v. Brooklyn Eastern District Terminal.***

In *Liverpool*, a railroad car float in the tow of a tug collided with a steamship moored at a pier. The lower court granted limitation based upon the value of the tug only. On appeal, Justice Holmes, speaking for a unanimous Supreme Court, affirmed. The Court found the car float to be a passive vessel and held that, whether or not two or more vessels under common ownership were involved in the same accident, only the vessel actively at fault (the tug) must be surrendered (or security posted for its value) for purposes of the limitation fund. 251 U.S. at 52. "For the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel by being attached to it." 251 U.S. at 53.

  The Court's reasoning was controlled by the wording of the Limitation Act:

> The words of the statute are "The liability of the owner of any vessel for any . . . injury by collision . . . shall in no case exceed the amount or value of the interest of such owner in such vessel." The literal meaning of the sentence is reinforced by the words "in no case." For clearly the liability would be made to exceed the interest of the owner "in such vessel" if you said frankly, in some cases we propose to count other vessels in although they are not "such vessel" . . .

*Id*. at 53-54. Thus, under the clear wording of the Limitation Act, the Court refused to include the passive car float as an "offending vessel." Inclusion of the car float would amount to "artificially construing 'such vessel' to include other vessels if only they are tied to it." *Id*. at 54.

The *Liverpool* Court even considered the situation at issue in *Kristiansen*, i.e., whether another vessel, unattached to the vessel actively involved in the injury, would need to be surrendered as well. The Court answered with a resounding no, stating that "[n]o one, we presume, would contend that other unattached vessels, belonging if you like to the same owner, and cooperating to the same result with the one in fault, would have to be surrendered." *Id*. at 53.

      2.    *Sacramento Navigation Company v. Salz*.

*Salz, supra,* was not even a Limitation Act decision but rather involved § 3 of the Harter Act, 46 U.S.C. § 192. In *Salz*, a cargo of barley was damaged when the barge on which it was stowed collided with another vessel. The barley owner sought recovery from the owner of the tug and barge on the basis of its contract of affreightment. The sole issue in *Salz* was the meaning of the phrase "any vessel transporting merchandise" as used in § 3 of the Harter Act.

The Court held that both the tug and barge together constituted "any vessel transporting merchandise" for Harter Act purposes because only by acting in concert were they "the effective instrumentality" that performed the contract of affreightment. 273 U.S. at 329. The *Salz* Court distinguished *Liverpool* as involving "pure tort," rather than a contractual obligation, stating that *Liverpool* asked only "What constituted the 'offending vessel'? Here we must ask, What constituted the vessel by which the contract of transportation was to be effected? a very different question." *Id*. at 370.

It must be noted that *Salz* explicitly held that what constituted the "vessel" under the Harter Act was controlled by what was necessary to transport the barley under the contract of

affreightment, i.e., both the tug and barge acting together as one vessel. Thus, in the narrow context of carriage of goods, and for purposes of the Harter Act, the Supreme Court has defined "any vessel transporting merchandise" to include a tug and a barge.

### 3. *Standard Dredging Company v. Kristiansen*.

In *Kristiansen* in order to reach its decision to include the dredge and tugs in the limitation fund, the Second Circuit incorrectly concluded that *Salz* was controlling. The Second Circuit then proceeded to even further expand *Salz*, stating that the tug and barge in that case "were treated as a single vessel, because owned in common and engaged in a common enterprise . . . ." 67 F.2d at 550. This extreme interpretation allowed the Court to then find that every vessel engaged in the entire dredging operation, no matter how remote, had to be surrendered into the limitation fund because the employer owed a "contractual obligation" to the seaman.[2]

Not surprisingly, *Kristiansen* has received its share of scholarly criticism.[3] In his treatise on Admiralty and Maritime Law, Professor Schoenbaum dismisses *Kristiansen* as an erroneous reading of *Salz*, characterizing the doctrine as one "invented" by Judge Hand. *See Schoenbaum, Thomas J.*, ADMIRALTY AND MARITIME LAW 349 n.13 (3rd ed. 2001).

> The so-called Flotilla Doctrine, which holds that the entire flotilla of vessels must be surrendered in a limitation, was *invented* by Judge Learned Hand in Standard Dredging Co. v. Kristiansen . . . . In that case, Judge Hand concluded from an *erroneous* reading of [*Salz*] that a Jones Act seaman was entitled to have the entire flotilla surrendered into the limitation fund because of his contract or consensual relationship of employment with the shipowner . . . . This led to an

---

[2] Even the district court below in *Kristiansen* had not required surrender of the tugs but only the barge on which the seaman was hurt and the nearby dredge. *Petition of Standard Dredging Company for Limitation of Liability*, 1933 A.M.C. 1140 (E.D.N.Y. 1933).

[3] It should further be noted that the defendant tug owner in *Salz* was seeking to limit liability as provided in the Harter Act. *See Sacramento Nav. Co. v. Salz*, 3 F.3d 759 (9th Cir. 1925). The result of the Supreme Court's decision was to permit the tug owner to <u>avoid</u> liability. Had the *Salz* Court held that only the barge was the only Harter Act carrier then the tug owner would have been fully liable for the damage to the cargo. The result in *Salz* – furthering the purpose of the Harter Act, i.e. protecting vessel owners – stands in stark contrast to the result (ironically achieved through an erroneous interpretation of *Salz*) reached in *Kristiansen*, which was the extreme magnification of Standard Dredging's financial exposure.

*erroneous and highly misleading* distinction between 'pure tort cases' and 'consensual relationship' cases.

(Emphasis added.)

Even the Second Circuit has placed limitation of the *Kristiansen* case doctrine. In *The George W. Pratt Lim. Proc.*, 76 F.2d 902 (2nd Cir. 1935), the Court rejected a request to increase the limitation fund similar to that made by Movants. In *Pratt*, a tank barge sank while in tow of the tug PRATT. The PRATT's owner filed a limitation action to limit its liability to the value of the PRATT, to which the barge owner responded with the request that two additional tugs be surrendered. The barge owner contended that the tug owner used three tugs in performance of the towage agreement: "It is argued that since the loss arose from negligence in performance of the towage contract, all vessels engaged in performing the contract must be surrendered. Particular reliance is placed upon the language of this court in *Standard Dredging Co. v. Kristiansen* . . . ." 76 F.2d at 903.[4]

The Second Circuit rejected the barge owner's request that all three tugs be surrendered: "Neither the actual decision nor the language of the *Kristiansen* Case can be given so broad a scope as to mean that all the vessels used successively in performing a contract are to be deemed collectively one vessel for purposes of surrender in limitation of liability." *Pratt*, 76 F.2d at 903. The Second Circuit then stated that "the rule is established that the vessels to be surrendered are those devoted to performance of the contract *at the particular time when the fault which causes the loss is committed*." *Id.* (emphasis added.)

The *Pratt* Court also reviewed its application of *Salz* to the case at hand, stating that "[t]here is nothing in *Sacramento Navigation v. Salz* . . . to indicate that the owner is required to surrender anything more than the vessels devoted as a unitary instrumentality to the undertaking

---

[4] The language referenced is that "the owner must surrender all those vessels which share in the execution of the venture; collectively they are 'such vessel' . . . ." *Kristiansen*, 67 F.2d at 550.

*at the time when the fault is committed* – whether the fault be viewed as a breach of contract or a tort." (Emphasis added.) *Id.* at 904. Because only the PRATT was being used when the loss occurred, the Second Circuit required only the surrender of the PRATT for limitation purposes. *Id. See also In the Matter of Greenhill Petroleum Corp.*, 1998 A.M.C. 868 (E.D. La. 1997) (Where claimant injured riding launch to work site, and no other vessels involved in injury, court denied request under Flotilla Doctrine to include all vessels located on work site)

Judge Hand vigorously declared in *Kristiansen* that "whatever may be thought of the law before 1927 [regarding what "vessel" to include in the limitation fund], *Sacramento Nav. Co. v. Salz*, 273 U.S. 326, 47 S. Ct. 368, 71 L.Ed. 663, settled it." However, The Fourth Circuit has not agreed with Judge Hand that *Salz* governs the question of what vessel or vessels must be surrendered in cases under the Limitation Act and has not adopted *Kristiansen*.

    4.    *Fourth Circuit Law*

In *Alva H. Boushell*, 38 F.2d 980 (4th Cir.) cert. den. 281 U.S. 743 (1930), a collision occurred between a steamship and two barges, damaging each vessel. The steamship was in tow of two tugs, the BOUSHELL and the HIX, with the BOUSHELL in command of the tow. When the collision occurred, the BOUSHELL "had cast off her lines, and was falling astern of the steamship . . . ." 38 F.2d at 980. The "HIX was moored to the starboard bow of the steamship at the time, and its master received and executed such orders as were given him" by the BOUSHELL. *Id.* at 980. The two barges were in tow of one tug, the BELHAVEN.

The owners of the barges and steamship filed suit against the owners of the respective tugs. Wood Towing Company, the owner of the BOUSHELL and the HIX, filed a limitation action as owner of the BOUSHELL, and the district court ordered that the HIX be brought into the action as security. *Id.* at 980-81. The district court determined that the collision was caused by the negligence of the BELHAVEN, and by the negligence of the BOUSHELL, as navigator of

the steamship, and the HIX. The court, *inter alia*, permitted Wood Towing Company to limit its liability to the value of the BOUSHELL and the HIX. Judgment was entered against Wood Towing Company on the bonds executed and filed in the proceeding for the value of the BOUSHELL and HIX. *Id.* at 981.

Wood Towing Company appealed the district court's ruling, contending that it should not have been required to surrender both tugs in its proceeding for limitation of liability for damages caused by the fault of only one tug. The towing company argued that the HIX, under command of the BOUSHELL, "was entirely free from fault in bringing about the collision," and that "it was a mere dormant factor in the situation . . . ." *Id.*

The Fourth Circuit disagreed, affirming the district court's ruling to include both tugs in the limitation fund because both tugs were actively involved in the collision. The Fourth Circuit found that "both tugs are responsible and liable for damages arising from such collision" where "both were participants in the venture and undertaking, and both were at fault in bringing about the collision." *Id.*

In support of its ruling, the Fourth Circuit reviewed several circuit and district court opinions on analogous towage cases and found wide support for its decision. *Id.* at 982-83. The court also discussed *Liverpool* noting that the "comparatively recent decision . . . throws considerable light upon, and settles, the difficult questions considered by it," but found the facts in *Liverpool* "entirely dissimilar" to those in the case before it. 38 F.2d at 983.

Also the *Boushell* Court highlighted the crucial fact that the car float at issue "was a mere dormant and passive instrument in no manner responsible for its safe conduct." *Id.* at 984. The Fourth Circuit stated that to hold the car float liable would be "unthinkable, and would result in making a vessel in tow of a tug in effect a guarantor of the tug's conduct . . . ." *Id.* The court noted that *Liverpool* factually had "no practical bearing here, where the tug seeking to be

relieved from liability was, so far from being a lifeless, dormant thing, a live and active factor at the time of the collision, then engaged in the management of the tow." *Id.*

In the Fourth Circuit's only opinion addressing this issue, the court completely omitted any mention of *Salz*, despite the fact that the Supreme Court decided *Salz* just three years earlier. Why did the Fourth Circuit decline to rely on, or even discuss, *Salz*? One can only assume that the court recognized that the ruling in *Salz* addressed only a narrow question, namely, what constitutes a vessel under the Harter Act and a contract of affreightment.

In a later Maryland case Judge Northrop discusses but does not apply the Flotilla Doctrine following the *Pratt* approach of the Second Circuit rather than *Kristiansen*. *See Steuart v. Bauer Dredging Construction Co.,* 323 F. Supp 907, 1971 AMC 1447 (D. Md. 1971). Therein the claimant was the pier owner whose pier was damaged when tug's oil barge collided with the pier. The pier owner sought to have both the tug and the barge values included in the limitation fund on the basis that it had a contract with the tow owner to purchase oil. Citing the *Pratt* case Judge Northrop stated: "For purposes of argument, even if it was found that the breach of duty was incidental to a contract, the injury and fault were too remote to require the surrender of the dredge." [sic] <u>Id</u>. at 1453. He concluded: "This case should therefore be decided on the basis of those decisions where the injury is to a third person to whom the owner owes no duty based upon consent." <u>Id.</u> at 1453. He went on to conclude that the barge should be surrendered but on the basis of the fact that it was itself potentially a "offending vessel" because it had broken loose from the pier. Such is not the situation in the present case.

Judge Northrop clearly felt that the *Salz* case and *Kristiansen* and others relied on by the movants here need to be held strictly to their facts. He stated:

> To give an expansive reading to these cases would defeat the intent of the act. As stated before, the purpose of the statute entitling a vesselowner to a limitation of liability is to encourage and protect maritime commerce by relieving a shipowner from consequences of marine accidents and disasters not due to his

personal knowledge, neglect or default. *See Maine*, 1939 AMC 950, 28 F. Supp 578 (D. Md.) aff'd subnom *Standard Wholesale Phosphate and Acid Works v. Travelers Insurance Co.*, 1939 AMC 1493, 107 F.2d 373 (4th Cir. 1939).

*Id*. at 1452.

Judge Northrop acknowledged the difficulties with the Flotilla Doctrine stating:

The question of what constitutes a vessel has plagued admiralty courts for years. It has arisen in many and varied factual backgrounds with the underlying rationale derived from each opinion always being that each case must be decided on its own facts.

*Id.* at 1451.

More recently the Eastern District of North Carolina affirmed the holding of *Boushell*, *supra* and rejected the application of the flotilla doctrine. *See In the Matter of the Complaint of Norfolk Dredging Company, as Owner of Derrick #4 for Exoneration from or Limitation of Liability*, 2003 AMC 403 and 2003 AMC 2622 (E.D.N.C. 2003). In that case, claimant filed a motion to increase the limitation fund to include all of the vessels and equipment to be used during dredging operations. In support of his motion, claimant relied on the "flotilla doctrine." The court found that the

[t]he Fourth Circuit Court of Appeals never has adopted the 'flotilla doctrine.' This court has been unable to locate any opinion of that court in which the doctrine was at issue and/or discussed. The only Fourth Circuit case that has come close to tackling the issue was *The Alvah H. Boushell Limitation Proceeding* … Nor has the United States Supreme Court made a modern pronouncement on the doctrine, which has evolved from an apparent slip…

2003 AMC at 427. The court went on to hold that in the Fourth Circuit,

it is not enough that a vessel simply be used in the performance of a contract with a third party in order for it to be susceptible to inclusion in the limitation fund; *a claimant must demonstrate contribution to the injury by act or omission on the part of a vessel the claimant seeks to have brought in the limitation*.

(Emphasis Added) *Id* (*quoting Boushell*, 38 F.2d at 982). The North Carolina court made clear that whether a shipowner must surrender the value of additional vessels to its limitation fund, is

neither dependent on the "flotilla doctrine" nor the dichotomy between contractual and pure tort situations, but instead on whether the vessel contributed to the loss by act or omission.

        **a.**      **Application Of *Boushell* And *Liverpool* To The Instant Case Requires That Movants' Motion To Increase The Limitation Fund Be Denied.**

In the case *sub judice*, the M/V A.V. KASTNER collided with the Barge RC-811 and the Tug SWIFT and, therefore, these are the only NDC vessels involved in the collision. No allegations of fault have been made against the other NDC vessels and equipment, the Dredge JECKYLL ISLAND, Derrick Barge # 4, PUSHERS #1 and #10, even in the pre-trial order. They were "mere dormant and passive instrument[s] in no manner responsible" for navigation of the Tug SWIFT and/or the Barge RC-811. *Boushell*, 38 F.2d at 984. "[T]he mere presence of a vessel at the scene of the accident does not make it an offender." *The Severance Lim. Proc.*, 152 F.2d 916, 922 (4th Cir. 1945) (surrender of sole vessel discussed but limitation denied due to privity and knowledge), *cert. denied*, *Stone v. Diamond S.S. Transp. Corp.*, 328 U.S. 853 (1946). Accordingly, no application of current Fourth Circuit law would compel the surrender of additional vessels.

Looking at the facts of the present case it is clear that if the employment contract triggers an examination of vessels committed to the undertaking, it is necessary to define what the undertaking is. It clearly is not the entire dredging project, as it had not begun. If the towage is the relevant undertaking, then only those vessels "by which the contract is effected" are those subject to limitation. The dredge and derrick barge were essentially cargo, like the barley corn cargo in the *Salz* case. While these vessels may have been towed, they are not assets committed to fulfilling the relevant undertaking at the time of the occurrence (i.e. towage).

The *Kristiansen* decision and those like it involving injuries occurring in the course of dredging operations underway are factually inapposite. Had Link and Wallace been injured after

the Dredge JECKYLL ISLAND, derrick barge, and attendant vessels were on the jobsites, spuds down and working away, they might have a better argument if *Kristiansen* were accepted in the Fourth Circuit.

In any event if the Flotilla Doctrine exists in the Fourth Circuit, it is available only to claimants actually in privity of contract with the owner, not GTL or Cober.

## CONCLUSION

This Court should deny the Motion to Increase the Limitation Fund. Under the Limitation Act, the Fourth Circuit clearly requires surrender of vessels that is "a live and active factor" at the time of the injury. In this case, only conceivable such vessel owned by NDC are the Tug SWIFT and the Barge RC-811. Because NDC has already surrendered the value of these vessels, the limitation fund is correct and the Motion to Increase must be denied.

However, should this Court choose to apply *Kristiansen* as modified by *Pratt*, the Court would still only require NDC to surrender the value of the Tug SWIFT and the Barge RC-811, for these were the only vessels committed to the relevant undertaking.

WHEREFORE, Norfolk Dredging requests this Court to deny Movants' Motion *in Limine* for this Court to add the values of the dredge JECKYLL ISLAND, Derrick Barge No. 4, Pusher Boat # 1 and Pusher Boat # 10.

This the 29th day of January, 2004.

NORFOLK DREDGING COMPANY

By _____/s/_____
   Of Counsel

David W. Skeen, Esquire
Wright, Constable & Skeen, LLP
One Charles Center, 16th Floor
100 N. Charles Street
Baltimore, MD  21201-3812
(410) 659-1305

149936 v. (01862.00056)                 14

David H. Sump, VSB # 28897
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
Norfolk, VA  23510
(757) 623-3000
Counsel for Norfolk Dredging Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2004, a true and correct copy of the foregoing brief was electronically mailed, faxed and/or mailed via first class to:

| | |
|---|---|
| Paul D. Bekman, Esquire<br>Israelson, Salsbury, Clements & Bekman, LLC<br>300 W. Pratt Street, Suite 450<br>Baltimore MD  21201<br><br>Counsel for Troy A. Link and Dennis Wallace | Ralph Rabinowitz, Esquire<br>Rabinowitz, Swartz, Taliaferro,<br> Lewis, Swartz & Goodove, P.C.<br>Town Point Center<br>150 Boush Street<br>Norfolk, VA  23510<br><br>Counsel for Troy A. Link and Dennis Wallace |
| Robert M. Schwartzman, Esquire<br>Lord & Whip, P.A.<br>Charles Center South<br>36 South Charles Street, 10th Floor<br>Baltimore, MD 21201<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell | C. Arthur Rutter, III, Esquire<br>Deborah C. Waters, Esquire<br>Rutter, Walsh, Mills & Rutter, LLP<br>415 St. Paul's Boulevard<br>Norfolk, VA  23510<br><br>Counsel for Jeffrey Slaton, the Estate of Ronald L. Bonniville, the Estate of William Thomas Bryant, and the Estate of Clarence McConnell |
| Thomas B. Shuttleworth, Esquire<br>Shuttleworth, Ruloff, Giordano & Swain, P.C.<br>4525 South Boulevard, Suite 300<br>Virginia Beach, VA 23452<br><br>Counsel for the Estate of Justin Maurice Bryant | Peter Ayers Wimbrow, III, Esquire<br>4100 Coast Highway<br>Ocean City, MD  21842<br><br>Counsel for the Estate of Justin Maurice Bryant |
| J. Stephen Simms, Esquire<br>Simms Showers LLP<br>20 South Charles Street, Suite 702<br>Baltimore, MD  21201<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust | Patrick M. Brogan, Esquire<br>Davey & Brogan, P.C.<br>101 Granby Street, Suite 300<br>Norfolk, VA  23510<br><br>Counsel for Buchanan Marine, L.P. and A.P. Franz, Trustee of The Buchanan Trust |
| James W. Bartlett, III, Esquire<br>Semmes, Bowen & Semmes<br>250 W. Pratt Street, 16th Floor<br>Baltimore, MD 21202<br><br>Counsel for Timothy M. Cober | Robert B. Hopkins, Esquire<br>Ober, Kaler, Grimes & Shriver, P.C.<br>120 East Baltimore Street<br>Baltimore, MD  21202<br><br>Counsel for Gypsum Transportation |

/s/
David W. Skeen

Case 1:02-cv-00662-WMN    Document 236    Filed 01/29/2004    Page 16 of 16