IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| Elk River Collision Proceedings | * | |
| | | Civil Action No. WMN 02-662 |
| Norfolk Dredging Company, <u>et al</u>. | * | (Consolidated Cases) |
| Plaintiffs, | * | |
| v. | * | |
| M/V A.V. KASTNER, <u>et al</u>. | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**CAPTAIN WELCH'S RESPONSE OPPOSING
KASTNER'S MOTION TO COMPEL PRODUCTION OF
<u>HIS PERSONAL DIARY</u>**

Captain Welch's October 1, **<u>2002</u>** deposition testimony about his "personal diary" - which started the present bru-ha-ha - in response to questioning of KASTNER, was the following:

[Welch Transcript, page 134]

13     Q.     From then until the time of this accident,
14     can you recall any trip through the Chesapeake &
15     Delaware Canal?

16     A.     Yes.

17     Q.     And how many such trips through the
18     Chesapeake & Delaware Canal can you recall?

19     A.     Several.

20     Q.     Several.

21     A.     I'm not sure exactly how many.

22      Q.   If we wanted to find out how many, could
23   we consult -- for instance, do you keep a personal log
24   or a personal diary of your own employment?

25      A.   I keep track of my days, days at sea.

[page 135]

1      Q.   Do you have that in the form of a notebook
2   or a diary?

3      A.   It's a diary.

4      Q.   And does that tell us generally where you
5   have been in your days at sea?

6      A.   It may.  Sometimes it does.

7      Q.   And do you believe that you have that
8   diary in existence for the period from when you started
9   with Buchanan until the time of this accident?

10      A.   I'm not sure.  **But if I don't on the boat,**
11   **there is a diary**.

12      Q.   Well, we would certainly ask Mr. Simms to
13   produce your diary if that's something that's in
14   existence, if you are amenable of that.  And if there
15   are diaries on the vessel, are you referring basically
16   to the log on the vessel?

17      A.   Yes.

18      Q.   So the logs on the BUCHANAN 14 could be
19   referred to to see where the BUCHANAN 14 has been or had
20   been during that period of time; is that right?

21      A.   Correct.

22      Q.   Were your trips through the Chesapeake &
23   Delaware Canal all on the BUCHANAN 14, so far as you
24   know?

25      A.   Yes.

[136]

    1    Q.    None on the BUCHANAN 11 --

    2    A.    No.

    3    Q.    -- through the Chesapeake and--

    4    A.    No.

    **5    Q.    So if we went back and looked at the logs**
    **6    on the BUCHANAN 14 for the period from February 2001**
    **7    through February 2002, they would show us when you were**
    **8    on board and they would show us where the vessel went;**
    **9    is that right?**

    **10    A.    They would.**

The Court will see from the questioning, that KASTNER was only interested in Captain Welch's diary, as it would show his transit of the C&D Canal. Captain Welch responded, that he had only transited the C&D Canal on the B-14, and that the B-14 logs would show what he did during that transit, which, they do; these logs, or other records of the B-14's work while Captain Welch was employed by Buchanan, long have been produced.

The question of Captain Welch's diary, only came up in the remainder of the deposition, on questioning from Ms. Waters, counsel for the Estate of Captain Bryant:

[ 244]

    11    Q.    Other than the log that we've been
    12    referring to as Exhibit 7, do you keep a personal log of
    13    any sort?

    14    A.    I used to keep a personal log of
    15    everything, but it -- but I ended up I would have to
    16    fill out the boat log, the trip sheets, everything, so I
    17    would just keep up with my days at sea rather than copy
    18    all this same stuff over and over.

-3-

19     Q.   Okay.  Let me clarify the question.

20     A.   All right.

21     Q.   At the time -- around the time of the
22   collision that happened in February of this year --

23     A.   Okay.

24     Q.     -- were you maintaining a personal log
25   other than the ship's log that we've -- and the logs

[245]

1   we've already talked about here today?

2     A.   I don't know, but I do have my log, and I
3   could check it out.  I don't have it with me, but I
4   still have it.

5     Q.   I would ask that your counsel review that
6   with you **to see whether there are entries around that**
7   **time.**

8     A.   Okay.

9     Q.   And, if so, please produce **them** to us.

                    *     *     *     *

21          MR. SIMMS:  There is an attorney/client
22   privilege that operates here.  We are representing
23   Mr. Welch, Captain Welch.

24          MS. WATERS:  As an individual?

25          MR. SIMMS:  Yes, as an individual.

[246]

1   BY MS. WATERS:

2     Q.   Then would you kindly review that with
3   counsel and if there's anything responsive to my

-4-

4    inquiries, produce them.

5        A.   I will.

6        Q.   Thank you.

As KASTNER notes, Buchanan did produce, some months ago now, the pages from Captain Welch's personal logs which contain entries of "around that time," that is, of the February 25, 2002 accident.

Somehow, though, now long after discovery has been completed, well after Captain Welch's October 1, 2002 deposition, KASTNER's request of Captain Welch's diary, has "morphed"[1] from an initial request to show his C&D Canal transits on the B-14, and, a request to

---

[1]        Although KASTNER now seems to claim that it needs more evidence of Captain Welch's "towing astern" experience - notwithstanding any admissibility of this (treated below) - the questions to Captain Welch at his October 1, 2002 deposition about "towing astern" were very limited, and to each, Captain Welch gave specific, and apparently satisfactory, answers, to the questioner:

[Welch Transcript, at 15]

23        Q.   Did you ever tow astern for Back River?

24        A.   Yes.

25        Q.   What kind of things did you tow astern?

(continued...)

_____

[1](...continued)

1     A.   We towed those gravel barges, you know, a
2  crane barge here and there.  Whatever he had, you know,
3  for us to do.

4     Q.   What percentage of your towing at Back
5  River would you say was towing astern?

6     A.   Probably 10 percent.

                    *   *   *   *

[23]

2     Q.   Please tell me the kinds of equipment or
3  vessels that you've towed astern while working for
4  Buchanan Marine.

5     A.   I've towed gravel barges.  I've towed some
6  crane barges.  Deck barges, you know, with, like, bridge
7  girders and stuff on it.  I've towed some dredge
8  equipment for Weeks.

9     Q.   Let's talk about the Weeks dredge
10  equipment.

11     A.   Okay.

12     Q.   When, generally, did you make that tow?
13  Do you remember when that was?

14     A.   Not exactly sure of the exact date, but it
15  would have been after 2/6/01.

16     Q.   Would it have been closer to the beginning
17  of your employment or closer to February 25th, 2002?

18     A.   Closer to the beginning.

19     Q.   All right.  Over what route were you
20  towing Weeks' dredge equipment?

                                        (continued...)

_____

[1](...continued)
21        A.    We towed it through Snow's Cut, up through
22    the intercoastal as far as -- let's see -- I'm not
23    exactly sure.  We went out in the ocean from somewhere
24    south of Snow's Cut.

                          *    *    *    *

[24]

19        Q.    Other than this Weeks occasion, had you
20    ever towed astern more than one vessel?

21        A.    Yes.

22        Q.    When was that?

23        A.    Towing from Havre De Grace to Seaford,
24    Delaware, on occasions with gravel barges.

25        Q.    Multiple gravel barges?

[25]

1         A.    Yes.

2         Q.    And what was the most number of gravel
3     barges you would handle in any one tow?

4         A.    Most of the time it was two.

5         Q.    How did you get your experience towing?

6         A.    Well, over the years of fishing, I had
7     towed quite a few vessels in from offshore, you know,
8     you'd break down.  It's kind of like the law to sea; you
9     tow your other guys in.  Not just in the tugboat
10    industry.  When I worked with my uncle, when I was still
11    in high school, he had that little pile driving rig; we
12    used to tow that around also.

[47]

(continued...)

_____

[1](...continued)

17    Q.    How many trips had you made for Buchanan
18    say from the Chesapeake Bay Bridge north to the C & D
19    Canal?

20    A.    I'm not exactly sure how many.

21    Q.    Had you done it before?

22    A.    Yes.

23    Q.    Had you done it more than five times?

24    A.    Probably.

25    Q.    Had you -- do you think you did it more

[48]

1    than ten times?

2    A.    Like I say, I'm not sure of the exact
3    number.

4    Q.    I understand.  I'm just trying to get a
5    scale.

6         Do you think it was more than ten?

7    A.    Probably.  You said up to the Elk River?

8    Q.    I mean from the Chesapeake Bay Bridge to
9    the C & D Canal.

10    A.    To or through?

11    Q.    To the entrance of the C & D Canal, let's
12    talk about that route.

13    A.    Probably a half a dozen times.  But we

(continued...)

produce the pages "around that time" of the accident, to a broad request to show all of Captain

Welch's "experience."[2]

_____

[1](...continued)
14   hauled up to Turkey Point many, many times, to Havre De
15   Grace, which it's the same place, but --

16      Q.   Not quite as far north?
17      A.   Right.

18      Q.   And were you master on that tug all six
19   times?

20      A.   Probably.

21      Q.   And were you towing astern on any of those
22   six times?

23      A.   Some of those times.

24      Q.   How many do you think?

25      A.   I'm not sure.

[49]

1      Q.   But at least once?

2      A.   Yes.

[2]      Fed. R. Civ. P. 45(c)(2)(B) does not require a witness to provide any specific
objection to a document subpoena.  Instead it simply says that the objection must be in writing,
and that once the objection was served, the party seeking the documents, must move to compel
the production.  Captain Welch's objection included the grounds that Mr. Simms' December 31,
2003 objection on behalf of Captain Welch specified, but was not limited to them.  As further set
out herein, particularly considering the **original** request at Captain Welch's deposition -
"morphed" into a much broader request, over-breadth, as well as cumulativeness of the B-14

(continued...)

As Captain Welch testified, though, he did all of his work on the C&D Canal on the B-14. Further, Buchanan is producing, in response to KASTNER's motion, the documents pertinent to Captain Welch's entire work with Buchanan.

KASTNER further has now limited its motion, to seeking Captain Welch's diary only for the last 18 months, in other words, showing what he did during the time that Buchanan employed him, which, as Captain Welch testified, the documents which Buchanan has produce, and is producing, will show.

This Court accordingly should deny KASTNER's motion.

First, what it is now asking for, is well beyond what it ever asked for, when the request began, at Captain Welch's deposition. The B-14 logs show Captain Welch's C&D Canal-related experience. Buchanan has produced the diary pages around the time of the accident.

Second, the request is overly broad. KASTNER already has, or from Buchanan's records will have - in addition to Captain Welch's testimony at deposition and at trial, ample information about Captain Welch's "experience." Under Federal Rule of Evidence 403, the Court should exclude such cumulative "evidence."

Third, however, as Buchanan has shown in its opening motions in limine, KASTNER has not presented expert evidence showing that any supposed "inexperience" of Captain Welch caused the accident. Any discovery fundamentally must be reasonably calculated to lead to the discovery of admissible evidence. The "evidence" which KASTNER now seeks, of Captain Welch's experience, is inadmissible, because it is not relevant to any theory that KASTNER can

---

[2](...continued)
logs and other records, is a further ground for objection.

prove.  See Federal Rule of Evidence 402.

Fourth and finally, Captain Welch's diary contains personal information irrelevant to these proceedings.  Excising that information would require further expense, for Captain Welch's counsel to review the pages and redact that information.  Of course, it is likely, that once receiving redacted diary entries, KASTNER would want this Court to review the entirety, in original, thus giving rise to more effort (in terms of this Court's in camera review) which was never necessary in the first place - under the very construction of KASTNER at Captain Welch's October 1, 2002 deposition which gave rise to the request for the diary, in the first place.

KASTNER wanted the diary to show Captain Welch's C&D Canal-related experience, if the B-14 logs didn't show that.  They do.  This Court, looking to KASTNER's original request for the diary, which has been satisfied, and more, should therefore deny the motion.


Dated: January 29, 2004.

                                        /s/   J. Stephen Simms
                                        J. Stephen Simms (#4269)
                                        W. Charles Bailey, Jr. (#23580)
                                        Simms Showers LLP
                                        Suite 702 - Twenty South Charles Street
                                        Baltimore, Maryland 21201
                                        Telephone: (410) 783-5795
                                        Facsimile: (410) 510-1789


John T. Ward (# 1507)                   Patrick M. Brogan
WARD  KERSHAW, P.A.                      Mark E. Newcomb
113 West Monument Street                 Davey & Brogan P.C.
Baltimore, Maryland  21201               101 Granby Street, Suite 300
Telephone:  (410) 685-6700               Norfolk, Virginia  23514-3188
Facsimile: (410) 685-6704                Telephone: (757) 622-0100
                                         Facsimile: (757) 622-4924


                        Buchanan Counsel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2004 a copy of the foregoing was served via CM/ECF on counsel of record for each party.

/s/   J. Stephen Simms