IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| Elk River Collision Proceedings * | |
| | Civil Action No. WMN 02-662 |
| Norfolk Dredging Company, et al. * | (Consolidated Cases) |
| Plaintiffs, * | |
| v. * | |
| M/V A.V. KASTNER, et al. * | |
| Defendants. * | |

\* \* \* \* \* \* \* \* \* \* \*

**BUCHANAN'S RESPONSE OPPOSING
KASTNER'S MOTION TO STRIKE
BUCHANAN'S REBUTTAL EXPERTS
DALEY AND SAUNDERS**

**Buchanan Is the Only Party Which Does Not Claim
Direct Damages.   Its Claims are Rebuttal Claims - for
Indemnity and Contribution, and Limitation**

What the KASTNER interests overlook, is that Buchanan, of all of the parties, is the only

party that does not claim direct damages any of the others.[1]

Instead, Buchanan claims only indemnity and contribution[2] - and limitation of liability -

---

[1] KASTNER, for example, has claimed about $100,000 of direct damages to its vessel (for repairs and the like); Norfolk Dredge has claimed about $1.1 million of direct damage, to its vessels and for cleanup and removal costs; each individual personal injury and death claimant, of course has claimed his, or his estate's, own direct damages.

Buchanan, however, claims no direct damages, to its vessel or otherwise.

[2] The court explained in Tokio Marine & Fire Ins. Group v. J.J. Phoenix Exp., 156 F.Supp.2d 889, 895  (N.D. Ill. 2001) that: "Indemnity ... involves an attempt to shift the entire loss from one who is compelled to pay without regard to his own fault, to another person who was the actual wrongdoer." . . . .   "The right to indemnification may be created by statute, by an express contract, or it may be implied by law to prevent unjust enrichment or an unfair result."

**if and only if any or the other parties meet their initial burdens to prove Buchanan was liable**.

Professor Schoenbaum explains as follows:

> Admiralty recognizes the common law rule of joint and several liability so that concurrent tortfeasors are each liable in full for the damages sustained by a tort claimant. But damages are apportioned among the tortfeasors themselves through the application of the doctrines of contribution and indemnity. Contribution is a cause of action **that arises when a tortfeasor pays more than his pro rata share of a judgment**. Although contribution is an inchoate right when the underlying tort giving rise to common liability occurs, **the remedy is not available until the tortfeasor pays more than his share of the judgment**. In admiralty the amount of contribution is determined according to principles of comparative fault; one who has paid more than his allocable share of the judgment has an action against any other tortfeasor who has paid less than his share. Contribution, therefore, requires each tortfeasor to pay the proportion of the damages attributable to his actions. Indemnity, in contrast, requires one tortfeasor to reimburse in full another **who has discharged a common liability**.

T. Schoenbaum, Admiralty and Maritime Law 231 (3d Ed. 2001 & Supp. 2004)("§ 5-18. Contribution and Indemnity," emphasis added).

Here, of course, none of the "tortfeasors" have paid **any** judgment, nor had any - at least at the time of the expert disclosure deadlines - fully discharged any "common liability."

Professor Schoenbaum goes on to explain that in cases of **direct damage**, "[a]s in any tort case, the claimant in a collision case, as a general rule, has the burden of proving that negligence or unseaworthiness was the proximate loss of **his** loss or damage." Id. at 295

---

Id. "Contribution involves an apportionment of responsibility where each of the wrongdoers owes a duty to the injured party or to each other and the degree of responsibility each wrongdoer must bear for causing the injury must be determined.""

Consequently, Buchanan would have to be held liable, in order for it then to have to respond with any proof of its indemnity or contribution case - or, as set out below, show that it had any liability, which had to be limited.

("Collision and Marine Casualty, § 14-3 Presumptions, Burden of Proof and Evidence"). Or, as Healy and Sweeney point out in N. Healy and J. Sweeney, The Law of Marine Collision 44 (1998):

> In collision actions, as in other tort cases, the burden of proof rests upon the party asserting a cause of action against another to establish its existence and this burden never shifts. In the usual collision case, the owner or operator of each vessel alleges fault on the part of the other; **where both vessels have suffered damage**, and the owner of one institutes an action against the other, it is rare that the other's owner does not file a counterclaim against the first vessel, or her owner, or both. In such case, each owner has the burden of proving a cause of action against the other.

(Emphasis added).

Professor Schoenbaum further explains the burdens of proof in a limitation of liability proceeding:

> In a trial of a limitation proceeding, the burden of proof is divided between the parties, and there is a two-step analysis. The claimants must prove that the destruction or loss was caused by the negligence or unseaworthiness of the vessel. **The burden then shifts** to the shipowner to demonstrate that he comes within the statutory limitation conditions: that there was no design, neglect, privity or knowledge on his part.

T. Schoenbaum, Admiralty and Maritime Law 344 ("§ 15-5. Limitation of Liability. Procedure and Practice," emphasis added). This is the same order of proof that this Court's January 7, letter, for the order of proof in this case, set out.

Here, all of the other parties are claiming direct damages against Buchanan, but Buchanan is not claiming any such damages from the other parties. Instead, the other parties must prove, first, that Buchanan is liable in some way. Only then, would Buchanan need to rebut that case of liability, and claim indemnity and contribution, and limitation of the proved liability. If the other parties never made their primary case against Buchanan, then, Buchanan would not

need to put on its rebuttal case, for indemnity and contribution, or for limitation of any liability.

As KASTNER also must admit, Mr. Daley and Mr. Sauders' opinions go directly to Buchanan's **defenses**, namely, that Buchanan did not cause this loss.

The only thing that gave rise to Buchanan's need to respond - saying that it was not liable, was, the other parties' submission of expert reports, saying, that Buchanan was liable - a classic rebuttal case. The other parties, with their initial expert reports, said in essence (for the first time supported by experts), "Buchanan did it." Buchanan therefore responded with Mr. Daley and Mr. Saunders, "Buchanan did not do it, KASTNER or Norfolk Dredge did it."

But agin, if no party ever had, with its initial expert reports, said, "Buchanan did it," and said specifically - with experts - what Buchanan had "done," then, no Buchanan rebuttal would have been necessary and Mr. Daley and Mr. Saunders, would have needed to say nothing on rebuttal.

What KASTNER is asking the Court to do, is to entirely strike Mr. Daley's and Mr. Saunders' report, responding in rebuttal, to the allegations of Buchanan's liability that KASTNER and the other parties have made. That request is improper, especially since, not only did Buchanan timely disclose (as KASTNER must concede) this rebuttal report, but also, as set out immediately below, KASTNER (and all of the other parties, which Buchanan notes, have not complained about Mr. Daley and Saunders), had ample time to respond to the report.

This Court for these reasons alone should deny KASTNER's motion.

**KASTNER - and its Experts - Have Had More than Ample Time
To Respond to Mr. Daley's and Mr. Saunders' Reports**

As KASTNER must also admit, it received the Daley and Saunders rebuttal report on October 17, 2003, **more than three (3) months before its motion claiming "prejudice"**.

KASTNER also must admit, to saying **nothing** over these over three (3) months about the supposed "prejudice" of the report - or supposed inability to attract experts to respond to it - or the supposed "sandbag" that KASTNER had suffered.

During the three months, all counsel in the case talked, e-mailed, communicated, deposed, almost every one of the 90 plus days, after the Daley and Saunders report.

But, from the KASTNER side, complete and total silence.

As the KASTNER side notes, it did get around to deposing Messrs. Daley and Saunders, Mr. Daley, in December, Mr. Saunders, in January.

And, not a peep was heard even then, about "prejudice."

As the Court in fact would see from a review of both transcripts, KASTNER had no difficulty at all, putting questions to Mr. Daley and Saunders, when it finally got around to deposing them.

If there were "prejudice," wouldn't a call - some communication - before a "gotcha" motion on the last day for in limine motions, have been appropriate?

Nothing even was heard from KASTNER at the November 30, 2003 motions deadline on the subject.  KASTNER was entirely silent.

What KASTNER gripes about here, is essentially a discovery dispute.  KASTNER says, "we didn't have discovery from Daley and Saunders, so we couldn't respond."

The Local Rules say, that counsel are to confer in good faith and attempt to resolve

discovery disputes, and then certify to the Court that they did that. But KASTNER never did that here. If it had, the Buchanan answer would be, "fine, go ahead and have your experts add to their opinions, in response to Daley and Saunders. Get new experts, even. But, this is a silly, manufactured dispute that counsel should be able to resolve without involving the Court."

Of course, each party's experts will be testifying at trial. The opposing experts will have the opportunity to hear them, and respond. KASTNER is not short on experts, and certainly the Court now will not hear KASTNER say, that it has failed to share Mr. Daley's and Mr. Saunders' report, and testimony, with its own experts.[3]

KASTNER's unfortunate language accusing Buchanan - and personalizing the case by accusing Buchanan counsel - of "sharp practice," might be pardoned considering the tension of an impending trial.

KASTNER should have stopped to consider what it now says are its own standards, however, before making this "gotcha" motion at the last instant before trial.

This Court now should deny the motion.

Dated: January 29, 2004.

/s/   J. Stephen Simms
J. Stephen Simms (#4269)
W. Charles Bailey, Jr. (#23580)
Simms Showers LLP
Suite 702 - Twenty South Charles Street
Baltimore, Maryland 21201
Telephone: (410) 783-5795
Facsimile: (410) 510-1789

---

[3] Notably absent, in fact, is any contention from KASTNER, that its present legion of experts, is incapable of responding to Mr. Daley and Mr. Saunders. In fact, it appears that KASTNER's experts are more than prepared to do that.

| | |
|---|---|
| John T. Ward (# 1507) | Patrick M. Brogan |
| WARD KERSHAW, P.A. | Mark E. Newcomb |
| 113 West Monument Street | Davey & Brogan P.C. |
| Baltimore, Maryland 21201 | 101 Granby Street, Suite 300 |
| Telephone: (410) 685-6700 | Norfolk, Virginia 23514-3188 |
| Facsimile: (410) 685-6704 | Telephone: (757) 622-0100 |
| | Facsimile: (757) 622-4924 |

Buchanan Counsel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2004 a copy of the foregoing was served via CM/ECF on counsel of record for each party.

/s/   J. Stephen Simms