IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

NORFOLK DREDGING COMPANY,    *

    *

v.    *

         Consolidated cases under

M/V A.V. KASTNER, etc., *et al*.,    *    Civil Action No.: WMN-02-662

    *

*   *   *   *   *   *   *   *   *   *   *   *   *

## OPPOSITION OF THE KASTNER
## INTERESTS TO BUCHANAN'S MOTIONS IN LIMINE

Gypsum Transportation Limited, Beltship Management Limited and Captain Timothy M. Cober (collectively referred to as the "KASTNER Interests"), by their undersigned attorneys, hereby file this Opposition to the Buchanan Interests' Motions <u>in limine</u> numbers 1 through 12.

A. THE MOTIONS OF BUCHANAN DISPLAY A FLAWED UNDERSTANDING OF THE USE AND PURPOSE OF EXPERT TESIMONY.

    1.    <u>Expert Testimony Is Not Necessary On The Matters At Issue.</u>

In several of its Motions <u>in limine</u>, specifically Motions 1, 2, 3, 5, 6, 7, and 8, Buchanan argues that this Court should "exclude undisclosed expert testimony" going to various factual issues in the case.[1]  Motion 1 addresses the proposition that the location of the spud and anchor (which fell from the deck of the Barge RC 811 on the "green side" of

---

[1] The fact that there actually is expert opinion on the record going to several of these points is addressed in the individual sections below.

the Elk River channel) tends to show that the collision occurred on the green side. The other Motions address arguments that the causes of the collision included: the inexperience of the Captain of the Tug BUCHANAN 14 towing astern or in the Elk River (Motion 2); the incompetence of the Captain of the Tug BUCHANAN 14 and her crew (Motion 3); the inordinate length and configuration of the five-vessel-plus-500-feet-of-pipe Tug BUCHANAN 14 flotilla (Motion 5); the lack of voyage planning on the parts of Buchanan and Norfolk Dredging (Motion 6); the uncertainty and confusion caused by the lack of an understanding between the Buchanan and Norfolk Dredging crews as to who was in command of the flotilla (Motion 7) and the deficiencies of the navigation equipment on board the Tug BUCHANAN 14 (Motion 8).

It is important to note that Buchanan has not attempted in its Motions to argue that Welch was not inexperienced and incompetent, or that the flotilla was not unusually difficult to maneuver, or that Buchanan and Norfolk Dredging in fact did any planning for the voyage, or that Captain Welch understood that he, and not Ricky McLamb, was in charge of the flotilla, or finally that the BUCHANAN 14 was outfitted with proper navigational equipment. Instead, Buchanan implicitly asks the Court to rule that expert testimony would be necessary for the Court to conclude that any of these facts contributed to cause the collision.

Rule 702 of the Federal Rules of Evidence states in pertinent part:

> **If** scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determined a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. . . .

(Emphasis added).  Expert testimony is not necessary, however, when the matter at issue is within the common knowledge of the trier of fact.

In <u>Salem v. United States Lines Co</u>., 370 U.S. 31 (1962), the Supreme Court held that there is no necessity for expert testimony when the trier of fact can determine facts based on common understanding:

> This is not one of the rare causes of action in which the law predicates recovery upon **expert testimony**.  [Citation omitted].  Rather, the general rule is as stated by Mr. Justice Van Devanter, when circuit judge, that **expert testimony** not only is unnecessary, but indeed may properly be excluded in the discretion of the trial judge "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of **common** understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation. . . ."  <u>United States Smelting Co. v. Parry</u>, 10 Cir., 166 F. 407, 411, 415.

<u>Id.</u> at 35 (emphasis in original).  The Court went on in a footnote to observe that expert testimony about customary equippage of a vessel would neither be essential nor would it have concluded the questions of unseaworthiness or negligence.  <u>Id</u>. at 37 n.6.

In this case, the issues which Buchanan highlights simply do not require any expert testimony for the Court to conclude that these faults of Buchanan contributed to cause the collision.  The Court is free to weigh, and to accept or reject, all of the evidence put before it and need not have any expert to tell it what to do.

2.    Expert Testimony Is Not Necessary Or Desirable On Ultimate Issues.

Similarly, Buchanan's Motions appear to be based on the incorrect premise that expert testimony is necessary on the ultimate issues before the Court.  A witness properly qualified as an expert may testify in the form of an opinion or otherwise if technical, scientific or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue.  Fed.R.Evid. 702.  "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Fed.R.Evid. 704(a).

Nevertheless, the rule was not intended to allow experts to offer opinions embodying legal conclusions.  United States v. Scop, 846 F.2d 135, 139 (2d Cir. 1998).  Legal opinion that simply tells the Court or jury which result to reach is a prime example of testimony that is unhelpful to the trier of fact under Rule 702.  See Woods v. Lecureux, 100 F.3d 1215, 1220 (6th Cir. 1997); WEINSTEIN'S FEDERAL EVIDENCE § 704.04[2][a] (2d ed. 2001).  See also Advisory Committee Note to Fed.R.Evid. 704.

Such testimony falls outside the intended scope of Rule 702 and must be excluded.  Burkhart v. Washington Metro Area Transit Authority, 112 F.3d 1207, 1212  (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist a trier of fact [to understand the evidence or determine a fact in issue], and thus it is not 'otherwise admissible' [under Rule 702]").  See also Askanase v. Fatjo, 130 F.3d 657, 673 (5th Cir. 1997) (court disallowed lawyer's "expert" opinion on whether corporate officers and directors breached their fiduciary duties because "such testimony is a legal opinion and inadmissible"); Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541

(11th Cir. 1990) (testimony that contract imposed fiduciary duty on insurer was inadmissible).

    B. <u>BUCHANAN'S VARIOUS MOTIONS ARE NOT WELL TAKEN</u>

        1.    <u>The Locations Where The Anchor And Spud Were Found Relate To The Location Of The Collision.</u>

Norfolk Dredging personnel have testified at depositions that the anchor that was found on the bottom of the Elk River after the collision had been placed on the port bow of the barge for the voyage and was not secured there in any way. (Exhibit 1 (Roberts), pages 24, 27, 30.) Buchanan's own tug Mate, Eric McMahan, testified at deposition that he saw pieces of equipment fall off the port bow of the Barge RC-811 when the barge and the A.V. KASTNER collided. (Exhibit 2 (McMahan), pages 231-232.) Once this and other evidence is in, the Court will not require "expert" testimony to conclude that, more likely than not, the anchor fell from the barge at the time of the collision.

Moreover, there is in fact expert testimony on the connection between the location of the spud and anchor and the location of the collision. Norfolk Dredging's expert "Tate" Austin testified at length on deposition, and produced figures in his expert report and at deposition, bearing on the proposition that the location of the anchor and spud was relevant to the location of the collision. Dr. Haruzo Eda, the KASTNER Interests' expert in hydrodynamic forces, likewise opined in his report that the anchor and spud would have gone straight to the bottom when they went overboard and that their location indicates that the collision took place on the green (or north) side of the channel. (Exhibit 3 (Eda report), page 10.)

2, 3 and 8.  BUCHANAN 14 Crew Inexperience And Incompetence And Deficiency Of Navigation Equipment Aboard The BUCHANAN 14 Contributed To Cause The Collision.

The factual record is rife with indications of Captain Welch's inexperience and incompetence.  As mentioned by Buchanan, there is also significant expert opinion that the tug's navigational equipment, including the radar, fell below industry standards.  If the Court concludes, as the KASTNER Interests believe that it will, that the collision occurred on the KASTNER's side of the channel and that Welch had blundered across the centerline of the channel into the path of the KASTNER, then no "expert" testimony will be necessary for the Court to also conclude that Welch's inexperience and incompetence and the lack of adequate navigational gear aboard the tug contributed to that error on his part.

4.    This Court Should Not Exclude Evidence Of Tow Length Restrictions In The C&D Canal.

Rule 2(a) of the Inland Rules of the Road cautions against "the neglect of any precaution which may be required by the ordinary practice of seamen."  33 U.S.C. § 2002(a).  Rule 2(a) is often referred to as the Rule of Good Seamanship.  Evidence of the C&D Canal Regulations is relevant because it will show the lack of good seamanship by the crews of the two tugs.

The existence of the tow length limit in the C&D Canal proper is relevant to a determination of whether the tug and tow flotilla, including both tug Mates and Captains, were negligent and guilty of a breach of the Rule of Good Seamanship in failing to separate the two tows in a safe place, long before they entered the narrow channel of the

Elk River approaches to the Canal.

The tug and tow flotilla were only a mile from the entrance to the actual C&D Canal itself and were well into the narrow channel of the Elk River approaches to the Canal when the collision occurred. Acting Dredge Captain Ricky McLamb, a long-time Norfolk Dredge employee, testified that he did not recall ever breaking down a tow that close to the Canal. (Exhibit 4 (McLamb), page 157.)

Moreover, evidence pertaining to C&D Canal Regulations is relevant to this matter as it speaks to the inexperience and incompetence of the crew of the BUCHANAN 14. Captain Welch testified at deposition that he did not know of any Canal restriction on the length of his flotilla. (Exhibit 5 (Welch), pages 139-140.) This lack of knowledge about a controlling local rule of navigation clearly is relevant to Captain Welch's competence, or lack thereof.

Evidence which tends to make the existence of a material fact in the case "more probable or less probable" than without the evidence is relevant and therefore, as a general rule, admissible. See United States v. Queen, 132 F.3d 991,994 (4th Cir. 1997). The two components to relevancy are materiality and probative value. As this case involves a vessel leaving the Canal and tugs about to enter, the Canal and its regulations are an issue in this case and, thus, material. The regulations have probative value as they will be useful to the Court in determining the incompetence or competence of the BUCHANAN 14's crew. Lastly, as there is no jury, there is little chance that the Canal regulations will received undue attention from the Court.

5.      The Flotilla Length And Tow Configuration Contributed To Cause The
        Collision.

Although the Court need not have expert testimony on this point, there is such evidence in the record.

The expert report of Dr. Haruzo Eda, the KASTNER's expert on hydrodynamic forces, concludes that the flotilla had poor handling characteristics and would have been difficult for any person to control. Dr. Eda goes on to conclude that "it was not an easy task" to keep the flotilla on its own side of the narrow channel in the Elk River. (Exhibit 3 (Eda report), page 10.)

Buchanan elected not to depose Dr. Eda before trial. It cannot now complain if Dr. Eda testifies at trial to the same effect and explains his conclusions in detail.

6 and 7.   Lack Of Voyage Planning And The Fact That Nobody Was In Charge
           Contributed To Cause The Collision.

As Buchanan indicates, several experts have alleged that Norfolk Dredging and Buchanan failed to engage in proper voyage planning and that there was no understanding of who was in charge of the flotilla. Among others, Captain Russell McVay, the KASTNER Interests' expert in tug and tow operation, faults the lack of voyage planning, and in particular the failure of Buchanan and Norfolk Dredging management to meet and form an understanding of who was in charge and the particulars of their route. Captain McVay finds this to be below industry standards, and it contributes to his conclusion that: "The potential for a major accident began before departing Norfolk with poor decisions by the Operations Manager and the General Superintendent of the two Companies." (Exhibit 6 (McVay report), page 5.)

Buchanan now suggests, in its Motion, that the Court should exclude any argument as well as any actual expert testimony that lack of proper voyage planning and the lack of someone in charge contributed to cause the collision.  Once again, it should be noted that the Court is not reduced to choosing among proffered expert opinions, and that the KASTNER Interests arguments as to causation need not be supported by any expert opinion.  Nevertheless, as indicated above, there is sufficient expert opinion in the record to support a finding of fault and causation on these two grounds of lack of voyage planning and failure to have anyone in charge.

9.     The Court Should Not Exclude Evidence Of A Prior Collision Involving Buchanan.

As noted by Buchanan, the KASTNER Interests do intend to introduce evidence concerning a prior casualty in which Buchanan was involved.[2]  There are two separate and distinct bases upon which this evidence will be admissible.

The first basis relates to Norfolk Dredging.  The voyage on which the collision occurred was the first time that Norfolk Dredging had ever hired Buchanan (a relative newcomer in the Norfolk area) to perform a tow.   Paul Knowles, the General Superintendent of Norfolk Dredging, was asked at deposition: "What did you do to check out the competency of Buchanan?"  His response was:

> I didn't do anything to check out the competency.
> If there was a problem with Buchanan Marine as
> far as their boats, it would have been known around
> the water.

---

[2] The prior collision occurred in October of 2000 and involved a Buchanan tug towing a barge in the Port of Hampton Roads.  This incident is the subject of a court opinion on the issue of Buchanan's entitlement to limit liability.  In re Buchanan Marine, L.P., United States District Court for the Eastern District of Virginia, Norfolk Division, Civil Action No. 2:00cv900, December 14, 2001.

(Exhibit 7 (Knowles), page 166.)

Thus, at trial, the KASTNER Interests are entitled to inquire of Mr. Knowles whether he knew anything about the prior casualty and are entitled to inquire of Buchanan witnesses about the occurrence of the prior collision, to establish that Norfolk Dredging's method of establishing the competence of Buchanan was inadequate.

The second basis for admissibility of the testimony relates to Buchanan itself. Federal Rule of Evidence 404(b) allows the admissibility of prior acts and is understood to be a "rule of inclusion." See Queen, 132 F.3d at 994. Rule 404(b) applies to organizations as well as individuals. See Semiconductor Energy Laboratory, Inc. v. Samsung Electronics Co., 4 F. Supp. 2d 477, 487 (E.D. Va. 1998).

In the Fourth Circuit there is a three-part test to determine if evidence is admissible under Rule 404(b). Evidence is admissible if (1) it is relevant to an issue other than character; (2) it is necessary in the sense that it is probative of an essential claim; and (3) it is reliable. The more similar the prior act is to the act to be proved, the more relevant the prior act. Lastly, the evidence's probative value must not be substantially outweighed by its prejudicial effect. See Queen, 132 F.3d at 996-97; United States v. Van Meter, 150 F.3d 339, 349 (4th Cir. 1998).

The evidence of the facts surrounding the prior collision goes to an issue other than Buchanan's character. The evidence of the prior collision is necessary to prove elements of the KASTNER Interests' claim, in the sense of being probative. The facts surrounding the prior collision and this collision have several factual parallels that the

Court may find interesting, including training, seaworthiness and navigational issues.

The collision evidence is expected to be elicited in the form of testimony from Mr. Edward T. Hardison, Buchanan's southern operations manager, so there is no dispute as to its reliability. If Mr. Hardison denies the facts, then the KASTNER interests will be entitled to introduce into evidence all or part of the Virginia Court's Memorandum Opinion and Order (Master Exhibit 543). Lastly, as there is no jury at this stage in this matter, the prejudicial effect that the inclusion of the prior collision evidence would have does not outweigh its probative value to the Court.

Prior acts have been deemed admissible under Rule 404(b) in a maritime setting. In a Fifth Circuit allision case, the court allowed into evidence prior drug convictions, not to prove the crew was under the influence of drugs the time of the accident, but rather to prove that the vessel owner was negligent in hiring its crew. See Brunet v. United Gas Pipeline Co., 15 F.3d 500, 505, 1994 AMC 1565, 1572 (5th Cir. 1994). The KASTNER Interests believe that the prior acts of Buchanan relating to hiring, training and operation will be similarly admissible.

Evidence of the circumstances of the prior collision is also admissible under Rule 406, as routine practice of an organization. The importance, of course, is that one mistake or incident may be excusable as operational error and not within the privity and knowledge of the owner. A pattern of negligence over time, however, will go to show that there was a practice of which management should have been aware and which management should have taken steps to rectify, all of which will go to defeat Buchanan's attempt at limitation of liability.

For example, the KASTNER Interests anticipate that Buchanan's testimony will show that the crew in the prior collision was inadequately trained. In the deposition of Mr. Hardison in this case, he stated that Buchanan does not train its personnel beyond their license on navigation matters. (Exhibit 8 (Hardison), pages 220-221.) Therefore, the Court can infer that it has been the practice of Buchanan not to train its crew. Also, the anticipated testimony of the prior collision will show that the Buchanan crew did not determine the state of the current, a cause of the collision. Evidence will show that the crew of the BUCHANAN 14 did not determine the state of the current on the morning of the collision. Based on the prior and present cases, the Court can infer that Buchanan tugs' crews do not determine the tide as a matter of custom, which will go to defeat limitation. That failure is also a violation of the obligation to determine the current which is imposed on the tug crew (and owner) by 33 C.F.R. § 164.78(a)(6). That violation in turn places the PENNSYLVANIA Rule burden on Buchanan to prove that Captain Welch's failure to determine the effect of the current on his tug and tow could not have contributed to cause the collision.

Thus, on three separate grounds the evidence surrounding the earlier collision is admissible. Buchanan should have been able to boast that it had changed its corporate culture since that time, and that the prior collision was a vestige of past practices. Instead, Buchanan attempts to keep this prior collision out of evidence because nothing has changed and Buchanan is still performing below standards, just as before. The facts surrounding the prior collision should be allowed into evidence.

#736794                                    12

> 10.     Captain Welch's "I Fu**** Up" Statement Heard By Three Witnesses Is Admissible.

Buchanan argues that this Court should exclude the testimony of three witnesses to show that BUCHANAN 14 Captain Welch made the statement "I fu**** up" at or around the time of the collision. Buchanan argues that the statement is not authenticated and identified, that the statement is hearsay, and the statement is irrelevant.

> a.     The Statement Has Been Identified/Authenticated.

Federal Rule of Evidence 901(b)(5) permits a voice to be identified/authenticated by lay opinion testimony so long as the opinion is based on "hearing the voice… under circumstances connecting it with the alleged speaker."   For voice identification, "[m]inimal familiarity is sufficient for admissibility purposes."   United States v. Degaglia, 913 F.2d 372, 376 (7th Cir. 1990) (citing United States v. Alvarez, 860 F.2d 801, 809 (7th Cir. 1988)).  Lay opinion voice identifications may be received even where the "circumstances connecting it with the alleged speaker" are doubtful, see Auerbach v. United States, 136 F.2d 882, 885 (6th Cir. 1943), where the quality of the witness's perception was poor, or the witness had only limited exposure to the voice.  See United States v. Cooper, 868 F.2d 1505, 1519 (6th Cir. 1989).

Most important,  "so long as there is a basis for the jury to resolve the authenticity question in favor of the party offering [testimony about an audio transmission], arguments on the reliability of identification go to the weight of the evidence, not its admissibility."  United States v. Capers, 61 F.3d 1100, 1106-07 (4th Cir. 1995).  See also

United States v. Wilson, 115 F.3d 1185, 1189 (4th Cir. 1997).

The following facts are undisputed:

- Channel 13 is the channel designated for vessel to vessel communications. (Exhibit 9 (Beebe), page 13.)

- The BUCHANAN 14 and the M/V KASTNER engaged in various radio communications on Channel 13 prior to the collision to discuss passing arrangements.  (Exhibit 9 (Beebe), page 17; Exhibit 10 (Cober), page 98; Exhibit 11 (Gouchtchin), pages 36, 39-41, 49.)

- At or around the time of the collision, Captain Welch was in the wheelhouse of the BUCHANAN 14 operating the BUCHANAN 14 with his radio tuned to Channel 13.  (Exhibit 12 (Welch), page 68.)

- At or around the time of the collision, it was Captain Welch's responsibility to communicate with the KASTNER and Captain Welch had at least one conversation with the KASTNER to discuss passing arrangements. (Exhibit 12 (Welch), pages 94-95; Exhibit 10 (Cober), page 170.)

- At or around the time of the collision, Maryland Bay Pilot, Captain Timothy M. Cober and Chief Officer Oleg Gouchtchin, were in the wheelhouse of the M/V KASTNER with a radio tuned to Channel 13. (Exhibit 10 (Cober), page 146; Exhibit 11 (Gouchtchin), page 49.)

- At or around the time of the collision, Delaware Pilot Richard Beebe was piloting another vessel in nearby waters with a radio tuned to Channel 13. (Exhibit 9 (Beebe), pages 14-16.)

Beyond these undisputed facts, the KASTNER Interests are aware of at least three witnesses who overheard the statement(s) "I fu**** up" over Channel 13 at or around the time of the collision.  First, Captain Cober recalls calling the BUCHANAN 14 on Channel 13 just after the collision and asking what happened and the BUCHANAN 14 responding, "I tried to miss a buoy and I fu**** up."  See Exhibit 10 (Cober), page 187. Second, Chief Mate Gouchtchin recalls a statement on Channel 13 by the BUCHANAN

14 just before the collision in which the BUCHANAN 14 stated, "I fu**** up everything" and possibly the words "do something." <u>See</u> Exhibit 11 (Gouchtchin), page 49. Third, Captain Beebe recalls the KASTNER discussing passing arrangements with a tug and tow that morning, and then later hearing the excited statement "look out, I'm all fu**** up." <u>See</u> Exhibit 9 (Beebe), pages 17, 19.[3]

Each of these witnesses also recorded these utterances in statements provide to the Coast Guard after the collision. Captain Beebe also recorded the statement he heard in his own personal log. <u>See</u> Exhibit 13 (Beebe personal log). When the testimony of the above witnesses is analyzed in conjunction with the above undisputed facts (including that Captain Welch was operating the BUCHANAN 14 at/or around the time of the collision and was responsible for all radio communications) the circumstances clearly connect the "I fu**** up" statements to Captain Welch.[4] Thus, the minimal standards of

---

[3] As is typical, on this and on other points different eye-witnesses (or "ear-witnesses") may recall slightly different versions of the same events. Thus, although Cober, Gouchtchin and Beebe all heard the same radio transmission, their recollections are all slightly different. This phenomenon has been well recognized in the case law for many years. For instance, in the old case of <u>Corks v. The Belle</u>, 6 F. Cas. 558 (S.D.N.Y. 1846) (No. 3,231a), the court wrote:

> The general veracity of these witnesses is not to be affected by the different relations they give of the incidents attending the collision. The alarm necessarily accompanying such an occurrence, at the time and place, would naturally occasion confusion and disturbance on both sides; and it is not to be expected that witnesses will preserve such self-possession or distinctness of observation as to enable them to exactly concur in their descriptions of what they saw.

<u>Id</u>.

[4] Indeed, circumstantial evidence, including testimony of other witnesses, may be used for purposes of establishing authenticity under Rule 901. <u>See</u> <u>United States v. Addonzio</u>, 451 F.2d 49, 71 (3d Cir. 1971) ("it is clear that the connection between a message (either oral or written) and its source may be established by circumstantial evidence") (citing VII Wigmore, on Evidence, § 2155(1) (b)). Moreover, an analogy may be drawn to telephone call authentication/identification under Rule 901(b). <u>See</u> Rule 901(b)(6) (permitting authentication/identification of telephone conversation by evidence that call was made to the number assigned at the time to a particular person or business). In the present case it is undisputed that Captain Welch was the person assigned to make and receive radio communications for the BUCHANAN 14. <u>See</u>, e.g., <u>United States v. Khan</u>, 53 F.3d 507, 516 (2d Cir. 1995).

authenticity/identification of Rule 901(b)(5) have been satisfied.

      b.    <u>The Statement Is Not Hearsay Or Is Admissible Under Various Hearsay Exceptions</u>.

Captain Welch's statement is not hearsay and is admissible as a party opponent admission under Fed. R. Evid. 801(d)(2).  Captain Welch was Buchanan's agent, the statement concerned a matter well within the scope of Welch's employment, and the statement was made during that employment relationship.  <u>See</u> <u>United States v. Sims</u>, 113 F. Supp. 2d 1130, 1132 (E.D. Mich. 2000), <u>aff'd,</u> 46 Fed. Appx. 807 (6th Cir. 2002).  The statement is also admissible under hearsay exceptions, for which the availability of the declarant is immaterial, as a statement of present sense impression or as an excited utterance.  Fed. R. Evid. 803(1) and (2), respectively.

      c.    <u>The Statement Is Highly Relevant And Should Not Be Excluded</u>.

Finally, Buchanan's argument that the statement is irrelevant lacks any basis, for obvious reasons.  Nothing could be more relevant than the apparent admission of fault of the Captain of the lead tug in this serious marine collision.  Nor is there any significant confusion or undue delay that would call for exclusion under Fed. R. Evid. 403.

      11.    <u>This Court Should Hold That The Value Of The Vessels, For The Purpose Of Establishing The Limitation Fund For Each Vessel, Has Not Been Established.</u>

The KASTNER Interests refer to their motions *in limine* to oppose this section with regard to the limitation funds of Buchanan and Norfolk Dredging.

As to the value of the KASTNER, the KASTNER Interests do not agree that the *ad interim* stipulation of value is an accurate representation of the value of the

KASTNER.  The value of the limitation fund is determined based on the value of the ship at the conclusion of its voyage plus any pending freight.  See Pickle v. Char Lee Seafood, 174 F.3d 444, 449, 1999 AMC 1840, 1844 (4th Cir. 1999).  When the collision occurred, the only value estimate that the KASTNER Interests had for the vessel was a survey performed on June 4, 2001, nearly nine months prior to the collision.  Thus, on its face, this value is premature and invalid.

After these proceedings began, the KASTNER Interests had another valuation conducted for the KASTNER.  This valuation was conducted by Mr. William Mollard of Jacq. Pierot, Jr. & Sons, Inc and, by his report dated August 25, 2003, he established the value of the KASTNER on February 25, 2002 as $7,000,000.  As the valuation was calculated as of the completion of the KASTNER's voyage and it is considerably less than the original *ad interim* amount, the KASTNER Interests do not agree with Buchanan's motion to accept the *ad interim* values as final.

Moreover, Buchanan put forth a valuation survey on the KASTNER, conducted by Mr. David Tantrum of Martin Ottoway, which valued the ship at $8,500,000.  Thus, there are two expert reports detailing the value of the KASTNER, both of which are less than the *ad interim* amount.  In addition, all the parties have had a chance to depose the two valuation experts.  The KASTNER's value is a proper question for the Court to decide.

12.    Captain Lawson's Testimony Concerning Handling Of The Tug Should Not Be Excluded.

At his deposition, Captain Lawson was asked whether he holds a tug operator's license, but he was not asked about the extent of his experience piloting on tugs.  In fact,

as a pilot in the Houston Ship's Channel, he frequently does serve as a pilot on tugs and he has done so numerous times throughout his thirty – year career as a pilot.  Whether he is an expert entitled to give opinions on the handling of the tug BUCHANAN 14 is therefore something the Court should decide at the time of trial, and not before trial on the basis of un-asked deposition questions.

Respectfully submitted,


_____/s/_____
M. Hamilton Whitman, Jr. (No. 00373)
Robert B. Hopkins (No. 06017)            _____/s/_____
Charles A. Diorio (No. 26369)            James W. Bartlett, III (No. 00017)
OBER, KALER, GRIMES & SHRIVER            Alexander M. Giles (No. 25474)
A Professional Corporation               Semmes, Bowen & Semmes, P.C.
120 E. Baltimore Street                  250 W. Pratt Street, 16th Floor
Baltimore, Maryland 21202-1643           Baltimore, MD  21201-2423
(410) 685-1120                           (410) 539-5040
(410) 547-0699 (facsimile)

                                         Attorneys   for   Captain   Timothy   M.
Attorneys for Gypsum Transportation      Cober
  Limited and Beltship Management
  Limited


_____/s/_____
John A. V. Nicoletti
Michael J. Carcich
Terry L. Stoltz
NICOLETTI, HORNIG, CAMPISE &
SWEENEY
Wall Street Plaza
88 Pine Street
New York, New York 10005-1801
(212) 220-3830
(212) 220-3780 (facsimile)
Attorneys for Gypsum Transportation
  Limited

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of January, 2004, The KASTNER Interests' Opposition to Buchanan's Motion in Limine was served on counsel via the Court's electronic filing system with the following exceptions:

**VIA FIRST CLASS MAIL**
David H. Sump, Esquire
Crenshaw, Ware & Martin, PLC
1200 Bank of America Center
One Commercial Place
Norfolk, VA 23510

**VIA FIRST CLASS MAIL**
Ralph Rabinowitz, Esquire
Rabinowitz, Swartz, Taliaferro, et al.
Town Point Center
150 Boush Street
Norfolk, VA 23510

Attorneys for Norfolk Dredging Company

Attorneys for Troy A. Link and Dennis Wallace

**VIA FIRST CLASS MAIL**
C. Arthur Rutter, III, Esquire
Deborah C. Waters, Esquire
Rutter, Mills
160 West Brambleton Avenue
Norfolk, Virginia 23510

Attorneys for Jeffrey Slaton, the Estate of
Ronald L. Bonniville, the Estate of
William Thomas Bryant, and the Estate of
Clarence McConnell

_____/S/_____
M. Hamilton Whitman, Jr.