2141 SW Oakhill Way
Palm City, FL 34990
USA

Phone 1-772-781-0662
Fax 1-772-219-0016
Email morefishn2@aol.com

September 6, 2003

**EXHIBIT 6**

Ober, Kaler, Grimes & Shriver
120 East Baltimore Road
Baltimore, MD 21202-1643

Attention: Mr. M. Hamilton Whitman, Jr., Esquire

**RE: M/V A.V. Kastner - Elk River Collision Proceedings**

Dear Mr. Whitman:

You have asked me to report my findings on the <u>Norfolk Dredging Company v. M/V A. V. Kastner, et al</u> case dealing with a collision on February 25, 2002 in the Elk River approach to the C & D Canal. You have supplied me and I have reviewed, the following documents:

1. Deposition of Michael Custis;
2. Deposition of Eric McMahon;
3. Deposition of Donald Mills;
4. Deposition of Russell Gaskill;
5. Deposition of Roy Young;
6. Deposition of Jeffrey Slaton;
7. Deposition of Troy Link;
8. Deposition of Steven Newton;
9. Deposition of Coast Guard PO Jason Shapleigh;
10. Deposition of Larry Browne, C&D Canal;
11. Deposition of Coast Guard PO William Lux;
12. Deposition of Pilot Richard Beebe;
13. Deposition of Pilot Timothy Cober;
14. Deposition of Oleg Gouchtchin;
15. Deposition of Coast Guard PO Michele Wells;
16. Deposition of Michael Welch;
17. Deposition of Dennis Wallace;
18. Deposition of Ricky McLamb;
19. Deposition of Ed Hardison;
20. Deposition of Paul Knowles;



DEPOSITION EXHIBIT 3
McVay
BDF 12/2/03

1

together to look like one target. It is also my understanding that the winter ice buoys were in place which have less radar reflective capability than the larger summer buoys. There is a range light structure just to the left of buoys #15 and #16 and that structure could be misinterpreted to be buoy #15 causing you to steer to the wrong side of the actual channel. In fact, Captain Welch testified that he saw two, only two, contacts on his radar. They were most likely, the range structure and both buoys together. Confusion is likely to happen when your vessel is equipped with the barest minimum of navigation tools, a crew ill equipped to handle such a large flotilla in confined waters and zero visibility.

## SHIP COULD NOT MOVE OVER ANY FARTHER
The ship was helpless to do anything more than what they did do. The ship was hugging the starboard bank before the collision and after the collision when full astern was ordered on the ship, the stopping of the propeller wash on the rudder negated the effectiveness of the rudder and then the effect of the bank cushion took over. This sent the ship's bow to port and eventually grounded there below buoy #16.

## BELOW INDUSTRY STANDARDS
The potential for a major accident began before departing Norfolk with poor decisions by the Operations Manager and the General Superintendent of the two Companies.
- Improper Manning:

Captain Welch had little experience towing large flotillas astern. He demonstrated that at the outset, yet nothing was done about it by shore side management.
- Improperly equipped vessels:

The navigation equipment was the bare essentials. It becomes even more inadequate when you put that tug in front of a 1,000 foot tow. The small radar; the GPS in chart mode, but they didn't have the chart chip in it; and the inadequate compass leaves the Captain disadvantaged. This should have been addressed prior to sailing.
- Improper voyage planning:

There should have been a meeting! All concerned parties should have gotten together to make sure they all understood who was in charge and the particulars of where they were going. Captain Welch testified that he was unaware of the length restriction in the C&D Canal. All these items should have been covered prior to departure including a "what if" session: bad weather, broken tow gear, etc.

This concludes my report.

Captain Russell G. McVay